Brian T. Peterson, WSBA #42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
(206) 623-7580

Honorable Whitman L. Holt
Chapter 11

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

In re

AMITY COURT LLC,

          Debtor.

Chapter 11

Case No. 25-00240-WLH

**DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT OF OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ORDER (1) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, AND (3) SETTING FINAL HEARING**

I, Thomas M. Constantine, declare as follows:

1.     I am the Executive Vice President and Chief Credit Officer for Axos Bank ("Axos" or the "Bank") a federally chartered savings bank. I am over the age of eighteen, and I am competent in all ways to testify. The statements contained in this Declaration are based upon my personal knowledge and review of Axos' business records, which are kept in the ordinary course of business.

2.     On September 22, 2021, Axos and the Debtor entered into a Secured Promissory Note (the "Note") evidencing a loan made by Axos to the Debtor in the principal amount of $5,000,000 (the "Loan"). A true and correct copy of the Note is attached hereto as Exhibit A. Axos is the holder of the Note.

DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT
OF OBJECTION TO DEBTOR'S EMERGENCY MOTION - 1

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

509045106.2

25-00240-WLH11   Doc 14   Filed 02/24/25   Entered 02/24/25 18:45:47   Pg 1 of 127

3. The obligations of the Debtor under the Note are secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust") dated September 22, 2021, and recorded in the King County Auditor's records on September 28, 2021, under recording number 20210928002100. A true and correct copy of the Deed of Trust is attached hereto as <u>Exhibit B</u>.

4. The Deed of Trust grants Axos a security interest in the Debtor's real property located at 14400 Northeast Bellevue-Redmond Road, Bellevue, Washington 98007 (the "Real Property") and any improvements thereto; all personal property located on, attached to, or used in connection with the Real Property; all leases of the Real Property; and all rents, income, profits, and proceeds generated in connection with the Real Property (collectively, all such personal property constituting the "Personal Property" and collectively with the Real Property and the Bank's other collateral, the "Collateral"). The Bank's Collateral constitutes substantially all of the assets of the Debtor.

5. In addition, the Debtor entered into that certain Reserve Pledge and Security Agreement dated September 22, 2021 ("Pledge Agreement"), whereby the Debtor agreed to pledge certain cash reserve funds as additional security for its obligations under the Note. A copy of the Pledge Agreement is attached hereto as <u>Exhibit C.</u>

6. The Debtor is in default under the terms of the Note and Deed of Trust for failing to pay amounts due and owing under the Note. The Debtor failed to make the payment due on April 1, 2024, and all subsequent payments thereafter. In addition, the Note matured on October 1, 2024. The Debtor defaulted under the Note for its failure to pay the Note in full upon maturity.

7. Under the terms of the Note, interest accrued on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18%, beginning on April 1, 2024. As of October 28, 2024, a total of $5,641,255.77 was due and owing under the Note, not including legal fees. In addition, the Bank has advanced a total of

DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT
OF OBJECTION TO DEBTOR'S EMERGENCY MOTION - 2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

509045106.2

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 2 of 127

$56,527.90 for property taxes owed in connection with the Real Property. Such amounts are recoverable under the terms of the Note.

8.　　On November 4, 2024, Axos' counsel sent a letter detailing the Debtor's defaults, the amounts outstanding, and the Bank's intent to apply the amounts in the reserve account described in the Pledge Agreement against the outstanding indebtedness owed to Axos. A copy of that letter is attached hereto as Exhibit D.

9.　　As of January 3, 2025, the Debtor owed the following amounts under the Note, not including attorneys' fees:

| | | |
|---|---|---|
| Principal | $ | 4,825,000.00 |
| Interest | $ | 726,157.51 |
| Late Charges | $ | 21,695.36 |
| Property Tax Advance | $ | $56,527.90 |
| **ESTIMATED TOTAL AMOUNT DUE** | | **$5,629,380.77** |

10.　　Based on information provided by the Debtor, the Debtor has multiple commercial tenants at the Real Property. The rent revenues being generated by such tenancies constitute the Bank's collateral but are being collected by the Debtor who has not made any payments under the Note since April of last year. In addition, on April 3, 2024, and September 26, 2024, Axos was forced to advance significant funds for payment of real estate taxes that the Debtor failed to pay.

11.　　Interest accrues on the principal balance of the Note at the default rate of 18%, which is $2,412.50 per diem and $72,375.00 per month.

12.　　Under the appraisal commissioned by Axos, which is attached to the *Declaration of Stanley Xu in Support of First Day Motions* [Dkt. No. 10] as Exhibit A, the income capitalization approach to valuation resulted in a valuation of $4,610,000, and the sale comparison approach resulted in a valuation of $4,520,000. Only the land valuation approach

DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT
OF OBJECTION TO DEBTOR'S EMERGENCY MOTION - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

509045106.2

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 3 of 127

resulted in an appraised value of $7,780,000. The Debtor's principal criticized the use of the land valuation approach in correspondence with Axos representative Cassidy Rodgerson.

13. On or about January 28, 2025, Axos filed a motion for the appointment of a general receiver over the Debtor in King County Superior Court, Case No. 25-2-02385-1. In opposition to the motion for appointment of a general receiver, Mr. Xu filed the declaration attached hereto as Exhibit E.

14. The Debtor's proposed order authorizing use of cash collateral does not contemplate any adequate protection payments to Axos. According to the Debtor's proposed budget, the Debtor will continue to pay its insider property manager company Longwell on undisclosed terms. In addition, the Debtor will expend $4,790.00 in the last two weeks of February, and $2,500 per month thereafter on repairs to the Real Property. The Debtor does not provide an explanation for the necessity and reasonableness of these budgeted expenses.

15. Under the circumstances, I do not believe that Axos' interest in the Debtor's cash collateral, including rental income generated by the Real Property, is adequately protected by the Debtor's proposed order authorizing use of cash collateral and Axos does not consent to the Debtor's use of cash collateral on the terms proposed by the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 24th day of February, 2025, at San Diego, CA.

DocuSigned by:

*Tom Constantine*

2EB828E80062495

Thomas M. Constantine

DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT
OF OBJECTION TO DEBTOR'S EMERGENCY MOTION - 4

509045106.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 4 of 127

**CERTIFICATE OF SERVICE**

I certify that on February 24, 2025, I caused a copy of the foregoing Objection to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Washington.

/s/Brian T. Peterson
Brian T. Peterson, WSBA #42088

DECLARATION OF THOMAS M. CONSTANTINE IN SUPPORT
OF OBJECTION TO DEBTOR'S EMERGENCY MOTION - 5

509045106.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# EXHIBIT A

## SECURED PROMISSORY NOTE

**$5,000,000.00**                                                                        **September 22, 2021**

1.     Promise to Pay

For value received, Amity Court LLC, a Washington limited liability company ("**Borrower**"), promises to pay to the order of AXOS BANK™, a federally chartered savings association ("**Lender**"), at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122, or at such other place as may be designated in writing by Lender, the principal sum of Five Million and 00/100 Dollars ($5,000,000.00), with interest on the unpaid principal balance as set forth below.  All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

2.     Secured by Security Instrument

This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as the same may hereinafter be amended, modified, restated, renewed or extended from time to time, the "**Security Instrument**") of even date herewith, encumbering the Property (hereinafter defined).

3.     Definitions

For the purposes of this Note, the following terms shall have the following meanings:

**"Affiliate"** shall mean, as to any Person, any other Person (i) which directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such Person; or (ii) which, directly or indirectly, beneficially owns or holds ten percent (10%) or more of any class of stock or any other ownership interest in such Person; or (iii) ten percent (10%) or more of the direct or indirect ownership of which is beneficially owned or held by such Person; or (iv) which is a member of the family of such Person or which is a trust or estate, the beneficial owners of which are members of the family of such Person; or (v) which directly or indirectly is a general partner, controlling shareholder, managing member, officer, director, trustee or employee of such Person.

**"Business Day"** shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

**"Closing Date"** shall mean the earlier of the date Lender releases any part of the Loan proceeds to Borrower or the date in which the Security Instrument is recorded in the official records of the county in which the Property is located.

**"Default Rate"** shall be the lesser of (i) eighteen percent (18%) and (ii) the maximum amount permitted by law applicable to Lender.

**"Event of Default"** shall have the meaning set forth in the Security Instrument.

**"First Interest Payment Date"** shall mean **November 1, 2021.**

**"Guarantor"** shall mean: **X & C Holdings LLC**, a Delaware limited liability company, **Stanley Xu and Nanling Chen**.

**"Index"** shall mean the one month U.S. Dollar denominated London Inter-Bank Offered Rate ("LIBOR USD") as published in a reference publication of general circulation (the "Reference Publication") two (2) Business Days prior to, for the first payment due hereunder, the Closing Date, and for each subsequent payment,

the applicable Rate Change Date, or if not published on such date, then most recently prior thereto. The initial Reference Publication shall be *The Wall Street Journal*. Lender, in Lender's sole discretion, shall have the right to select a substitute Reference Publication at any time and from time to time by written notice to Borrower delivered to Borrower not less than thirty (30) days prior to the Rate Change Date to which such substitution shall first apply. If LIBOR USD, or another Index as then in effect, is no longer available, Lender shall choose a replacement index (a "Replacement Index") in its sole and absolute discretion, which selection shall be final, conclusive and binding on Borrower in all respects, and which shall for all purposes be the Index hereunder; provided, however, that the Interest Rate shall not at any time be less than 5.00% per annum. Without limiting Lender in any way, Borrower acknowledges and agrees that either Ameribor or Secured Overnight Financing Rate may be a Replacement Index hereunder. Lender shall notify Borrower of any Replacement Index not less than thirty (30) days prior to the Rate Change Date to which such Replacement Index shall first apply. **Borrower's Initials** *I/A NC*.

"**Interest Rate**" shall mean a per annum interest rate that is the sum (rounded as necessary, to the nearest 1/1000 of 1%) of the Index and the Margin; provided, however, the Interest Rate shall never be less than 5.00%, at any time and for the life of the Loan (it being understood that this rate, without limiting any provision requiring a higher Interest Rate, shall constitute a minimum Interest Rate).

"**Loan**" shall mean the aggregate of all principal and interest payments that accrue or are due and payable hereunder, together with any other amounts for which Borrower is liable under the Loan Documents.

"**Loan Documents**" shall mean this Note, the Security Instrument and any document executed in connection herewith or therewith. For the avoidance of doubt, notwithstanding any other clause of this Note, any "Guaranty", "Environmental Indemnity Agreement" or "ADA Indemnity Agreement" (including any rider(s) or successor documents thereto) shall not be secured by the Security Instrument.

"**Margin**" shall mean Four and seventy-five hundredths percent (4.75%).

"**Maturity Date**" shall mean October 1, 2024, as the same may be extended in accordance with Section 4.5.

"**Patriot Act**" shall mean United State Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as amended from time to time, together with all rules and regulations promulgated from time to time thereunder.

"**Payment Date**" shall mean the first day of each calendar month.

"**Person**" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"**Property**" shall mean that certain real property and improvements thereon owned by Borrower, together with all rights pertaining to such real property and improvements, located at the property commonly known as 14400 Northeast Bellevue-Redmond Road, Bellevue, Washington, 98007.

"**Rate Change Date**" shall mean the first day of the month immediately following the month in which Closing Date occurs and the same date each one (1) month thereafter until the Maturity Date (as defined herein).

4.    Payment of Principal, Interest and Loan Fee

4.1    Payments.

(a)    Interest Only Period. During the term of the Loan, Borrower shall pay consecutive monthly installments of interest only at the Interest Rate, as set forth in Section 5 hereof. Such

interest only payments shall commence on the First Interest Payment Date and shall be made thereafter on each Payment Date up until **but excluding** the Maturity Date.

(b)  Payments in Arrears. On the Maturity Date, all unpaid principal and accrued but unpaid interest shall be due and owing in full. All interest shall be paid in arrears, except that on the Closing Date, Borrower shall pre-pay all interest that will accrue from the date of funding through the end of that month. Whenever any payment to be made under this Note or any other Loan Document shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, unless such next succeeding Business Day would fall in the next calendar month, in which case such payment be payable on the next preceding Business Day.

4.2  Interest Accrual. Interest on the outstanding principal balance of this Note shall accrue at an annual rate equal to the Interest Rate calculated on an Actual/360 Basis. "**Actual/360 Basis**" shall mean on the basis of a 360-day year, charged based on the number of actual days elapsed for any whole or partial month in which interest is being calculated.

4.3  Loan Fee. On or prior to the Closing Date, Borrower shall pay to Lender **$53,000.00** as the "**Loan Fee**". The Loan Fee shall be deemed fully earned by Lender upon execution of this Note. In addition to the Loan Fee, Borrower shall also pay to Lender on or prior to the Closing Date, a $30.00 wire fee.[1]

4.4  Application of Payments. In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority: (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note.

4.5  Extension of Maturity Date. Borrower may elect to extend the Maturity Date one (1) time for a period of one (1) year (the "**Extension Option**"). Borrower may exercise the Extension Option by providing written notice to Lender at least sixty (60) days prior to the Maturity Date and upon satisfaction of the following conditions, as determined by Lender, in its sole discretion:

(a)  Borrower pays to Lender an extension fee in the amount of 0.50% of the outstanding principal balance of the Loan on the date Borrower elects to extend the then Maturity Date;

(b)  No default or an Event of Default shall have occurred and be continuing during the period commencing on the date that Borrower delivers a notice of its exercise of the Extension Option through and including the date immediately preceding the commencement of the extension term;

(c)  Borrower pays to Lender all of Lender's out-of-pocket costs and expenses incurred in connection with such extension, including the cost of title endorsements (evidencing title free of mechanics liens and any other endorsements required by Lender in its sole discretion) required by Lender, recording, documentation, and attorney's fees.

(d)  Borrower shall have fully funded the reserve account to be maintained by Lender pursuant to the Reserve Pledge and Security Agreement, and, to the extent required by Lender, Borrower shall have funded any additional interest reserve in an amount sufficient, in Lender's sole and absolute discretion, to make all payments under this Loan through the applicable extension.

---

[1] NTD - .50% exit fee is waived if closing occurs on or prior to September 30, 2021.

(e)  Borrower, each Guarantor, and Lender execute any and all modifications, extension agreements, reaffirmation agreements or any other documents or instruments required by Lender, in form and substance mutually agreeable by all parties;

(f)  The representations and warranties contained in this Agreement and in all the Loan Documents are true and correct as of the date the Loan would otherwise mature;

(g)  Following such extension, the Loan shall continue to be secured by the Deed of Trust and the other Loan Documents, subject to those exceptions to title approved by Lender at the time of Loan closing, as evidenced by title insurance endorsements satisfactory to Lender (as applicable), at Borrower's sole cost and expense;

(h)  No change shall have occurred in the financial condition of Borrower, Guarantor or the Property which would have, in Lender's sole and absolute discretion and judgment, a material adverse effect on the Loan, Borrower's ability to perform its obligations under the Loan Documents, or Guarantor's ability to perform its obligations under the Environmental Indemnity or the Guaranty, as verified by Lender to its satisfaction; and

(i)  The Loan conforms with all underwriting guidelines then applicable to term commercial loans by Lender.

5.  <u>Interest Rate Change</u>.

Prior to the first Rate Change Date, Borrower will pay interest at the Interest Rate based on the Index two (2) Business Days prior to the Closing Date.  On the Rate Change Date, and on each Rate Change Date thereafter, Lender will determine the new interest rate and the changed amount of the monthly payments based on the Interest Rate (i.e., based on the Index then in effect).  The new interest rate shall become effective on each Rate Change Date.  Borrower shall pay the amount of any new monthly interest payment beginning on the first Payment Date **following** any Rate Change Date.  Lender will provide Borrower with notice of any changes in the amount of the monthly payment due under this Note.  However, if Lender has not provided Borrower with prior notice of the monthly payment due on any Payment Date, then Borrower will pay on that Payment Date an amount equal to the monthly payment for which Borrower last received notice.  If Lender at any time determines that Borrower has paid one or more monthly payments in an incorrect amount because of the preceding sentence, or because Lender has miscalculated the adjustable rate or has otherwise miscalculated the amount of any monthly payment, then Lender will give notice to Borrower of such determination.  If such determination discloses that Borrower has paid less than the full amount due, Borrower, within thirty (30) calendar days after receipt of the notice from Lender, will pay to Lender the full amount of the deficiency.  If such determination discloses that Borrower has paid more than the full amount due, then the amount of the overpayment will be credited to the next payment(s) of principal and interest due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment will be credited against any amount owing by Borrower to Lender).

6.  <u>Late Charge; Default Rate; NSF Charges</u>

6.1  <u>Late Charge</u>.  If any payment required hereunder is not paid on or before the tenth (10th) calendar day of the month in which it is due, or the payment is returned to Lender as a result of insufficient funds in Borrower's bank account, Borrower shall pay a late or collection charge equal to five percent (5%) of the amount of such unpaid payment.  Borrower acknowledges that Lender will incur additional expenses as a result of any late payments hereunder, which expenses would be impracticable to quantify, and that Borrower's payments under this paragraph are a reasonable estimate of such expenses and do not constitute a penalty.  The foregoing to the contrary notwithstanding, no late or collection charge shall be payable by Borrower as a result of any delay in the payment of any sum due and payable on the Maturity Date.

6.2    Default Rate.  Commencing upon an Event of Default and continuing until such Event of Default shall have been cured by Borrower, all sums owing on this Note shall bear interest until paid in full at a rate per annum equal to the Default Rate.

6.3    Non-Sufficient Funds Charge.  Any checks received that are returned to Lender marked for "non-sufficient funds" shall require payment by Borrower of a NSF fee of $25 or such other amount then charged by Lender in accordance with applicable law.

7.    Prepayments

7.1    Prepayment Premium.  Prepayment of the Loan other than: (i) as provided in Section 4.1 hereof with respect to the interest pre-paid on the Closing Date; (ii) as a result of application of insurance proceeds or a condemnation award received by Lender pursuant to the Security Instrument; or (iii) a prepayment made after October 1, 2022, as long as Lender has not granted forbearance or otherwise altered the payment schedule over the term of the Loan by written agreement with the Borrower prior to such date (in a writing signed by an officer of Lender holding a title of Executive Vice President or higher), shall result in Borrower owing to Lender a prepayment premium (the "**Prepayment Premium**"). The Prepayment Premium shall be equal to the original principal amount of the Loan multiplied by the Make Whole Interest Rate. The "**Make Whole Interest Rate**" equals the Interest Rate in effect at the time of prepayment multiplied by the quotient of (x) the remaining number of months until the first (1st) anniversary of the Closing Date and (y) twelve (12). The Prepayment Premium is due and payable to Lender on the date that any prepayment of the Loan is made.

7.2    **PREPAYMENT WAIVER**.  BORROWER HEREBY EXPRESSLY WAIVES THE RIGHT TO PREPAY THE INDEBTEDNESS EVIDENCED HEREBY IN WHOLE OR PART WITHOUT PENALTY, AND EXPRESSLY AGREES TO PAY THE AMOUNTS REQUIRED HEREIN, INCLUDING THE PREPAYMENT PREMIUM, IN THE EVENT OF AN ACCELERATION UPON THE OCCURRENCE OF A DEFAULT OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, UPON OCCURRENCE OF A TRANSFER OF THE PROPERTY SECURING THIS NOTE AND THE OTHER SECURITY INSTRUMENTS EVIDENCING THE LOAN, WHETHER VOLUNTARILY OR INVOLUNTARILY OR OTHERWISE. WHETHER PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, IN NO EVENT SHALL THE AMOUNT OF THE PREPAYMENT PREMIUM RESULT IN A REDUCTION OF THE OUTSTANDING PRINCIPAL BALANCE, ACCRUED AND UNPAID INTEREST OR OTHER AMOUNTS DUE AS OF THE DATE OF PREPAYMENT. BORROWER AGREES THAT THE PREPAYMENT CONSIDERATION REQUIRED HEREIN IS REASONABLE. BORROWER HAS GIVEN INDIVIDUAL WEIGHT TO THE CONSIDERATION IN THIS TRANSACTION FOR THIS WAIVER AND AGREEMENT.  ANY SUCH PREPAYMENT SHALL NOT RESULT IN A REAMORTIZATION, DEFERRAL, POSTPONEMENT, SUSPENSION OR WAIVER OF ANY AND ALL OTHER PAYMENTS DUE UNDER THIS NOTE.  BORROWER HAS INITIALED THIS PROVISION OF THE NOTE EXPRESSLY WAIVING THE RIGHT TO PREPAY THE NOTE EXCEPT AS EXPRESSLY PERMITTED HEREIN.

**Borrower Initials:**  _IK_    _NC_

8.    Taxes and Insurance

8.1    Borrower shall pay to Lender on each Payment Date an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (ii) an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all insurance premiums at least thirty (30) days prior to the expiration of the applicable insurance policies.  "**Taxes**" shall mean all real estate and personal property taxes, assessments, water rates or sewer rents, maintenance charges, impositions, vault charges and license fees, now or hereafter levied or assessed or imposed against all or part of the Property.  Such amounts will be transferred by Lender to an account maintained by Lender (the "**Tax and Insurance Account**"). Lender will (a) apply funds in the Tax and Insurance Account to payments of Taxes and insurance premiums required to be made by Borrower, provided that Borrower has promptly supplied Lender with notices of all Taxes and insurance premiums due, or (b) reimburse Borrower for such amounts within thirty (30) days

after Lender's receipt of evidence of payment. In making any payment relating to Taxes and insurance premiums, Lender may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or insurer or agent (with respect to insurance premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof. If Lender determines in its reasonable judgment that the funds in the Tax and Insurance Account will be insufficient to pay (or in excess of) the Taxes or insurance premiums next coming due, Lender may increase (or decrease) the monthly contribution required to be made by Borrower to the Tax and Insurance Account. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section. Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes and insurance premiums such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.

8.2     Should Borrower fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured by the Security Instrument and shall be repayable to Lender, or at the option of Lender the Lender may, without making any advance whatever, apply any sums held by it upon any obligation of Borrower secured by the Security Instrument.

8.3     As security for payment of the Loan and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to the Tax and Insurance Account. Borrower hereby grants to Lender a continuing security interest in, and agrees to hold in trust for the benefit of Lender, all funds in the Tax and Insurance Account. Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in the Tax and Insurance Account, or permit any lien to attach thereto, or any levy to be made thereon, or any financing statements, except those naming Lender as the secured party, to be filed with respect thereto. This Note is, among other things, intended by the parties to be a security agreement for purposes of the UCC. Upon the occurrence and during the continuance of an Event of Default, Lender may apply any sums in the Tax and Insurance Account in any order and in any manner as Lender shall elect in Lender's discretion without seeking the appointment of a receiver and without adversely affecting the rights of Lender to foreclose the lien of the Security Instrument or exercise its other rights under the Loan Documents. The Tax and Insurance Account shall not constitute trust funds and may be commingled with other monies held by Lender. Upon repayment in full of this Note, all remaining funds in the Tax and Insurance Account, if any, shall be promptly disbursed to Borrower.

9.      <u>Maximum Rate Permitted By Law</u>

Neither this Note nor any of the other Loan Documents may be construed to require the payment or permit the collection of, in each case, any interest or any late payment charge to be charged to Borrower in excess of the maximum rate permitted by law applicable to Lender as a federally chartered savings association. If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents. If Lender shall collect amounts that are deemed to constitute interest and that would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 12 of 127    A - 6

10.  **Acceleration**

If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) any other Event of Default shall occur (taking into account the provisions of Section 14 hereof); or (c) any other event or condition shall occur which, under the terms of the Security Instrument or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, if the Security Instrument or any other Loan Document provides for the automatic acceleration of payment of sums owing under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Security Instrument or such other Loan Document.

11.  **Recourse**

Borrower shall have full recourse liability to Lender under all of the Loan Documents for the payment of the Loan and for the performance of all other obligations of Borrower under the Loan Documents.

12.  **Disbursement of Loan Proceeds; Limitation of Liability**

Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan to Borrower. With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other financial institutions, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent. As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract; or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

13.  **Notices.**

All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested. All notices and other communications shall include reference to Lender's loan number. Any party may change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above. All such notices and communications shall be effective upon receipt, or in the case of notice via certified first-class mail, return receipt requested, upon the earlier of (i) receipt or (ii) five days of mailing.

The initial addresses of the parties shall be:

> **LENDER:**
> Axos Bank
> 9205 West Russell Rd., Suite 400
> Las Vegas, NV  89148
> Attn:  Loan Servicing
>
> **WITH A COPY TO:**
> Axos Bank
> 4350 La Jolla Village Drive, Suite 100
> San Diego, CA 92122
> Attn:  Legal Department

BORROWER:

Amity Court LLC
1215 120th Ave NE, Suite 204
Bellevue, WA 98005
Attn: Stanley Xu and Nanling Chen

14.  Non-Trustor Borrower

If any Borrower is not also a grantor under the Security Instrument, such Borrower hereby makes all representations and warranties in favor of Lender contained in Article 5 of the Security Instrument, all covenants contained in Sections 6.4, 6.5, 6.6, 6.7, 6.23, 6.24 of the Security Instrument, and all indemnities in favor of Lender contained in Section 6.18 of the Security Instrument, jointly and severally with the grantor. In addition, if any Borrower is not also a grantor under the Security Instrument, any reference to the Grantor in the description of the Events of Default thereunder shall also be deemed to reference any such Borrower.

15.  [Intentionally Omitted]

16.  Assignment

This Note may be freely transferred and assigned by Lender, its successors, endorsees and assigns. Borrower's ability to assign, delegate, or otherwise, directly or indirectly, transfer its rights or obligations with respect to, in each case, its indebtedness, duties under the Loan Documents, or to be released from liability under this Note as a result of such an assignment, delegation, or other transfer shall be governed, in each case, by Section 6.14 of the Security Instrument regarding the "Transfer" of the grantor's interest therein (it being understood that "Transfer" has the meaning ascribed to it in Section 6.14.1 of the Security Instrument). The Borrower shall not "Transfer" its interest under any of the Loan Documents in violation of the Loan Documents including provisions of Section 6.14 of the Security Instrument, such provisions being construed for the purposes of this Section of the Note as if the Borrower hereunder were the grantor under the Security Instrument. Any "Transfer" by the Borrower of its interest under any of the Loan Documents contrary to this provision shall be null and void *ab initio*. For clarity in construing these provisions, the grantor under the Security Instrument is referred to as "Borrower" in the text of the Security Instrument.

17.  Brokers and Financial Advisors

Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the Loan. Borrower shall indemnify and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person that such Person acted on behalf of Borrower in connection with the transactions contemplated herein. The provisions of this Section shall survive the expiration and termination of this Note and the repayment of this Note and satisfaction of all of its monetary and nonmonetary obligations set forth under the Loan Documents.

18.  Compliance With Laws

Borrower hereby represents, warrants and covenants that:

18.1  Neither Borrower nor Guarantor nor any of their respective Affiliates is or will be a Person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or Person listed above (any and all parties or Persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Neither Borrower nor

Guarantor nor any of their respective Affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Borrower shall deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming each such representation.

18.2    Neither Borrower nor Guarantor, nor to the knowledge of Borrower, any agent or other Person acting on behalf of the Borrower or Guarantor, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or Guarantor (or made by any Person acting on its behalf of which Borrower or Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**"). Each of Borrower and Guarantor shall cause any agent or other Person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

19.    General Provisions

19.1    Joint and Several Liability.  If this Note is executed by more than one Person or entity as Borrower, the obligations of each such Person or entity shall be joint and several.  No Person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

19.2    Waiver of Presentment.  Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

19.3    Delay in Enforcement.  No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Security Instrument shall constitute a waiver of any breach, default or failure of condition under this Note, the Security Instrument or the obligations evidenced or secured thereby.  A waiver of any term of this Note, the Security Instrument or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower.  The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

19.4    Time of the Essence.  Time is of the essence with respect to all Borrower's obligations hereunder involving: (i) the payment of money and (ii) providing notice to Lender.

19.5    Governing Law.  This Note and the other Loan Documents shall be governed by and construed under the internal laws of the State of Washington, except to the extent preempted by federal laws.

19.6    Consent to Jurisdiction.  Borrower irrevocably submits to the jurisdiction of:  (a) any state or federal court sitting in the State of Washington over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Security Instrument or any action brought by Lender to enforce its rights with respect to the Property.  Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding

brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

19.7    Heirs, Successors and Assigns.

(a)    All of the terms, covenants, conditions and indemnities of Borrower contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors, indorsees and assigns of Lender. The foregoing sentence shall not be construed to permit Borrower to assign the Loan or otherwise directly or indirectly transfer its interest therein contrary to Section 14 hereof.

(b)    Lender may assign its right, title, and interest in any or all of the Secured Obligations (as defined in the Security Instrument) arising under this Note to any Person and any such assignee shall succeed to all of Lender's rights with respect thereto.  Upon such assignment, Lender shall be released from all responsibility for the Collateral (as defined in the Security Instrument) to the extent same is assigned to any transferee.  Lender may from time to time sell or otherwise grant participations in any of the Secured Obligations (as defined in the Security Instrument) and the holder of any such participation shall, subject to the terms of any agreement between Lender and such holder, be entitled to the same benefits as Lender with respect to any security for the Secured Obligations (as defined in the Security Instrument) in which such holder is a participant.

19.8    Severability.  If any term of this Note, or the application thereof to any Person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to Persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

19.9    Further Assurances.  Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

19.10    Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Note, the Security Instrument, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses incurred in connection therewith.

19.11    Disclaimers. The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property.  Notwithstanding any other provisions of this Note and the other Loan Documents: (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling Person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Intentionally Omitted; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

19.12    Separate and Community Property.  Any married Person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property, in each case, of that Person.

19.13    Integration; Interpretation.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral.  The Loan Documents shall not be modified except by written instrument executed by all parties.  Any reference in any of the Loan Documents to the Property shall

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 16 of 127    A - 10

include all or any part of the Property. Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.

19.14    Commercial Purpose.  Borrower represents that the indebtedness evidenced by the Note is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

20.    WAIVER OF RIGHT TO JURY TRIAL.

BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAWS, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN, DOCUMENT (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS AND HAS BEEN AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

21.    PATRIOT ACT.  Lender hereby notifies Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Patriot Act. Borrower will provide such information promptly upon the request of Lender.

22.    **Statutory Notice.  ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has duly executed this Note to be effective the day and year first above written.

**BORROWER:**

Amity Court LLC, a Washington limited liability company

By: X & C Holdings LLC, a Delaware limited liability company
Its Managing Member, Manager, and Governor

By: _____
Nanling Chen, Managing Member and Manager for X & C Holdings LLC

By: _____
Stanley Xu, Managing Member and Manager for X & C Holdings LLC

# EXHIBIT B

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AXOS BANK™
4350 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Mailstop: 4365-03

Tax Parcel(s)/APN: 272505-9147

(Space Above For Recorder's Use)

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Amity Court LLC (Grantor),
a Washington limited liability company

to

FIRST AMERICAN TITLE INSURANCE COMPANY

(Grantee/Trustee)

in favor of

AXOS BANK™

(Grantee/Beneficiary)

**DATED:**  September 22, 2021

**Abbreviated Legal Description:** Ptn. SW 1/4 NE 1/4, Sect. 27, Twp. 25N, Rng. 5 E

**The full legal description is set forth on Exhibit A.**

 Tax Parcel(s) APN  272505-9147-00

310704763.4

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed of Trust**"), dated as of September 22, 2021 is entered into by Amity Court LLC, a Washington limited liability company ("**Grantor**"), as Grantor, having its principal place of business at 1215 120th Ave NE, Suite 204, Bellevue, WA 98005, in favor of First American Title Insurance Company ("**Trustee**"), as Trustee, having its address at 920 Fifth Avenue, Suite 1200, Seattle, WA 98104, for the benefit of AXOS BANK™, a federally chartered savings association ("**Lender**"), as beneficiary, having its principal place of business at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122.

RECITALS:

A.      Lender is making a loan (the "**Loan**") to Grantor ("**Borrower**"), which is evidenced by a Secured Promissory Note (all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), collectively, the "**Note**") in the principal amount of **Five Million and 00/100 Dollars ($5,000,000.00)**, executed by Borrower in favor of Lender, dated the same date as this Deed of Trust, payable to the order of Lender.

B.      The loan documents include this Deed of Trust, the Note and the other documents described in the Note as Loan Documents (the "**Loan Documents**").

ARTICLE 1

DEED OF TRUST

1.1.    <u>Grant</u>. For the purposes of and upon the terms and conditions of this Deed of Trust, Grantor irrevocably grants, bargains, sells, mortgages, conveys and assigns to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, all estate, right, title and interest which Grantor now has or may hereafter acquire in, to, under or derived from any or all of the following:

(a)      All right, title and interest which Grantor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Grantor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "**Land**") located in the **County of King, State of Washington** and more particularly described on <u>Exhibit A</u> attached hereto;

(b)      All right, title and interest which Grantor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land, including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every

2

Security Instrument
310704763.4

25-00240-WLH11     Doc 14     Filed 02/24/25     Entered 02/24/25 18:45:47     Pg 21 of 127     B-2

kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)     All right, title and interest which Grantor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

(d)     All additions and accretions to the property described above;

(e)     All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Grantor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)     Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Grantor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

(g)     Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

(h)     Any and all claims or demands which Grantor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

(i)     Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

(j)     All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)     All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Grantor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any

3

Security Instrument
310704763.4

governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Grantor from non-governmental sources;

        (l)      All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Grantor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Grantor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Grantor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

        (m)     All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property; and

        (n)      All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Grantor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Grantor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Grantor to encumber hereby all property located or to be located upon the above-described real property.  Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**."  As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures.  As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Grantor's right, title, and interest in and to all such property.

## ARTICLE 2

## OBLIGATIONS SECURED

      2.1.    Obligations Secured.  Grantor makes the foregoing grant and assignment for the purpose of securing the following obligations (the "**Secured Obligations**"):

        (a)      Full and punctual payment to Lender of all sums at any time owing under the Note by Borrower;

4

Security Instrument
310704763.4

          (b)      Payment and performance of all covenants and obligations of Grantor under this Deed of Trust including, without limitation, indemnification obligations and advances made to protect the Property;

          (c)      Payment and performance of all additional covenants and obligations of Grantor and Borrower, in each case, under the Loan Documents except for the Grantor's and/or Borrower's covenants and obligations under any Environmental Indemnity Agreement, executed in favor of Lender, as of the date hereof, including any riders and amendments thereto or replacements thereof (collectively, the "**Environmental Indemnity Agreement**"), and the ADA Indemnity Agreement executed in favor of Lender, as of the date hereof, including any riders and amendments thereto or replacements thereof (collectively, the "**ADA Indemnity Agreement**").  For the avoidance of doubt, the Secured Obligations, notwithstanding anything to the contrary contained herein, shall not include, obligations or covenants, in each case, pursuant to:  (i) any guarantee of the Loan, including, without limitation, any amendment thereto or replacement thereof (it being understood that the guarantor(s) under such guarantee/guarantees shall not be the Grantor); (ii) any environmental indemnity regarding the Property executed by, in each case, the Borrower, Grantor and/or any guarantor/additional indemnitor, including, without limitation, the Environmental Indemnity Agreement; and (iii) any similar guarantee or indemnity, including any rider(s) and amendments thereto or replacements thereof, by which a person guarantees or otherwise acts as a surety regarding the Grantor's obligations under the Loan Documents (it being understood that guarantee and guarantees, as used in this Section 2.1(c), shall not be construed to include this Deed of Trust, even if this Deed of Trust is executed by a Grantor that is not the Borrower).  For the avoidance of doubt and without limiting the generality of the foregoing provisions of this Section 2.1(c), this Deed of Trust does not secure and shall not be construed to secure, in each case, the Environmental Indemnity Agreement, the ADA Indemnity Agreement, and any guarantee of the Loan.

          (d)      Payment and performance of all covenants and obligations, if any, that any rider, attached as an exhibit to this Deed of Trust, recites are secured hereby;

          (e)      Payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender when the obligation is evidenced by a writing that recites that it is secured by this Deed of Trust; however, any obligation secured by this Deed of Trust shall not be construed to be part of any guarantee or the Environmental Indemnity Agreement or the ADA Indemnity Agreement (as the terms guarantee/guarantees, Environmental Indemnity Agreement and the ADA Indemnity Agreement are used in Section 2.1(c) hereof, including, in each case, any rider(s) or successor documents thereto);

          (f)      All interest and charges on all obligations secured hereby including, without limitation, prepayment charges, late charges and Loan-related fees; and

          (g)      All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation:  (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; and (ii) modifications, extensions or renewals at a different rate of interest whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

     2.2.   <u>Obligations</u>.   The term "**obligations**" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges,

5

Security Instrument
310704763.4

prepayment charges, late charges, reimbursements for expenses, and Loan-related fees at any time accruing or assessed on any of the Secured Obligations.

      2.3.    <u>Incorporation</u>.  All terms and conditions of the documents that evidence any of the Secured Obligations are incorporated herein by this reference.  All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice that the rate of interest on one or more Secured Obligations may vary from time to time.  As used in this Deed of Trust, "person" or "persons" shall refer to both a natural person and a legal person.

## ARTICLE 3

## ASSIGNMENT OF RENTS AND LEASES

      3.1.    <u>Assignment</u>.  Grantor absolutely, irrevocably, and unconditionally grants, transfers and assigns to Lender all of Grantor's right, title and interest in, to and under:  (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof (collectively, the "**Leases**"); and (b) the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Grantor under the Leases (the "**Payments**").  The term "**Leases**" shall also include all guarantees of and security for the tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto that are permitted hereunder.  This is a present and absolute assignment, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property. This assignment of Leases and Rent is intended to be specific, perfected, and choate upon recording as provided in RCW § 7.28.230.

      3.2.    <u>Grant of License</u>.  Lender confers upon Grantor a revocable license (the "**License**") to collect and retain the Payments as they become due and payable, until the occurrence of an Event of Default (as hereinafter defined).  Upon an Event of Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property.  All Payments thereafter collected by Grantor shall be held by Grantor as trustee under a constructive trust for the benefit of Lender.  Grantor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing.  Grantor hereby relieves the tenants from any liability to Grantor by reason of relying upon and complying with any such notice or demand by Lender.  Lender may apply, in its sole discretion, any Payments so collected by Lender against any Secured Obligation or any other obligation of Grantor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising.  Collection of any Payments by Lender shall not cure or waive any Event of Default or notice of an Event of Default or invalidate any acts done pursuant to such notice.

      3.3.    <u>Effect of Assignment</u>.  The foregoing irrevocable assignment shall not cause Lender to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; (c) responsible or liable for any

6

Security Instrument
310704763.4

waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or (d) responsible for or impose upon Lender any duty to produce rents or profits.  Lender shall not directly or indirectly be liable to Grantor or any other person as a consequence of:  (e) the exercise or failure to exercise any of the rights, remedies or powers granted to Lender hereunder; or (f) the failure or refusal of Lender to perform or discharge any obligation, duty or liability of Grantor arising under the Leases.

      3.4.   <u>Covenants</u>.

         (a)   <u>All Leases</u>.  Grantor shall, at Grantor's sole cost and expense:

            (i)   perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

            (ii)   use reasonable efforts to keep the Property leased at all times to tenants that Grantor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

            (iii)   promptly upon Lender's request, deliver to Lender a copy of each requested Lease and all amendments thereto and waivers thereof, as well as any landlord or tenant estoppel certificates requested by Lender;

            (iv)   promptly upon Lender's request, execute and record any additional assignments of landlord's interest under any Lease to Lender and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Lender; and

            (v)   promptly upon Lender's request, but in any event by June 30th of each year, provide Lender a current rent roll, certified by Grantor as being true and correct, containing the names of all tenants with respect to the Property, the terms of their respective Leases, the spaces occupied and the rentals or fees payable thereunder and the amount of each tenant's security deposit.

Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Grantor shall not:

            (vi)   grant any tenant under any Lease any option, right of first refusal or other right to purchase all or any portion of the Property under any circumstances;

            (vii)   grant any tenant under any Lease any right to prepay rent more than one (1) month in advance;

(viii)     except upon Lender's request, execute any assignment of landlord's interest in any Lease;

(ix)     except as set forth in Section 3.4(a)(vii), collect rent or other sums due under any Lease in advance, other than to collect rent one (1) month in advance of the time when it becomes due;

(x)     modify any Lease in a manner inconsistent with the Loan Documents;

(xi)     convey or transfer or suffer or permit a conveyance or transfer of the Property so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees under Leases;

(xii)     consent to any assignment of or subletting under any Major Lease unless required in accordance with its terms;

(xiii)     cancel or terminate any Lease or accept a surrender thereof (except in the exercise of Grantor's commercially reasonable judgment in connection with a tenant default under a Lease that is not a Major Lease) or

(xiv)     execute any lease for a term of greater than five (5) years, which deviates materially from the standard form Lease approved by Lender in writing.

Any such attempted action in violation of the provisions of this Section 3.4(a) shall be null and void.

(b)     <u>Major Leases</u>.  Grantor shall, at Grantor's sole cost and expense, give Lender prompt written notice of any material default by landlord or tenant under any Major Lease (as defined below).  Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Grantor, in each case, shall not:

(i)     enter into any Major Lease without first obtaining Lender's prior written consent, which consent shall not be unreasonably withheld unless an Event of Default has occurred];

(ii)     reduce any rent or other sums due from the tenant under any Major Lease;

(iii)     terminate or materially modify or amend any Major Lease; or

(iv)     release or discharge the tenant or any guarantor under any Major Lease from any material obligation thereunder.

Any such attempted action in violation of the provisions of this Section 3.4(b) shall be null and void.

Without in any way limiting the requirement of Lender's consent hereunder, any sums received by Grantor in consideration of any termination or material modification or amendment of any

8

Security Instrument
310704763.4

Major Lease or any release or discharge of any tenant under any Major Lease from any material obligation thereunder shall be applied to reduce the outstanding Secured Obligations (without payment of a prepayment charge) and any such sums received by Grantor shall be held in trust by Grantor for such purpose; provided, however, so long as no Event of Default exists at the time, any sums received by Grantor in consideration of any termination (or the release or discharge of any tenant), modification or amendment of any Major Lease that:  (A) total less than $50,000 shall be payable to Grantor; and (B) total $50,000 or more shall be placed into an impound account and shall be released to Grantor from time to time upon delivery of an executed replacement tenant lease and satisfactory evidence as to the completion of re-tenanting work.  Following the completion of such re-tenanting work, and provided no Default exists at such time, Lender shall release any excess funds received by Grantor with respect to the termination of any Major Lease to Grantor.  "**Major Lease**," as used herein, shall mean, in each case, (w) demise at least one (1) full floor of the Property, (x) a Lease of more than twenty percent (20%) of the total rentable area of all buildings forming a part of the Property (assuming the exercise of all expansion rights and all preferential rights to lease additional space contained in any such Lease), as  determined by Lender, (y) cell tower Leases, and (z) Leases of oil, gas and mineral rights.  Grantor's obligations with respect to Major Leases shall be governed by the provisions of Section 3.4(a) hereof applicable to all Leases as well as by the provisions of this Section 3.4(b).  Lender's failure to deny any written request by Grantor for consent as required by this Section 3.4(b) within twenty (20) Business Days after Lender's receipt of such request (and all documents and information reasonably related thereto) shall be deemed to constitute Lender's consent to such request.  "**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Deed of Trust to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

      3.5.    <u>Estoppel Certificates</u>.  Within thirty (30) days after request by Lender, Grantor shall deliver to Lender and to any party designated by Lender, estoppel certificates relating to the Leases executed by Grantor and by each of the tenants, in form and substance acceptable to Lender; provided, however, if any tenant fails or refuses to so execute and deliver any such estoppel certificate upon request, Grantor shall use reasonable efforts to cause such tenant to execute and deliver such estoppel certificate but such tenant's continued failure or refusal to do so, despite Grantor's reasonable efforts, shall not constitute a default by Grantor under this Section 3.5.

      3.6.    <u>Right of Subordination</u>.  Lender may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Grantor, any tenant or any other person.  Notice is hereby given to each tenant under a Lease of such right to subordinate.  No subordination referred to in this Section 3.6 shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lienholder.  Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

ARTICLE 4

SECURITY AGREEMENT AND FIXTURE FILING

      4.1.    <u>Security Interest</u>.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of RCW 62A-9A of the Washington Uniform Commercial Code (the "**Collateral**"), and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to RCW 62A-9A of the Washington Uniform Commercial Code with respect to the Personalty and Fixtures.

9

To this end, Grantor shall and hereby does grant to Lender, a first priority security interest in, under and to the Collateral.

     4.2.   <u>Financing Statements</u>.  Grantor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

     4.3.   <u>Remedies on Default</u>.  Upon an event of default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the Washington Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in Washington or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Grantor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.  All of Lender's rights and remedies shall be cumulative and not exclusive.

     4.4.   <u>Fixture Filing</u>.  This Deed of Trust shall constitute a fixture filing under the Washington Uniform Commercial Code.

     4.5.   <u>Additional Covenants of Grantor</u>.  Grantor, at its sole cost and expense, (a) shall give Lender at least thirty (30) days' prior written notice of any change in Grantor's principal place of business and the acquisition or use of a trade name or style by Grantor; (b) shall promptly notify Lender in writing of any claim, lien, security interest, right, encumbrance or any other occurrence that may be adverse to Lender's security interest in the Collateral; (c) shall defend the Collateral from all claims, liens, security interests, rights, encumbrances and other matters that are adverse to Lender's security interest in the Collateral; (d) shall promptly pay all costs and expenses relating to the purchase, ownership, or use of the Collateral, including all liens, taxes, assessments and charges of any board, commission, department, agency, court, or other body of any governmental unit (e.g., without limitation, (i) the federal government and the departments thereof and (ii) applicable state governments and any cities, counties, or other political subdivisions or special districts organized thereunder) having jurisdiction over, in each case, the matter, thing, or person in question (collectively, "**Governmental Authorities**") levied, assessed or imposed on all or part of the Collateral; (e) shall not sell, transfer, pledge (including, without limitation, any assignment for the benefit of creditors other than Lender), hypothecate, lease or otherwise dispose of or abandon all or part of the Collateral without Lender's prior written consent, except for the sale of inventory in the ordinary course of Grantor's business or the disposition of any Collateral that is replaced with new Collateral of substantially comparable value and utility; (f) shall not remove any material part of the Collateral that consists of tangible personal property from its location on the Property without Lender's prior written consent; (g) shall, upon Lender's request, give notice, in form and substance acceptable to Lender, to any or all account debtors designated by Lender of Grantor's grant of a security interest in any Collateral that consists of accounts, contract rights, instruments, documents, or general intangibles (collectively, the "**Accounts**" and individually, an "**Account**"); (h) following the occurrence of any Event of Default, shall not compromise, settle, adjust, or grant any discount, credit, or allowance to any Account debtor without Lender's prior written consent; (i) shall undertake any and all other acts necessary or appropriate to maintain, preserve and protect the Collateral and Lender's security interest therein, including any actions requested by Lender; (j) shall not without Lender's prior written consent, given at Lender's sole discretion and signed by an officer of Lender holding the title of Executive Vice President or higher, make or acquiesce in Grantor making any changes to organizational documents of, in each case, Grantor or any affiliate

10

Security Instrument
310704763.4

thereof or interest holder therein (e.g., without limitation, articles of organization, articles of incorporation, operating agreement, bylaws, certificate of formation, partnership agreement) that, in each case, violate or are inconsistent with Grantor's obligations under the Loan Documents or materially alter Grantor's performance of its duties under the Loan Documents (each an "**Unauthorized Amendment**"), and Grantor hereby agrees that Unauthorized Amendments shall not adversely affect Lender's rights and remedies against Grantor under the Loan Documents and that Grantor shall be estopped from using any Unauthorized Amendment as a defense to or to otherwise impair, delay, or undermine Lender's remedies against Grantor under the Loan Documents; and (k) shall execute and deliver to Lender such other documents as Lender may request in order to evidence, effectuate, perfect, maintain, preserve or protect Lender's security interest in the Collateral, including, without limitation, financing statements, continuation financing statements, financing statement amendments, security agreements, and assignments.  If Grantor fails to execute and deliver to Lender any document requested by Lender pursuant to this Section 4.4 within ten (10) days after such request, then Grantor irrevocably appoints Lender, with full power of substitution, as Grantor's attorney-in-fact, coupled with an interest, with full power, in its own name or in the name of Grantor, to execute such document on behalf of Grantor.  Grantor has set forth above its full and correct name, and Grantor does not presently use any other names or tradenames, except for those tradenames specifically disclosed in writing by Grantor to Lender prior to the recordation of this Deed of Trust.  Nothing contained in this Article 4 may be construed to obligate Lender to act on behalf of Grantor as attorney-in-fact.

      4.6.     FOR PURPOSES OF THE UCC THE FOLLOWING INFORMATION IS FURNISHED:

| | |
|---|---|
| Name, address of Debtor(s): | Amity Court LLC<br>1215 120th Ave NE, Suite 204<br>Bellevue, WA 98005 |
| Name and address<br>of Secured Party | Axos Bank<br>4350 La Jolla Village Dr., Ste. 100<br>San Diego, CA 92122 |
| Description of the type<br>(or items) of property (constituting the<br>Collateral): | See Section 4.1. |
| Description of real property<br>to which the Collateral<br>is attached or upon which<br>it is or will be located: | See <u>Exhibit A</u> hereto. |

## ARTICLE 5

### REPRESENTATIONS AND WARRANTIES

      5.1.    <u>Grantor's Representations and Warranties</u>.  Grantor represents and warrants to Lender that the following statements are true and correct as of the date set forth in the preamble, each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires:

Security Instrument
310704763.4

(a)     <u>Legal Status</u>.  Grantor is a limited liability company duly organized and existing under the laws of the State of Washington, and is qualified or licensed to do business in all jurisdictions in which such license or qualification is required.

(b)     <u>No Conflicts</u>.  The execution, delivery and performance of the Loan Documents by Grantor and the transactions contemplated hereby will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien or encumbrance (other than pursuant to the Loan Documents) upon any of the property of Grantor pursuant to the terms of, any agreement or instrument to which Grantor is a party or by which its property is subject, nor will such action result in any violation of the provisions of any statute or any order, rule or regulation of any governmental authority having jurisdiction over Grantor or any of its properties.  Any consent, approval, authorization, order, registration or qualification of or with any governmental authority required for the execution, delivery and performance by Grantor of the Loan Documents has been obtained and is in full force and effect.

(c)     <u>Permits</u>.  Grantor, or an affiliate thereof if permitted to do so under applicable law, possess all permits, franchises, licenses, entitlements, trade names and fictitious names, necessary for Grantor to undertake the business activities related to its possession of the Property.

(d)     <u>Authorization and Validity</u>.  The execution and delivery of this Deed of Trust have been duly authorized and this Deed of Trust constitutes a valid and binding obligation of Grantor, in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

(i)     The person executing this Deed of Trust has all necessary power and authority to execute and deliver this Deed of Trust for, on behalf of, and in the name of such Grantor.

(ii)    If Grantor is a trust or Grantor has caused any trust documents to be delivered to Lender in connection with its organizational structure, Grantor's trust documents or such other trust documents have not been amended or altered (except for such amendments as have been provided to Lender) and are in full force and effect as of the date hereof.

(iii)   Grantor has had an adequate opportunity to consult with legal counsel of Grantor's choosing prior to executing and delivering this Deed of Trust.

(e)     <u>Non-Circumvention</u>.  The execution, delivery and performance by Grantor of this Deed of Trust do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Grantor is a party or by which Grantor is bound.

(f)     <u>Litigation</u>.  There are no pending or threatened actions, claims, investigations, suits or proceedings before any Governmental Authorities, court or administrative agency that may adversely affect the financial condition or operations of Grantor other than those previously disclosed in writing by Grantor to Lender.

(g)     <u>Financial Statements</u>.  The financial statements of Grantor, of each general partner (if Grantor is a partnership) and/or each member (if Grantor is a limited liability company) previously delivered by Grantor to Lender:  (i) are materially complete and correct; (ii) present fairly the financial condition of such party; and (iii) have been prepared in accordance with the same accounting

12

Security Instrument
310704763.4

standard used by Grantor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender.  Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered except as previously disclosed in writing by Grantor to Lender, prior to Lender's issuing a final commitment letter, and approved in writing by Lender.

(h)     Income Taxes.    There are no pending assessments or adjustments of Grantor's income tax payable with respect to any year.

(i)     Title.  Grantor lawfully holds and possesses fee simple title to the Property, without limitation on the right to encumber same.  This Deed of Trust is a first lien on the Property prior and superior to all other liens and encumbrances on the Property except:  (i) liens for real estate taxes and assessments not yet due and payable; (ii) senior exceptions previously approved by Lender and shown in the title insurance policy insuring the lien of this Deed of Trust; and (iii) other matters, if any, previously disclosed to Lender by Grantor and approved by Lender in a writing specifically referring to this representation and warranty.

(j)     Intentionally Omitted.

(k)     Liens.  There are no mechanics' or similar liens or claims that have been filed for work, labor or material (and no rights are outstanding that under law could give rise to any such liens) affecting the Property that are or may be prior to or equal to the lien of this Deed of Trust.

(l)     Encroachments.  To the best of Grantor's knowledge, except as shown in the survey, if any, previously delivered to Lender, none of the buildings or other improvements that were included for the purpose of determining the appraised value of the Property lies outside of the boundaries or building restriction lines of the Property, and no buildings or other improvements located on adjoining properties encroach upon the Property.

(m)     Tax Returns.  Grantor has provided true, correct and complete copies of the tax returns for Grantor, or of the person whose tax return contains the tax liabilities of Grantor if Grantor is a disregarded entity (collectively, the "**Tax Return**"), which Tax Return is the most recent tax return prepared for Grantor.  The Tax Return gives a true, correct and complete statement of financial condition for Grantor as of the date hereof.

(n)     Taxes Paid.  Grantor has filed all federal, state, county and municipal tax returns required to have been filed by Grantor, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Grantor, and Grantor has no knowledge of any basis for additional assessment with respect to such taxes.  To the best of Grantor's knowledge, there are not presently pending any special assessments against the Property or any part thereof.

(o)     Leases.  All existing Leases are in full force and effect and are enforceable in accordance with their respective terms.  No material breach or default by any party, or event that would constitute a material breach or default by any party after notice or the passage of time, or both, exists under any existing Lease.  None of the landlord's interests under any of the Leases, including, but not limited to, rents, additional rents, charges, issues or profits, has been transferred or assigned.  No rent or other payment under any existing Lease has been paid by any tenant for more than one (1) month in advance.

13

Security Instrument
310704763.4

(p)    <u>Collateral</u>.  Grantor has good title to the existing Collateral.  Grantor has not previously assigned or encumbered Grantor's interest in any of the Collateral, and no financing statement that remains in force covering any of the Collateral has been delivered to any other person or entity.  Grantor's principal place of business is located at the address shown in Section 4.6.

(q)    <u>Condition and Use of Property</u>.  Except as shown in the property condition survey or other engineering reports, if any, previously delivered to or obtained by Lender, the Property is in good condition and repair and is free from any damage, waste or defect that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property. The Property is and shall remain for the term of Loan exclusively used for the same commercial purpose as existing as of the date this Deed of Trust is entered into.

(r)    <u>Wetlands</u>.  No part of the Property consists of or is classified as wetlands, tidelands or swamp and overflow lands.

(s)    <u>Compliance with Laws; ERISA</u>.

(i)    The Property is used exclusively for commercial office use and other appurtenant and related uses.  In the event that all or any part of the Improvements are destroyed or damaged, said Improvements shall be legally reconstructed to their condition prior to such damage or destruction, and thereafter exist for the same use without violating any zoning or other ordinances applicable thereto and without the necessity of obtaining any variances or special permits.  No legal proceedings are pending or, to the knowledge of Grantor, threatened with respect to the zoning of the Property.  Neither the zoning nor any other right to construct, use or operate the Property is in any way dependent upon or related to any property other than the Property.  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property (collectively, the "**Licenses**"), have been obtained and are in full force and effect. The use being made of the Property is in conformity with the certificate of occupancy issued for the Property and all other restrictions, covenants and conditions affecting the Property.

(ii)    Grantor shall not engage in any transaction that would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

(iii)    Grantor (i) is not and shall not be an "employee benefit plan," as defined in Section 3(3) of ERISA, or a "plan," as defined in Section 4975 of the Code, (ii) none of the assets of Grantor constitutes or will constitute "plan assets" of one or more "benefit plan investors" (as those terms are defined in the Plan Asset Regulation), (iii) Grantor is not and shall not be a "governmental plan" within the meaning of Section 3(32) of ERISA, and (iv) transactions by or with Grantor are not and will not be subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans.  As of the date hereof, neither Grantor, nor any ERISA affiliate maintains, sponsors or contributes to any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Grantor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code).

Security Instrument
310704763.4

(t)     <u>Change in Business or Operation of Property</u>.  Borrower shall not cease to operate the Property as a commercial office property.

(u)     <u>Property Taxes and Other Liabilities</u>.  All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, and ground rents, if any, that previously became due and owing in respect of the Property have been paid.

(v)     <u>Condemnation</u>.  There is no proceeding pending or threatened for the total or partial condemnation of the Property.

(w)     <u>Homestead</u>.  There is no homestead, dower, or other exemption available to Borrower that would materially interfere with the right to sell the Property at a trustee's sale or the right to foreclose this Deed of Trust.

(x)     <u>Property</u>.  Grantor owns (or will own, prior to the date set forth in the preamble) fee simple title to the Property.  This Deed of Trust creates the lien and security it purports to create and is a valid and binding obligation of Grantor enforceable against Grantor and the Property in accordance with its terms.

(y)     <u>No Default</u>.  The execution, delivery and performance of the obligations imposed on Grantor under this Deed of Trust will not cause Grantor to be in default under the provisions of any agreement, judgment or order to which Grantor is a party or by which Grantor is bound.

(z)     <u>Items Due and Payable</u>.  No default or Event of Default exists under any  Loan Documents, and all of the following items regarding the Property which have become due and payable have been paid, or, with the approval of Lender, an escrow fund sufficient to pay them has been established:  taxes; government assessments; insurance premiums; water, sewer and municipal charges; leasehold payments; ground rents; and any other charges affecting the Property.

(aa)     <u>Compliance with Applicable Laws and Regulations</u>.  All Improvements to the Property and the use of the Property comply with all applicable statutes, rules and regulations, including, without limitation, all applicable statutes, rules and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use.  Improvements on the Property comply with applicable health, fire, and building codes and the Americans with Disabilities Act 42 U.S.C.A. Section 12101 et seq., as amended from time to time (the "**ADA**"), or, if exempt from the ADA, the Improvements are accessible to and useable by persons with disabilities and shall at all times during the term of the Loan be in compliance with applicable law and regulations.  There is no evidence of any illegal activities relating to controlled substances on the Property.  All required permits, licenses and certificates for the lawful use and operation of the Property, including, but limited to, certificates of occupancy, municipal licenses, or the equivalent, have been obtained and are current and in full force and effect.

(bb)     <u>Insurance Policies</u>.  Grantor has furnished to Lender all insurance policies and certificates required pursuant to the Loan Documents.

(cc)     <u>No Insolvency Proceeding or Judgment</u>.  Grantor is not currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state in which the Property is located or in any court located in the United States.

Security Instrument
310704763.4

(dd)  No Subordinate Financing.  Except as otherwise expressly approved by Lender in writing signed by an officer of Lender holding the title Executive Vice President or more senior, no part of the Property is, or will become, subject to a subordinate mortgage, deed of trust, security instrument (other than this Deed of Trust), or other type of subordinate lien.

(ee)  No Labor or Material Supplier Claims.  All parties furnishing labor and materials have been paid in full and, except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or material supplier's liens or claims outstanding for work, labor or materials affecting the Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(ff)  No Other Interests.  No person has (a) any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of existing leases by and between tenant and Grantor, the material terms of all such leases having been previously disclosed to Lender, or (b) an option to purchase the Property or an interest therein (including, without limitation, any right of first offer or refusal).

(gg)  Property Characteristics.  No part of the Property is included or assessed under or as part of another tax lot or parcel, no part of any other property is included or assessed under or as part of the tax lot or parcels for the Property, other than as expressly disclosed to Lender in writing and accepted by Lender during its underwriting process prior to Lender issuing its final commitment letter.

(hh)  Operating Statements.  Grantor has provided Lender a true, correct and complete copy of its most recent operating statement (the "**Operating Statement**") prepared for the Property. The Operating Statement gives a true, correct and complete statement of financial conditions for the Property as of the date hereof.

(ii)  Service Contracts.  Grantor has provided Lender with a true, correct and complete list of all service contracts and service agreements relating to the Property and/or the ownership, maintenance and operation of the Improvements located on the Property (the "**Service Contracts**"). Each of the Service Contracts is in full force and effect in accordance with its terms; neither party is in default under any of the Service Contracts; true, correct and complete copies of each of the Service Contracts have been provided to Lender in connection with its underwriting of the Loan; and each of the Service Contracts is terminable on not more than thirty (30) days' notice without the payment of any fee, penalty, cost or expense.

(jj)  Furniture, Fixtures and Equipment.  Except for furniture and trade fixtures, equipment, and other personal property owned by any tenant of the Property, all furniture, fixtures and equipment used in connection with the ownership, management, operation and maintenance of the Property are free and clear of any right, title or interest of any other person or entity.

(kk)  Financial Statements.  The financial statements of Grantor reflect a positive net worth as of the date thereof.

(ll)  Insolvency.  Grantor is not presently insolvent, and the Loan will not render Grantor insolvent.  The term "insolvent" means, either and in each case, that (i) the sum total of all of an a person's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all such entity's non-exempt assets, i.e., all of the assets of the entity that

Security Instrument
310704763.4

are available to satisfy claims of creditors or (ii) a person will not be able to pay all creditors as obligations are become due.

(mm)  <u>Fraudulent Transfer</u>.  Grantor has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor, and Grantor has received reasonably equivalent value in exchange for its obligations under the Loan Documents.  Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of Grantor's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed Grantor's total probable liabilities, including subordinated, unliquidated, disputed or contingent liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured.  Grantor's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted.  Grantor does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of Grantor).

(nn)  <u>Working Capital</u>.  After the Loan is made, Grantor will have sufficient working capital, including cash flow from the Property or other assets, not only to adequately maintain the Property, but also to pay all of Grantor's outstanding debts as they come due.

(oo)  <u>No Material Change</u>.  There has been no material change in the occupancy of the Property or the business, financial condition or results of operations of Grantor, the Property or, to the best of Grantor's knowledge, any tenant of the Property, from the date of the application to Lender to make the Loan, other than in connection with the regular commencement and/or, expiration of short-term leases and rental agreements ordinarily occurring as part of the business conducted on the Property and as disclosed by Grantor to Lender in Lender's underwriting process for the Loan.

(pp)  <u>Investigation and Inquiry</u>.  Grantor makes the representations and warranties contained this Section 5.1 following Grantor's reasonable inquiry and investigation into the matters and facts to which Grantor is attesting, and Grantor's inquiry and investigation has confirmed the accuracy of Grantor's statements made in this Section 5.1.

<u>Federal Reserve Regulations; Investment Company Act</u>.  No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose that would be inconsistent with such Regulation U or any other regulation of such Board of Governors, or for any purpose prohibited by Legal Requirements or any Loan Document.  Grantor is not (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; or (ii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

ARTICLE 6

RIGHTS AND DUTIES OF THE PARTIES

6.1.  <u>Maintenance and Preservation of the Property</u>.  Grantor shall:  (a) keep the Property in good condition and repair; (b) complete or restore promptly and in workmanlike manner the Property or any part thereof which may be damaged or destroyed (unless, if and to the extent permitted under Section 6.11 hereof, Lender elects to require that insurance proceeds be used to reduce the Secured

17

Security Instrument
310704763.4

Obligations and after such repayment the ratio of Secured Obligations to the value of the Property, as reasonably determined by Lender is the same as or lower than it was immediately before the loss or taking occurred); (c) comply and cause the Property to comply with (i) all laws, ordinances, regulations and standards, (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and pertain to acts committed or conditions existing thereon, including, without limitation, any work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (d) operate and manage the Property at all times in a professional manner and do all other acts that from the character or use of the Property may be reasonably necessary to maintain and preserve its value; (e) promptly after execution, deliver to Lender a copy of any management agreement concerning the Property and all amendments thereto and waivers thereof; and (f) execute and acknowledge all further documents, instruments and other papers as Lender or Trustee deems necessary or appropriate to preserve, continue, perfect and enjoy the benefits of this Deed of Trust and perform Grantor's obligations, including, without limitation, statements of the amount secured hereby then owing and statements of no offset. Grantor shall not: (g) remove or demolish all or any material part of the Property; (h) alter either (i) the exterior of the Property in a manner that materially and adversely affects the value of the Property or (ii) the roof or other structural elements of the Property in a manner that requires a building permit; (i) initiate or acquiesce in any change in any zoning or other land classification that affects the Property; (j) materially alter the type of occupancy or use of all or any part of the Property; (k) commit or permit waste of the Property, (l) modify or consent to a modification of any easement, covenant, restriction or other matters of records without Lender's prior written consent, or (m), whether by Grantor's action or inaction, cause, permit, or otherwise allow any activity that may, in Lender's sole and absolute discretion, adversely impact Lender's title insurance policy insuring the lien of this Deed of Trust, without the prior written consent of Lender..

6.2.    <u>Compliance with Laws</u>. Grantor shall comply with all federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all requirements of the ADA. Grantor shall possess and maintain in full force and effect at all times (a) all certificates of occupancy and other licenses, permits and authorizations required by applicable law for the existing use of the Property and (b) all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, required by applicable law for Grantor to conduct the business(es) in which Grantor is now engaged.

6.3.    <u>Litigation</u>. Grantor shall promptly notify Lender in writing of any litigation pending or threatened against either Grantor claiming damages in excess of $50,000 and of all pending or threatened litigation against either Grantor if the aggregate damage claims against Grantor exceed $100,000.00.

6.4.    <u>Business Structure Change, Alienation of Assets</u>. Grantor shall not:  (a) merge or consolidate with any other entity, except when authorized to do so with the prior written consent of Lender as expressly authorized pursuant to Section 6.14 hereof; (b) make any substantial change in the nature of Grantor's business or structure; (c) acquire all or substantially all of the assets of any other entity or permit Grantor to acquire all or substantially all of the assets of any other entity; or (d) sell, lease, assign, transfer or otherwise dispose of a material part of Grantor's assets except in the ordinary course of Grantor's business.

6.5.    <u>Accounting Records</u>. Grantor shall maintain adequate books and records in accordance with the same accounting standard used by Grantor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards approved by Lender. Grantor shall permit any representative of Lender, at any reasonable

Security Instrument
310704763.4

time and from time to time, to inspect, audit and examine such books and records and make copies of same.

6.6.    Financial Statements and Accounts.

6.6.1.    Statements Required.  During the term of the Loan or while any liabilities of Grantor to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Grantor shall provide to Lender or cause to be provided to Lender, each in a form acceptable to Lender, the following:

(a)    Leasing Schedule.  Not later than thirty (30) days after written request by Lender, a schedule, signed and dated by Grantor, showing the following lease information regarding each tenant:  the name of the tenant, a description of the premises, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status;

(b)    Balance Sheet and Annual Financial Statements.  With respect to Grantor, not later than ninety (90) days after the close of the respective fiscal years of Grantor, any guarantor, and any indemnitor, balance sheet and financial statements, including, as applicable and without limitation:  (i) balance sheet for the Property, signed and dated by Grantor; (ii) a schedule, signed and dated by Grantor, showing all revenues and expenses during such fiscal year, relating to the Property; (iii) financial statements showing all assets and liabilities of Grantor that shall be certified by a principal, managing member or general partner of Grantor as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant; and (iv) financial statements showing all assets and liabilities of each indemnitor and guarantor under any indemnity or guarantee, which shall be certified by such guarantor or indemnitor or the principal, managing member or general partner of such indemnitor or guarantor, as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant;

(c)    Tax Returns.  Not later than April 30th of each year, copies of all tax returns (with all schedules) or extensions filed by Grantor (or on Grantor's behalf, if Grantor is a disregarded entity), unless an extension has been obtained, but no event later than the earlier of (i) September 1st of each year or (ii) within twenty (20) days after filing;

(d)    Other Information.  From time to time, such other information with regard to Grantor or the Property as Lender may reasonably request in writing.

6.6.2.    Form; Warranty.  Grantor agrees that all financial statements to be delivered to Lender, pursuant to Section 6.6.1 hereof, regardless of whether they pertain to Grantor shall:  (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Grantor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender. By delivering any such financial statement, Grantor shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Grantor in a writing delivered to Lender.

19

Security Instrument
310704763.4

Grantor agrees that all leasing schedules and other information to be delivered to Lender pursuant to Section 6.6.1 hereof and this Section 6.6.2, in each case, shall not contain any misrepresentation or omission of a material fact.

6.6.3.   <u>Accounts and Primary Banking Relationships</u>.   Grantor shall establish its primary deposit and operating accounts with Lender.

6.7.   <u>Costs, Expenses and Fees</u>.   Grantor agrees to pay to Lender immediately and upon demand all costs and expenses incurred by Trustee and Lender in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein. Grantor shall pay to Lender the full amount of all costs and expenses, including, without limitation, attorneys' fees (i.e., outside counsel), incurred by Lender in connection with: (a) appraisals and inspections of the Property or Collateral required by Lender as a result of (i) a Transfer (as hereinafter defined) or proposed Transfer, or (ii) an Event of Default; (b) any acts performed or proposed to be performed by Lender at Grantor's request or wholly or partially for the benefit of Grantor (including, without limitation, the preparation or review of amendments, consents, authorizations, assumptions, waivers, releases, reconveyances, estoppel certificates or statements of amounts owing under any Secured Obligation); (c) when permissible pursuant to applicable law and without limitation to Lender's rights under sub-clauses (a), (b), and (d) of this Section 6.7, any out-of-pocket expenses or costs incurred by Lender in taking any action prudent or reasonably necessary, in each case, in Lender's judgment to protect or preserve the priority of, in each case, Lender's liens securing the Secured Obligations; and (d) when permissible pursuant to applicable law and without limitation to Lender's rights under the preceding sub-clauses (a), (b), and (c) of this Section 6.7, any out-of-pocket costs and expenses incurred by Lender and its agents in responding to third-party legal process, subpoenas, or similar legal demands received by Lender and its agents as a result of or in relation to, in each case, the Secured Obligations, the Loan Documents, or Grantor's business with Lender, including, without limitation charges, expenses, attorney's fees and costs upon any appeal, and in any bankruptcy proceedings and in any arbitration proceeding (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise incurred by Lender as a result thereof. Grantor shall pay all costs and expenses arising under this Section 6.7 immediately upon demand by Lender. Any administrative fees owed to Lender pursuant to the Loan Documents, including, without limitation, those owed pursuant to Section 6.14 hereof (but excluding 6.14.4(a)) shall be due and payable immediately upon Grantor requesting the action from Lender and shall be non-refundable, irrespective of the disposition of the request by Lender. Grantor shall have no expectation that Lender commence review of any matter or request prior to Grantor paying the required fee pursuant to the Loan Documents. In addition and without limitation to Lender's right to recover all its out-of-pocket expenses from Grantor on demand as provided in this Section 6.7, Lender shall have the right to require Grantor to provide a legal deposit (i.e., payment in advance) before engaging outside counsel to do any legal work and to refresh that deposit, at Lender's request, over the pendency of the matter.  Grantor shall have no expectation that Lender commence any legal work with outside counsel prior to Grantor paying any legal deposit requested by Lender.  For the avoidance of doubt, any reference in the Loan Documents to out-of-pocket costs or expenses incurred by Lender shall be construed, without limitation to other kinds of costs and expenses incurred by Lender, to include attorneys' fees (i.e., outside counsel).  For the further avoidance of doubt, no other provision regarding Lender's right to payment of fees, costs, and expenses from Grantor contained in either (i) this Deed of Trust or (ii) any other Loan Document, in each case, may be construed to limit Lender's rights pursuant to this Section 6.7, including, without limitation, Lender's right to require an advance deposit for legal fees (it being understood that any other provision of the Loan Documents pertaining to Lender's right to payment of fees, costs, and expenses, from Grantor in each case, shall be construed consistent with this Section 6.7).  Without limiting the

Security Instrument
310704763.4

generality of the immediately preceding sentence, no provision specifically requiring payment of a fee, cost, or expense to Lender by Grantor, by being so affirmatively and specifically stated in any Loan Document, may be construed to limit Lender's rights to payment pursuant to this Section 6.7 for any fee, cost, or expense, in each case, provided for by this Section 6.7, but not so specifically stated. In the event that any party brings any suit or other proceeding with respect to the subject matter or enforcement of this Deed of Trust, including without limitation, in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 United States Code Sections 101 et seq., or any successor statutes, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation.

6.8.    No Other Liens, Encumbrances and Charges.  Without obtaining Lender's prior written consent pursuant to Section 6.14 (which consent shall be granted or withheld in Lender's sole and absolute discretion and at Grantor's sole cost and expense), Grantor shall not incur against the Property any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Loan and trade debt incurred in the ordinary course of Grantor's business (with any such trade debt to be paid within sixty (60) days of the date such debt was incurred and, in any event, prior to delinquency).  Grantor shall immediately discharge by bonding or otherwise any lien, charge or other encumbrance that attaches to the Property in violation of Section 6.14.  Subject to Grantor's right to contest such matters under this Deed of Trust or as expressly permitted in the Loan Documents, Grantor shall pay when due all obligations secured by or reducible to liens and encumbrances that shall now or hereafter encumber or appear to encumber all or any part of the Property or any interest therein, whether senior or subordinate hereto, including, without limitation, all claims for work or labor performed, or materials or supplies furnished, in connection with any work of demolition, alteration, repair, improvement or construction of or upon the Property, except such as Grantor may in good faith contest or as to which a bona fide dispute may arise (provided that provision is made to the satisfaction of Lender for eventual payment thereof in the event that Grantor is obligated to make such payment and that any recorded claim of lien, charge or other encumbrance against the Property is immediately discharged by bonding or otherwise).

6.9.    Taxes and Other Liabilities.  Grantor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real and personal and including federal and state income taxes and state and local property taxes and assessments by or before the due date. Grantor shall promptly provide to Lender copies of all tax and assessment notices pertaining to the Property.  Grantor hereby authorizes Lender to obtain, at Grantor's expense, a tax service contract which shall provide tax information on the Property to Lender for the term of the Loan and any extensions or renewals of the Loan.

6.10.    Insurance Coverage.  Grantor shall insure the Property against loss or damage by fire and such other hazards as Lender shall from time to time require, however, not to exceed full replacement cost; provided, however, (a) Lender, at Lender's election, may only require flood insurance if all or any portion of the Improvements located on the Property is or becomes located in a special flood hazard area; and (b) Lender, at Lender's election, may only require earthquake insurance if all or any portion of the Property is or becomes located in an earthquake fault zone.  Grantor shall also carry public liability insurance and such other insurance as Lender may require, including, without limitation, business interruption insurance or loss of rents insurance.  Such policies shall contain a standard mortgage clause naming Lender and its successors and assigns as a loss payee or additional insured, as appropriate, and requiring at least thirty (30) days' prior notice to the holder at termination or cancellation. Grantor shall maintain all required insurance at Grantor's expense, in companies, and in substance and form satisfactory to Lender, including, without limitation, an agreed amount

21

Security Instrument
310704763.4

endorsement.  Neither Lender nor Trustee, by reason of accepting, rejecting, approving or obtaining insurance shall incur any liability for:  (c) the existence, nonexistence, form or legal sufficiency of any insurances; (d) the solvency of any insurer; or (e) the payment of claims.

If Grantor fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Deed of Trust, upon ten (10) days' prior notice to Grantor, Lender may procure such insurance at Grantor's sole cost and expense.  Grantor agrees to deliver to Lender promptly upon receipt, but in any event no later than thirty (30) days' prior to the termination of any of such insurance policies, a renewal policy (or certificate of insurance evidencing the same) satisfying the requirements of this Deed of Trust.

      6.11.   Insurance and Condemnation Proceeds.

        (a)   Assignment of Claims.  Grantor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, the "**Claims**"), all of which shall be paid to Lender:  (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property; (iii) all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property; and (iv) all interest which may accrue on any of the foregoing.  Grantor shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of, the Property or any portion thereof.  Lender may, in each case, commence, appear in, defend or prosecute any Claim, and may adjust, compromise, and settle all Claims, but shall not be responsible for any failure to commence, appear in, defend, prosecute or collect any such Claim regardless of the cause of the failure.  All awards, proceeds, and other sums described herein shall be payable to Lender.

        (b)   Application of Proceeds; No Event of Default.  (1) So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the proceeds of the Claims (the "**Proceeds**") and no Event of Default occurs thereafter, Lender shall apply the Proceeds in the following order of priority:  First, to Lender's expenses in settling, prosecuting or defending the Claims; Second, to the repair or restoration of the Property; and Third, to Grantor if and only if the repair or restoration of the Property has been completed to the satisfaction of Lender, but otherwise, to the Secured Obligations, in any order, without suspending, extending or reducing any obligation of Grantor to make installment payments if the repair or restoration of the Property has not been completed.  (2) Notwithstanding the foregoing, Lender shall not have any obligation to make any Proceeds available for the repair or restoration of the Property unless and until all the following conditions have been satisfied in Lender's sole and absolute discretion:  (i) delivery to Lender of the Proceeds plus any additional amount that is needed to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period); (ii) establishment of an arrangement for lien releases and disbursement of funds acceptable to Lender; and (iii) delivery to Lender in form and content acceptable to Lender of all of the following:  (aa) plans and specifications for the work; (bb) a contract for the work, signed by a contractor acceptable to Lender; (cc) a cost breakdown for the work; (dd) if required by Lender, a payment and performance bond for the work; (ee) evidence of the continuation of all Leases unless consented to in writing by Lender; (ff) evidence that, upon completion of the work, the size, capacity, value, and income coverage ratios for the Property will be at least as great as those which existed immediately before the damage or condemnation occurred; and (gg) evidence of the satisfaction of any additional conditions that Lender may reasonably establish to protect Lender's security.  Grantor acknowledges that the specific conditions described above are reasonable.

Security Instrument
310704763.4

(c)    Application of Proceeds; Event of Default.  If an Event of Default has occurred and is continuing at the time of Lender's receipt of the Proceeds or if an Event of Default occurs at any time thereafter, Lender may, at Lender's absolute discretion and regardless of any impairment of security or lack of impairment of security, but subject to applicable law governing use of the Proceeds, if any, apply all or any of the Proceeds to Lender's expenses in settling, prosecuting or defending the Claims and then apply the balance to the Secured Obligations in any order without suspending, extending or reducing any obligation of Grantor to make installment payments, and may release all or any part of the Proceeds to Grantor upon any conditions Lender chooses.

6.12.    Defense and Notice of Losses, Claims and Actions.  Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, the security and priority of this Deed of Trust, and the rights and powers of Lender and Trustee hereunder, in each case, at Grantor's sole expense against all adverse claims, whether the claim:  (a) is against a possessory or non-possessory interest; (b) arose prior or subsequent to the date set forth in the preamble; or (c) is senior or junior to Grantor's or Lender's rights.  Grantor shall provide Lender and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of the occurrence of any damage to the Property and of any condemnation offer or action.

6.13.    Right of Inspection.  Lender and its independent contractors, agents and employees may enter the Property from time to time at any reasonable time for the purpose of inspecting the Property and ascertaining Grantor's compliance with the terms of this Deed of Trust.  Lender will use commercially reasonable efforts to assure that Lender's entry upon and inspection of the Property will not materially and unreasonably interfere with the business or operations of Grantor's tenants on the Property.

6.14.    Transfer of Property or Interests in Grantor.

6.14.1.  Prohibition.  Grantor acknowledges that Lender has relied upon the principal(s) of Grantor and such principal's or principals' experience in owning and operating properties similar to the Property in connection with the closing of the Loan.  Accordingly, except pursuant to the prior written consent of Lender, which Lender may withhold, delay, or condition in Lender's sole discretion (including, without limitation, pursuant to the terms of Section 6.14.4 hereof), Grantor shall not cause or permit any Transfer (as defined herein) of, in each case, itself (i.e., the Grantor), the Property, the Collateral (except for equipment and inventory in the ordinary course of its business, with respect to the Collateral only), or this Deed of Trust.  "**Transfer**" means any:  (a) sale or exchange; (b) mortgage, pledge, hypothecation, lien, or encumbrance; (c) assignment, including, without limitation, assignment by operation of law or for the benefit of creditors or the delegation of duties; (d) direct or indirect conveyance, transfer, or disposition, including, without limitation, any direct transfer, grant, or release of title or legal ownership and any indirect transfer through the use of a nominee, trustee, or receiver (other than a receiver appointed at Lender's request); (e) direct or indirect change of control of the Grantor through any means, including without limitation, serial transactions, contracts, or a change in the ultimate control or beneficial ownership of Grantor (including, without limitation, any transfer of or by, in each case, (i) a general or limited partnership interest; (ii) stock, shares, or other equity; (iii) issuance of new or treasury stock, shares, or other equity or changes in voting rights or the creation of a new class of stock, shares, or other equity interests, in each case, that, whether through one action or a series of actions, effects a direct or indirect change of control in an entity; (iv) a limited liability company or membership interest; (v) direct or indirect control of a trust; (vi) interest in a joint venture contract; (vii) an Unauthorized Amendment made or permitted in violation of clause (j) of Section 4.4 hereof; or (viii) any other interest analogous or otherwise similar to items (i)-(vii) of this list), as well as changing of a key control person, whether legal or natural, relied upon by Lender as provided in this Section 6.14, such as, without limitation, the naming a new general partner of a partnership or manager

23

Security Instrument
310704763.4

or managing member of a limited liability company); and (f) any action, transfer, or event of similar effect to the preceding list of items (a)-(e), and the meaning of the meaning of Transfer shall include any of the foregoing circumstances listed in (a)-(f) whether occurring, in each case, voluntarily, involuntarily, by operation of law, through one action or event, or through a series of transactions, legal transfers, or other actions or events even if each individually would not constitute a change of (1) control in or (2) beneficial ownership of Grantor but as a series would constitute a Transfer.  If a Transfer is made without the prior written consent of Lender (including, without limitation, any Transfer requiring Lender's prior written consent under Section 6.14.2 hereof), Lender shall have the absolute right at its option, without prior demand or notice, to declare all of the Secured Obligations immediately due and payable, except to the extent prohibited by applicable law, and to pursue its rights and remedies under Article 7 hereof.  Lender's consent to one such Transfer shall apply only to the Transfer consented to in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Transfers.  Without limiting the generality of the foregoing provisions of this Section 6.14.1, the capitalized term "**Assignment**" refers to the subset of Transfers encompassing:  (i) any assignment of Grantor's interest in this Deed of Trust, in each case, including, without limitation, an assignment by operation of law, and (ii) any delegation of duties by Grantor under this Deed of Trust. Unless Lender, in writing, subsequently ratifies an Assignment made contrary to this Section 6.14, any Assignment by Grantor, whether voluntarily or involuntarily, made contrary to this Section (including, without limitation, any Assignment requiring Lender's prior written consent under Section 6.14.2 hereof) shall be null and void *ab initio*.  Lender's consent to or ratification of, in each case, one such Assignment shall apply only to the Assignment consented to or ratified in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Assignments.  With regard to any proposed Transfer or Assignment, or other assumption, substitution, or similar action provided for in this Section 6.14 or in Sections 7.1(m)-7.1(p) hereof, in each case, irrespective of whether Lender's consent is required for such action, Grantor shall (i) comply with the provisions of Section 7.1(o) hereof and (ii) provide to Lender or cause to be provided to Lender, in each case, at Lender's request, any information required by Section 6.14.4 hereof (it being understood that it is Lender's prerogative to review any proposed Transfer or Assignment, or other assumption, substitution, or similar action, unless exempt under the limited exception pursuant to Section 7.1(o) hereof applicable only to a Grantor that is a Public Company (as defined in Section 7.1(o)), to allow Lender to determine proper classification and disposition of the proposed action, as well as fees or reimbursements owed, if any, pursuant to, in each case this Section 6.14, Section 6.7 hereof, and Sections 7.1(m)-7.1(p) hereof.

6.14.2.  Other Permitted Transfers.  Notwithstanding and without limiting the generality of the foregoing Section 6.14.1, the following actions shall be permitted subject to the terms of (i) this Section 6.14.2 and (ii) the terms of Section 6.14.1 with respect to any action that requiring Lender's prior written consent that is taken without such consent (e.g., regarding (x) the definition of Transfer, (y) Assignments that are void, and (z) Lender's rights and remedies, including, without limitation, acceleration, payment of the prepayment fee).  In the case of the actions described in clauses (a) and (c) of this Section 6.14.2, the actions described therein shall be permitted only with the prior written consent of Lender, which consent shall not be unreasonably withheld.  In the case of actions described in clause (b) of this Section 6.14.2, Lender's consent shall not be necessary; however, Grantor shall comply with all applicable terms of this Deed of Trust, including, without limitation, the terms this Section 6.14, Section 6.7 hereof, and of Sections 7.1(m)-7.1(p) regarding Lender's rights to:  (i) review the proposed action and determine its proper classification, (ii) request and receive any due diligence information as provided by Section 6.14.4 hereof, and (iii) receive an advance deposit for or reimbursement from Grantor, in each case, of any out-of-pocket expenses Lender may incur.  In addition, any Transfer contemplated pursuant to clauses (a), (b) and (c) of this Section 6.14.2, shall be permitted, subject to the provisions of this Section 6.14, only so long as Grantor remains as a legal person or, if required, e.g., in the case of a joint venture or general partnership, is reconstituted,

24

Security Instrument
310704763.4

following such Transfer, properly authorized hereunder, and so long as those persons responsible for the management of the Property and Grantor remain unchanged following such gift or that any replacement management is approved by Lender pursuant to the terms hereof.

(a)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, the direct one-time transfer (i.e., of the interest itself, and not by a higher-level change in control) of up to forty-nine percent (49%) of:  the (i) limited partnership interests in any Grantor that is a limited partnership; (ii) membership interests in any Grantor that is a limited liability company (other than the membership interests (x) of a member that is the manager or managing member of such Grantor or (y) that otherwise enables direct or indirect control of such Grantor, which, in each case, shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion); or (iii) voting stock in any Grantor that is a corporation (other than preferred, special, or similar stock that, despite holding less than 50% of the corporation's total stock allows for direct or indirect control of, in each case, the corporation or its board of directors or other governing body, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion).

(b)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, any involuntary transfer caused by the death or court-adjudicated incapacity of any natural person that is (i) a general partner, shareholder, joint venturer or member of Grantor; (ii) any manager or managing member of Grantor if Grantor is a limited liability company; and (iii) a beneficial owner of a or other natural person that controls a trust. For the avoidance of doubt, (x) this Section 6.14.2(b) applies only to involuntary transfers and not to planned estate gifts, which are provided for by Section 6.14.2(c) hereof and (y) this Section 6.14.2(b) applies to involuntary transfers caused by death or court-adjudicated incapacity of natural persons in the roles specified in this Section 6.14.2(b) and not where Grantor is a natural person (i.e., one individual), which is provided for in Section 7.1(p) hereof.

(c)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, gifts for estate planning purposes of any natural person's interests in Grantor or in any of Grantor's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a properly constituted trust for the benefit of any one or more of such individual, spouse or lineal descendant.  Notwithstanding the foregoing provisions of this Section 6.14.2(c), nothing in this Section 6.14.2(c) authorizes title to the Property to be transferred without Lender's prior written consent that would be otherwise required, in each case, under Section 6.14.1 hereof or any other provision this Deed of Trust.

6.14.3.  Lender's Written Consent or Ratification:  As used in this Section 6.14, any reference to Lender's written consent, approval, or ratification of a Transfer, in each case, requires a writing made by Lender executed by an officer of Lender holding the title Executive Vice President or higher.

6.14.4.  Transfer Costs:  In connection with any Transfer requiring Lender's consent:

(a)     Grantor shall pay an assumption fee in the amount of one percent (1%) of the then unpaid principal balance of the Loan, which shall be due and payable at the closing of the Transfer transaction.

25

Security Instrument
310704763.4

(b)      Grantor shall pay to Lender both (i) an administrative fee of one thousand five hundred dollars ($1,500.00) for Lender processing the Transfer request (irrespective of the disposition thereof) and (ii) all Lender's out-of-pocket costs (including, without limitation, any out-of-pocket legal expenses paid to outside counsel and the cost of any appraisal); and

(c)      The cost of either (i) a "date down" endorsed to Lender's title insurance policy, including any additional endorsements required by Lender, or (ii) a new title insurance policy, satisfactory to Lender in its discretion, if a "date down" is not available.

In addition to the above-stated, Grantor shall comply with all Lender's policies and procedures in connection with providing its consent to a Transfer, including but not limited to (i) Grantor and its transferee entering an assumption agreement acceptable to Lender and providing, as determined by Lender in Lender's sole and absolute discretion, (x) a reaffirmation of guarantee by a then guarantor and/or (y) a substitute guarantor (acceptable to Lender in Lender's sole and absolute discretion) who shall sign a guarantee agreement acceptable to Lender (in Lender's sole and absolute discretion) and (ii) compliance with the provisions of Sections 7.1(o) hereof.  Without limiting the generality of the foregoing sentence of this paragraph of this Section 6.14.4, Grantor shall require, in each case, any prospective recipient of the Transfer, prospective new guarantor, prospective new member, partner, or shareholder of Grantor, or prospective new joint venturer to comply with any requests for due diligence information regarding such prospective new interest holder in, as applicable, Grantor or the Property.  Nothing in this Section 6.14 may be construed to require Lender to accept any Transfer, Assignment, assumption or similar action where the prospective person receiving or becoming an interest holder in Grantor or the Property or assuming a role of guarantor is a person with which Lender may not conduct business pursuant to law applicable to Lender (a "**Prohibited Person**"), and Lender shall not be deemed to have breached its obligations under any of the Loan Documents for refusing to consent to, approve, or honor any action that requires or may foreseeably require Lender in the future to conduct business with a Prohibited Person.

Nothing in this Section 6.14.4 limits Lender's discretion to withhold, delay, or condition, in each case, its consent pursuant to the provisions of Sections 6.14.1 and 6.14.2 hereof, including, without limitation, Lender's right to:  (i) require other conditions not provided for in this Section 6.14.4; (ii) make decisions regarding Lender's assessment of the creditworthiness of any prospective substitute guarantor or party assuming the obligations hereunder as a result of a proposed Transfer; (iii) require additional conditions related to its credit evaluation of any Transfer or party thereto; (iv) require execution of additional documentation; or (v) refer matters to outside counsel at Grantor's expense to assist with reviewing or consummating any proposed Transfer.

6.15.    Acceptance of Trust; Powers and Duties of Trustee.  Trustee accepts this trust when this Deed of Trust is recorded.  From time to time upon written request of Lender and presentation of this Deed of Trust, or a certified copy thereof, for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or performance of any Secured Obligation, Trustee may, if authorized by Lender, without liability therefor and without notice:  (a) reconvey all or any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property;  (d) join in any declaration of covenants and restrictions; or (e) join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust. Nothing contained in the immediately preceding sentence shall be construed to limit, impair or otherwise affect the rights of Grantor in any respect.  Except as may otherwise be required by applicable law, Trustee or Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Lender may obtain orders or decrees directing or confirming or approving

26

Security Instrument
310704763.4

acts in the execution of said trusts and the enforcement of said remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, without limitation, actions in which Grantor, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Deed of Trust. Trustee shall not be obligated to perform any act required of it hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against loss, cost, liability and expense.

6.16.   Compensation of Trustee. Grantor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the administration of this trust, including, without limitation, reasonable attorneys' fees.  Grantor shall pay all indebtedness arising under this Section 6.16 immediately upon demand by Trustee or Lender.

6.17.   Exculpation. Lender shall not directly or indirectly, be liable to Grantor or any other person as a consequence of: (a) the exercise of the rights, remedies or powers granted to Lender in this Deed of Trust; (b) the failure or refusal of Lender to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Grantor or any third party resulting from Lender's failure to lease the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless the loss is caused by the willful misconduct and bad faith of Lender. No liability contrary to the terms of this Section 6.17 may be asserted or enforced against Lender, and Grantor expressly waives all such liability, and to the fullest extent permitted by applicable law, releases Lender therefrom.

6.18.   Indemnity. (1) Without in any way limiting any other indemnity contained in this Deed of Trust, Grantor agrees to defend, indemnify and hold harmless Trustee and the Lender Group (hereinafter defined) from and against any claim, loss, damage, cost, expense or liability directly or indirectly arising out of: (a) the making of the Loan, except for violations of banking laws or regulations by the Lender Group, but subject to the terms of clause (g) of this Section 6.18; (b) this Deed of Trust; (c) the execution of this Deed of Trust or the performance of any act required or permitted hereunder or by law; (d) any failure of Grantor to perform its obligations under this Deed of Trust or the other Loan Documents; (e) any alleged obligation or undertaking on the Lender Group's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property; (f) any act or omission by Grantor or any contractor, agent, employee or representative of Grantor with respect to the Property; or (g) any prohibited transaction, in the sale of a prohibited loan, or in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion (it being understood that the indemnification owed under this Section 6.18 shall not be limited by clause (a) of this Section 6.18 hereof to the extent a prohibited transaction, sale of a prohibited loan, or transaction with a Prohibited Person may otherwise fall within clause (a) of this Section 6.18; and (h) an Event of Default under Article 7 hereof, including, without limitation, Lender's exercise of rights and remedies provided pursuant to Article 7 hereof. (2) Notwithstanding the foregoing provisions of this Section 6.18(1), this indemnity shall not include any claim, loss, damage, cost, expense or liability directly or indirectly arising out of the gross negligence or willful misconduct of any member of the Lender Group or Trustee, or any claim, loss, damage, cost, expense or liability incurred by the Lender Group or Trustee arising from any act or incident on the Property occurring after the full reconveyance and release of the lien of this Deed of Trust on the Property; however, this indemnity shall include, without limitation: (aa) all consequential and incidental damages (including, without limitation, any third party tort claims or governmental claims, fines or penalties against Trustee or the Lender Group) and (bb) all court costs and attorneys' fees (including, without limitation, expert witness fees) paid or incurred by Trustee or the Lender Group. "**Lender Group,**" as used in this Deed of Trust, shall mean (i) Lender (including, without limitation, any participant in the Loan); (ii) any entity controlling, controlled by or under common control with Lender;

27

Security Instrument
310704763.4

(iii) the directors, officers, employees, and agents of Lender and such other entities of the Lender Group; and (iv) the successors, heirs and assigns of the entities and persons described in foregoing clauses (i) through (iii). Grantor shall pay immediately upon Trustee's or Lender's demand any amounts owing under this indemnity. Grantor agrees to use legal counsel acceptable to Trustee and the Lender Group in any action or proceeding arising under this indemnity. IF THE GRANTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 6.18 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

6.19.   <u>Substitution of Trustee</u>. From time to time, by a writing signed and acknowledged by Lender and recorded in the official records of the county in which the Property is located, Lender may appoint another trustee to act in the place and stead of Trustee or any successor. Such writing shall set forth any information required by applicable law. The execution of such instrument of substitution shall discharge Trustee herein named and shall appoint the new trustee as the trustee hereunder with the same effect as if originally named trustee herein. A writing recorded pursuant to the provisions of this Section 6.19 shall be conclusive proof of the proper substitution of such new trustee.

6.20.   <u>Releases, Extensions, Modifications and Additional Security</u>. Without notice to or the consent, approval or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Secured Obligations (the "**Interested Parties**"), Lender may, from time to time: (a) fully or partially release any person or entity from liability for the payment or performance of any Secured Obligation; (b) extend the maturity of any Secured Obligation; (c) make any agreement with Grantor increasing the amount or otherwise altering the terms of any Secured Obligation; (d) accept additional security for any Secured Obligation; or (e) release all or any portion of the Property, Collateral and other security for any Secured Obligation. None of the foregoing actions releases or reduces the personal liability of any of the Interested Parties, or releases or impairs the priority of the lien of this Deed of Trust upon the Property.

6.21.   <u>Reconveyance</u>. Upon Lender's written request, and upon surrender of this Deed of Trust or certified copy thereof and any note, instrument or instruments setting forth all obligations secured hereby to Trustee for cancellation, Trustee shall reconvey, without warranty, the Property or that portion thereof then held hereunder. The recitals of any matters of fact or facts in any reconveyance executed hereunder shall be conclusive proof of the truthfulness thereof. To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto." Neither Lender nor Trustee has any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. When the Property has been fully released reconveyed, the last such reconveyance shall operate as a reassignment of all future rents, issues and profits of the Property to the person or persons legally entitled thereto.

6.22.   <u>Subrogation</u>. If and in each case, (i) any or all of the proceeds of the Note have been used to pay, reduce, extinguish, extend or renew any indebtedness heretofore existing against the Property or (ii) if Lender pays or discharges any lien or encumbrance against or affecting the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property (collectively, "**Subrogated Interests**") heretofore held by, or in favor of, the holder of such indebtedness or other Subrogated Interest. If any Subrogated Interest exists, without adversely affecting the priority of this Deed of Trust and the Secured Obligations, any such Subrogated Interest shall be construed in favor of Lender, whether or not it is of record, or has been released, or has been paid in whole or in part. Nothing in this Section 6.22 may be construed to (x) limit the rights and remedies of Lender under, in each case, this Deed of Trust or any of the other Loan Documents or (y) make the Lender liable for any act or omission of any person previously entitled to enforce or collect amounts due in relation to any Subrogated Interest.

28

Security Instrument
310704763.4

6.23. <u>Sale or Participation of Loan</u>. Grantor agrees that Lender may at any time sell, assign, participate or securitize all or any portion of Lender's rights and obligations under this Deed of Trust, and that any such sale, assignment, participation or securitization may be to one or more financial institutions or other entities, to private investors, and/or into the public securities market, in Lender's sole discretion. Grantor further agrees that Lender may disseminate to any such actual or potential purchaser(s), assignee(s) or participant(s) all documents and financial and other information heretofore or hereafter provided to or known to Lender with respect to: (a) the Property and its operation; and/or (b) any party connected with the Loan (including, without limitation, Grantor, any partner or member of Grantor, or any constituent partner or member of Grantor). In the event of any such sale, assignment, participation or securitization, Lender and the other parties to the same shall share in the rights and obligations of Lender set forth in this Deed of Trust as and to the extent they shall agree among themselves. In connection with any such sale, assignment, participation or securitization, Grantor further agrees that this Deed of Trust shall be sufficient evidence of the obligations of Grantor to each purchaser, assignee or participant, and Grantor within fifteen (15) days after request by Lender, deliver an estoppel certificate verifying for the benefit of Lender and any other party designated by Lender the status and the terms and provisions of the Loan in form and substance acceptable to Lender, and enter into such amendments or modifications to this Deed of Trust as may be reasonably required in order to facilitate any such sale, assignment, participation or securitization without impairing Grantor's rights or increasing Grantor's obligations. The indemnity obligations of Grantor under this Deed of Trust shall also apply with respect to any purchaser, assignee or participant.

6.24. <u>ERISA</u>.

(a)     Grantor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement or the other Loan Documents) to constitute a "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) for which there is no applicable statutory or administrative exemption.

(b)     Grantor shall not (i) maintain, sponsor, contribute to or become obligated to contribute to, or suffer or permit any ERISA Affiliate of Grantor to, maintain, sponsor, contribute to or become obligated to contribute to, any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Grantor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code) or (ii) permit the assets of Grantor to become "plan assets" within the meaning of the Plan Asset Regulation.

(c)     Grantor shall deliver to Lender such certifications or other evidence from time to time throughout the Term, as requested by Lender in its sole discretion, that (A) Grantor is not and does not maintain a Plan or a "governmental plan" within the meaning of Section 3(32) of ERISA; (B) Grantor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (C) the assets of Grantor do not constitute "plan assets" within the meaning of the Plan Asset Regulation.

ARTICLE 7

DEFAULT AND REMEDIES

7.1. <u>Event of Default</u>. An "**Event of Default**" occurs automatically upon the occurrence of any one or more of the following events:

29

Security Instrument
310704763.4

(a)  Monetary.  Borrower or Grantor (as applicable) fails to, in any case:  (i) pay when due any sums that by their express terms require immediate payment without any grace period or sums that are payable on the Maturity Date hereunder or under any of the other Loan Documents secured by this Deed of Trust; or (ii) pay within five (5) days when due any other sums payable hereunder or under any of the other Loan Documents secured by this Deed of Trust, including, without limitation, any monthly payment due under the Note.

(b)  Borrower's Performance of Non-Monetary Obligations Under Other Loan Documents.  If Borrower fails to observe, perform or discharge any of its obligations, covenants, conditions or agreements to Lender or any third person, other than Borrower's payment obligations, under any of the Loan Documents (excluding this Deed of Trust); provided that Borrower's breach or failure to perform obligations to a third person shall be a default hereunder only where such breach or failure may materially affect Borrower's assets or Borrower's ability to repay the Loan or perform its obligations under the Loan Documents.

(c)  Grantor's Performance of Non-Monetary Obligations Under Deed of Trust. Grantor fail to observe, perform or discharge any of Grantor's obligations, covenants, conditions or agreements, other than Grantor's payment obligations, under this Deed of Trust, other than as specifically provided in this Section 7.1, and (i) such failure shall remain uncured for thirty (30) days after written notice thereof shall have been given to Grantor, as the case may be, by Lender; or (ii) if such failure is of such a nature that it cannot be cured within such thirty (30) day period, Grantor shall fail to commence to cure such failure within such thirty (30) day period or shall fail to diligently prosecute such curative action thereafter or shall fail to cure such default within ninety (90) days after written notice thereof was first given to Grantor.

(d)  Representations and Warranties.  Any representation, warranty, certificate or other statement (financial or otherwise) made or furnished by or on behalf of Grantor, if any, to Lender or in connection with any of the Loan Documents, or as an inducement to Lender to make the Loan or to take any action for the benefit of Grantor, in each case, is false, incorrect, incomplete or misleading in any material respect when made or furnished.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(d).

(e)  Condemnation, Attachment.  The condemnation, seizure or appropriation of any material portion (as reasonably determined by Lender) of the Property, or the sequestration or attachment of, or levy or execution upon any of the Property, the Collateral or any other collateral provided by Grantor under any of the Loan Documents, or any material portion of the other assets of Grantor, which sequestration, attachment, levy or execution is not released or dismissed within forty-five (45) days after its occurrence, or the sale of any assets affected by any of the foregoing.

(f)  Uninsured Casualty.  The occurrence of an uninsured casualty with respect to any material portion (as determined by Lender) of the Property unless:  (i) no other Event of Default has occurred and is continuing at the time of such casualty or occurs thereafter; (ii) Grantor promptly notifies Lender of the occurrence of such casualty; and (iii) not more than forty-five (45) days after the occurrence of such casualty, Grantor delivers to Lender immediately available funds ("**Restoration Funds**") in an amount sufficient, in Lender's reasonable opinion, to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period).  So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the Restoration Funds and no Event of Default occurs thereafter, Lender shall make the Restoration Funds available for the repair or restoration of the Property.  Notwithstanding the foregoing, Lender shall have no obligation to make any Restoration Funds available for repair or restoration of the Property unless and until all the conditions set forth in clauses (ii) and (iii) Section 6.11(b)(2) of this

30

Security Instrument
310704763.4

Deed of Trust have been satisfied.  Grantor acknowledges that the specific conditions described above are reasonable.

(g) <u>Adverse Financial Change</u>.  Any adverse change in the financial condition of Grantor, or any of their partners, or members, or any guarantor, or any other person or entity from the condition shown on the financial statements submitted to Lender and relied upon by Lender in making the Loan, and which change Lender determines will have a material adverse effect on (i) the business, operations or condition of the Property; or (ii) the ability of Grantor to pay or perform Grantor's obligations in accordance with the terms of this Deed of Trust, and the other Loan Documents.

(h) <u>Voluntary Bankruptcy, Insolvency, Dissolution</u>.  (i) Grantor's filing a petition for relief under the Bankruptcy Reform Act of 1978, as amended or recodified ("**Bankruptcy Code**"), or under any other present or future state or federal law regarding bankruptcy, reorganization or other relief to debtors (collectively, "**Debtor Relief Law**"); or (ii) Grantor's filing any pleading in any involuntary proceeding under the Bankruptcy Code or other Debtor Relief Law that admits the jurisdiction of a court to regulate Grantor or the Property or the petition's material allegations regarding Grantor's insolvency; or (iii) Grantor's making a general assignment for the benefit of creditors; or (iv) Grantor's applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Grantor or any of its property; or (v) the filing by or against Grantor of a petition seeking the liquidation or dissolution of Grantor or the commencement of any other procedure to liquidate or dissolve Grantor.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(h).

(i) <u>Involuntary Bankruptcy</u>.  Grantor's failure to effect a full dismissal of any involuntary petition under the Bankruptcy Code or other Debtor Relief Law that is filed against Grantor or in any way restrains or limits Grantor or Lender regarding the Loan or the Property, prior to the earlier of the entry of any order granting relief sought in the involuntary petition or forty-five (45) days after the date of filing of the petition.

(j) <u>Shareholders, Members and Partners</u>.

(1) If an event specified in Sections 7(h) or 7(i) hereof occurs as to Grantor or any general partner, shareholder or member of Grantor, there shall be no cure period for any Event of Default arising from a breach of this Section 7.1(j)(1).

(2) If all or any material part of the assets of Grantor, or any shareholder, director, general partner or manager of Grantor are attached, seized, subjected to a writ or levied upon by any court process and Grantor fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event.  The cure provision contained in this Section 7.1(j)(2) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(3) For the avoidance of doubt, the provisions of this Section 7.1(j) shall not be limited because a shareholder, member or general partner of Grantor, in each case, may also be a guarantor of the Loan; rather, in that instance, an Event of Default under this Section 7.1(j) shall exist regarding the condition of such shareholder, member or general partner of Grantor, and the provisions of Section 7.1(k) hereof shall apply regarding Grantor's duty to obtain an acceptable substitute

31

Security Instrument
310704763.4

guarantor.  The cure provisions contained in this Section 7.1(j) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(k)    Guarantors.

(1)    If any an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan, remains uncured for at least forty-five (45) days, and Grantor fails to provide a substitute guarantor acceptable to Lender within sixty (60) days after the occurrence an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan.

(2)    If all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process and Grantor fails to either (i) cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event or (ii) provide a substitute guarantor acceptable to Lender within sixty (60) days after all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process.

(3)    If any guarantor of the Loan dies and Grantor fails to provide a substitute guarantor of the Loan acceptable to Lender within sixty (60) days after the death of such guarantor; however, nothing in this Section 7.1(k)(3) may be construed to reduce or limit any rights and remedies Lender may have against the estate of or successors in interest to such guarantor of the Loan who has died, including, without limitation, any right to enforce a guarantee of the Loan against the estate of a guarantor of the Loan who has died.

(4)    For the avoidance of doubt, Grantor acknowledges that, in consideration of the Loan, Borrower and Grantor (as applicable) are required to provide a guarantor of the Loan acceptable to Lender, in Lender's sole discretion, and this Section 7.1(k) shall be construed consistent with such obligation of Grantor.  Nothing in this Section 7.1(k) may be construed to suggest that this Deed of Trust secures any obligations under any guarantee of the Loan (it being understood that this Deed of Trust does not secure any guarantee of the Loan).  The cure provisions contained in this Section 7.1(k) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(l)    Injunctions.  If a court order is entered against Grantor or any shareholder, general partner, member or manager of Grantor enjoining the conduct of all or part of such person's business and Grantor fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60) days after such order is entered.  The cure provision contained in this Section 7.1(l) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(m)    Dissolution.  If Grantor or any shareholder, general partner, member or manager of Grantor is a corporation, partnership, limited liability company or trust, the dissolution,

32

Security Instrument
310704763.4

liquidation, or termination of existence of such person.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(m).

(n)     Unauthorized Transfers and Assignments.  Any Transfer made or attempted, in each case, in violation of to Section 6.14 hereof (For the avoidance of doubt, the term Transfer includes any Assignment, as defined in Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(n).

(o)     Admission of New Partners, Members, or Shareholders.  If applicable, unless Grantor is a publicly traded company listed on a nationally recognized stock exchange (a "**Public Company**") and the trading of shares in such Public Company or other transaction affecting such Public Company does not constitute a Transfer pursuant to Section 6.14 hereof, the admission to Grantor of any new member, partner, shareholder, or joint venturer, in each case, without having first having (i) informed Lender of the proposed admission of a new member, partner, shareholder, or joint venturer, in each case, and (ii) Grantor having received a written response from Lender regarding Lender's review and disposition of the request pursuant to this Section 7.1(o) and Section 6.14 hereof.  Any admission of a new member, partner, joint venturer contrary to this Section 7.1(o) shall be deemed a Transfer in violation of Section 6.14 hereof (For the avoidance of doubt, this Section 7.1(o) does not provide and shall not be construed to provide any Grantor that is a Public Company any right to make or participate in a Transfer in violation of Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(o).

(p)     Death; Incompetency.  If Grantor or any general partner, manager, or managing member of Grantor is an individual (i.e., a natural person), the death or incompetency of such person, except (i) where applicable law limits or prohibits Lender's declaration of a default based on such occurrences and (ii) in the case of the death or mental incompetence of a general partner, manager, or managing member, Grantor causes a substitute general partner, manager or managing member, as applicable, to be admitted to Grantor or appointed to such role and Lender, pursuant to Section 6.14 hereof, in good faith determines that the financial condition, credit history, character, experience, ability and expertise of such substitute general partner, manager, or managing member are comparable to the affected general partner or manager and that such substitute general partner or manager is otherwise acceptable to Lender (For the avoidance of doubt, any substitutions or Transfers contemplated by this Section 7.1(p) shall be made consistent with the terms of both Section 7.1(o) hereof and Section 6.14 hereof).

(q)     Impairment of Priority.  If (i) the priority of this Deed of Trust or Lender's security interest under any of the other agreements securing any or all of the Secured Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a result of any intentional tortious act or omission by Grantor.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(q).

(r)     Condemnation.  If all or any material part of the Property is transferred to any Governmental Authorities as a result of any condemnation proceeding or action with respect to all or any material part of the Property.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(r).

(s)     Failure to Repair Casualty.  If there is an uninsured casualty with respect to the Property, and Grantor (i) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage or (ii) thereafter fails to diligently prosecute such repairs and reconstruction to completion.  The cure provisions contained in this Section 7.1(s) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

33

Security Instrument
310704763.4

(t)     Licenses.  Grantor fails to do any act or execute any document at any time requested by Lender to provide it an assignment of all licenses necessary to operate the business for its intended use.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(t).

(u)     Title.  Grantor's failure to comply with, observe, or perform any term or condition of Section 6.1(l) or Section 6.1(m).

7.2.     Acceleration.  Upon the occurrence of an Event of Default, Lender may, at its option, declare all sums owing to Lender under the Note and the other Loan Documents immediately due and payable.

7.3.     Rights and Remedies.  In addition to the rights and remedies in Section 7.2 above and as otherwise provided to Lender in this Deed of Trust, at any time after an Event of Default, Lender and Trustee shall each have all of the following rights and remedies:

(a)     Entry on Property.  With or without notice, and without releasing Grantor from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Lender or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Event of Default, including, without limitation:  (i) to take and possess all documents, books, records, papers and accounts of Grantor or the then owner of the Property that relate to the Property; (ii) to make, terminate, enforce or modify leases of the Property upon such terms and conditions as Lender deems proper; (iii) to make repairs, alterations and improvements to the Property necessary, in Trustee's or Lender's sole judgment, to protect or enhance the security hereof; (iv) to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee hereunder; (v) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Lender or Trustee, is or may be senior in priority hereto, the judgment of Lender or Trustee being conclusive, as between the parties hereto; (vi) to obtain insurance; (vii) to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or (viii) to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

(b)     Appointment of Receiver.  To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right and without regard to:  (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Grantor consents to such appointment;

(c)     Judicial Foreclosure, Injunction.  To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Grantor hereunder, and Grantor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Grantor waives the defense of laches and any applicable statute of limitations and shall not require Lender to post a point to seek an injunction or any other kind of specific performance;

(d)     Nonjudicial Foreclosure.  To execute a written notice of such an Event of Default and of the election to cause the Property to be sold to satisfy the Secured Obligations.  Trustee shall give and record such notice as applicable law then requires as a condition precedent to a trustee's sale.  When the minimum period of time required by law after such notice has elapsed, Trustee, without

34

Security Instrument
310704763.4

notice to or demand upon Grantor except as required by applicable law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Lender in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale. Neither Grantor nor any other person other than Lender has the right to direct the order in which the Property is sold. Subject to requirements and limits imposed by applicable law, Trustee may, from time to time postpone sale of all or any portion of the Property by public announcement at such time and place of sale previously stated, and from time to time, may also postpone the sale by public announcement at the time and place fixed by the preceding postponement. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein. Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied from Lender. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustee, Grantor or Lender may purchase at the sale;

Upon sale of the Property at any judicial or nonjudicial foreclosure, Lender may credit bid (as determined by Lender in its sole and absolute discretion) all or any portion of the Secured Obligations. In determining such credit bid, Lender may, but is not obligated to, take into account all or any of the following: (i) appraisals of the Property as such appraisals may be discounted or adjusted by Lender in its sole and absolute underwriting discretion; (ii) expenses and costs incurred by Lender with respect to the Property prior to foreclosure; (iii) expenses and costs that Lender anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g., commissions, attorneys' fees, and taxes), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Lender; (iv) declining trends in real property values generally and with respect to properties similar to the Property; (v) anticipated discounts upon resale of the Property as a distressed or foreclosed property; (vi) the existence of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Lender (in its sole and absolute discretion) deems appropriate. In regard to the above, Grantor acknowledges and agrees that: (viii) Lender is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (ix) this paragraph does not impose upon Lender any additional obligations that are not imposed by law at the time the credit bid is made; (x) the amount of Lender's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Grantor and Lender; (xi) Lender's credit bid may be (at Lender's sole and absolute discretion) higher or lower than any appraised value of the Property; and (xii) Grantor acknowledges and understands that Lender has no duty to act in Grantor's best interest and expects that Lender will act in Lender's best interest, as determined by Lender, in Lender's sole discretion;

(e)     Multiple Foreclosures. To resort to and realize upon the security hereunder and any other security now or later held by Lender concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken nonjudicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Lender or either of them determine in their sole discretion;

(f)     Rights to Collateral. To exercise all rights Trustee or Lender may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

Security Instrument
310704763.4

25-00240-WLH11     Doc 14     Filed 02/24/25     Entered 02/24/25 18:45:47     Pg 54 of 127     B - 35

(g)     Other Rights.  To exercise such other rights as Trustee or Lender may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

In connection with any sale or sales hereunder, Lender may elect to treat any of the Property that consists of a right in action or that is property that can be severed from the Property (including, without limitation, any Improvements) without causing structural damage thereto as if the same were personal property or a fixture, as the case may be, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Property.  Any sale of Collateral hereunder shall be conducted in any manner permitted by the UCC.

No specific right or remedy provided in this Section 7.3 may be construed, in each case, to create a duty for Lender to act or exercise any specific right or remedy or make Lender liable for any failure to exercise such right or remedy.  Without limiting the generality of the immediately preceding sentence, nothing in this Section 7.3 may be construed to make Lender responsible for the Property; its operation, maintenance, or condition; or any circumstances occurring on the Land, in each case, prior to Lender taking title to the Land.  No failure to exercise any right or remedy provided by this Section 7.3 may be construed as a waiver of such right or remedy by Lender or as any limitation on Lender's ability to exercise such right or remedy.  The provisions of this Article 7 are intended to benefit Lender and Lender's interests preserving and enforcing its security interest in the Property and obtaining full and timely repayment of the Secured Obligations, and thus, the parties hereto intend that such provisions are interpreted consistent with the best interests of Lender, in Lender's determination thereof, to the fullest extent permitted by applicable law.

7.4.    Application of Foreclosure Sale Proceeds.  If any foreclosure sale is effected, Trustee shall apply the proceeds of such sale in the following order of priority:  First, to the costs, fees and expenses of exercising the power of sale and of the sale, including, without limitation, the payment of the Trustee's fees and attorneys' fees; Second to the payment of the Secured Obligations that are secured by this Deed of Trust, in such order as Lender shall determine in its sole discretion; Third, to satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority; and Fourth, to the Grantor or the Grantor's successor in interest, or in the event the Property has been sold or transferred to another, to the vested owner of record at the time of the Trustee's sale.

7.5.    Waiver of Marshaling Rights.  Grantor, for itself and for all parties claiming through or under Grantor, and for all parties who may acquire a lien on or interest in the Property, hereby waives all rights to have the Property and/or any other property, including, without limitation, the Collateral, which is now or later may be security for any Secured Obligation, marshaled upon any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Secured Obligations.

7.6.    No Cure or Waiver.  Neither Lender's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receives cures or waives any Event of Default or notice of default under this Deed of Trust, or nullifies the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Grantor has cured all other Events of Default hereunder, in each case, as determined by Lender), or impairs the status of the security, or prejudices Lender or Trustee in the exercise of any right or remedy, or may be construed as an affirmation by Lender of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

36

Security Instrument
310704763.4

7.7.     Power to File Notices and Cure Events of Default.  Grantor hereby irrevocably appoints Lender and its successors and assigns, as its attorney-in-fact, which power of attorney is coupled with an interest, to perform any obligation of Grantor hereunder upon the occurrence of an event, act or omission that, with notice or passage of time or both, would constitute an Event of Default; provided, however, (a) Lender as such attorney-in-fact shall only be accountable for such funds as are actually received by Lender; and (b) Lender shall not be liable to Grantor or any other person or entity for any failure to act under this Section 7.8.

7.8.     Remedies Cumulative.  All rights and remedies of Lender and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically, and without limitation, that of foreclosure of this Deed of Trust as though it were a mortgage) or in any other agreements between Grantor and Lender.  Lender may enforce any one or more remedies or rights hereunder successively or concurrently.

ARTICLE 8

INTENTIONALLY OMITTED

ARTICLE 9

GENERAL PROVISIONS

9.1.     Integration and Additional Provisions.  The Loan Documents contain the complete and entire agreement of the parties with respect to matters contemplated by the Loan Documents, and the Loan Documents supersede all prior and contemporaneous agreements, negotiations, communications, understandings, and discussions, in each case, whether written or oral.  The Loan Documents grant further rights to Lender and contain further agreements and affirmative and negative covenants by Grantor that apply to this Deed of Trust and to the Property and such further rights and agreements are incorporated herein by this reference.  Without limiting the generality of the preceding provisions of this Section 9.1.  IF THE GRANTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 9.1 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

9.2.     Non-Waiver.  By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Lender shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance.  No exercise of any right or remedy by Lender or Trustee hereunder constitutes a waiver of any other right or remedy herein contained or provided by applicable law.  No failure by Lender or Trustee to exercise any right or remedy hereunder arising upon any Event of Default may be construed to prejudice Lender's or Trustee's rights or remedies upon, in each case, the continued existence of such Event of Default or occurrence of any other or subsequent Event of Default.  No delay by Lender or Trustee in exercising any such right or remedy may be construed to preclude Lender or Trustee from the exercise thereof at any time while that Event of Default is continuing.  No notice to or demand on Grantor shall by itself or the fact that was provided, in each case, entitle Grantor to any other or further notice or demand in similar or other circumstances.

9.3.     Consents and Approvals.  Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Deed of Trust or any of the other Loan Documents, unless either applicable law or a specific provision of one of the Loan Documents requires a different

37

standard of Lender, such consent, approval, acceptance or satisfaction shall be in Lender's sole and absolute discretion.

9.4.    <u>Permitted Contests</u>.    After prior written notice to Lender, Grantor may contest, by appropriate legal or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any lien, levy, tax or assessment, or any lien of any laborer, mechanic, materialman, supplier or vendor, or the application to Grantor or the Property of any law or the validity thereof, the assertion or imposition of which, or the failure to pay when due, would constitute an Event of Default, subject to the requirements that:  (a) Grantor pursues the contest diligently, in a manner that Lender determines is not prejudicial to Lender, and that does not impair the lien of this Deed of Trust; (b) the Property, or any part hereof or estate or interest therein, shall not be in any danger of being sold, forfeited, damaged, or lost by reason of such proceedings; (c) in the case of the contest of any law or other legal requirement, Lender shall not be in any danger of any civil or criminal liability; and (d) if required by Lender, Grantor deposits with Lender any funds or other forms of assurance (including a bond or letter of credit) satisfactory to Lender to protect Lender from the consequences of the contest being unsuccessful.  Grantor's right to contest pursuant to the terms of this provision shall not relieve Grantor of its obligations under the Loan or to make payments to Lender as and when due.

9.5.    <u>Further Assurances</u>.    Grantor shall, upon demand by Lender or Trustee, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

9.6.    <u>Attorneys' Fees</u>.    In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Grantor agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses, including, without limitation, expert witness fees and reasonable attorney's fees incurred by Lender as a result thereof.

9.7.    <u>Grantor and Lender Defined</u>.    The term "**Grantor**" includes both the original Grantor including all persons executing this Deed of Trust as a trustor and any subsequent owner or owners of any of the Property; however, while any subsequent owner may have duties under this Deed of Trust by having taken title subject to this Deed of Trust, this Security Agreement does not affirmatively grant any rights against Lender to a subsequent owner who did not take title to the Property through a Transfer that fully complies with the terms of this Deed of Trust.  The term "**Lender**" includes the original Lender and any future owner or holder, including assignees, pledgees and participants, of the Note or any interest therein.  Nothing in this Section 9.7 may be construed to authorize Grantor to make or participate in a Transfer prohibited by the terms of this Deed of Trust, including, without limitation, the provisions of Section 6.14 hereof.

9.8.    <u>Disclaimers</u>.

(a)    <u>Relationship</u>.  The relationship of Grantor and Lender under this Deed of Trust and the other Loan Documents is, and shall at all times remain, solely that of Grantor and Lender; and Lender neither undertakes nor assumes any responsibility or duty to Grantor or to any third party with respect to the Property.  Notwithstanding any other provisions of this Deed of Trust and the other Loan Documents:  (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Grantor, and Lender does not intend to ever assume such status; (ii) Intentionally Omitted; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Grantor; and

38

Security Instrument
310704763.4

(b)  No Liability.  Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from:  (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Grantor or any of Grantor's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Grantor or any of Grantor's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or (v) any nuisance made or suffered on any part of the Property.

9.9.  Severability.  Each representation, warranty, promise, covenant, or similar statement by the Grantor contained herein (in each case a "**Statement**") shall constitute a separate Statement upon which the Lender may rely.  Wherever possible, each Statement shall be interpreted in such manner as to be effective and valid under applicable law, but if any Statement of this Deed of Trust shall be prohibited by or invalid under applicable law, such Statement shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such Statement or the remaining Statements of this Deed of Trust.  If and only if a Statement cannot be interpreted in a manner to be valid under applicable law, such Statement deemed to be prohibited or invalid may be reformed to have the meaning as close as possible to the meaning provided in this Deed of Trust, as long as such reformed meaning is consistent with the intent and purpose of this Deed of Trust to benefit Lender's interests regarding (i) full and timely payment and performance of the Secured Obligations and (ii) Lender's protection of its interests in the Property and the Collateral.  Without limiting the preceding provisions of this Section 9.9, if any provision (for the avoidance of doubt, including not only Statements, but other terms of this Deed of Trust that would not be defined as "Statements") of this Deed of Trust is deemed, in a final non-appealable decision, by a competent court with jurisdiction over the parties and the subject matter to be prohibited or unenforceable under applicable law, the particular provision of this Deed of Trust shall be deemed modified so as to constitute a provision conforming as nearly as possible to the void or unenforceable provision while still remaining valid and enforceable under applicable law, and the remaining terms or provisions of this Deed of Trust shall not be affected thereby; however, if and only if, a provision is prohibited by or unenforceable under applicable law and cannot be reformed as contemplated by the preceding clauses of this Section 9.9, such void or unenforceable provision shall be ineffective to the extent it is void or unenforceable and be severed from the rest of this Deed of Trust without, in each case, invalidating this Deed of Trust; adversely affecting the other terms of this Deed of Trust; or limiting the enforceability of this Deed of Trust.

9.10.  Relationship of Articles.  The rights, remedies and interests of Lender under this Deed of Trust established by Article 1 and the security agreement established by Article 4 are independent and cumulative, and there shall not be a merger of any lien created by this Deed of Trust with any security interest created by any other pledge or security agreement, if any exists among the Loan Documents.  Lender may elect to exercise or enforce any of its rights, remedies or interests under either or both this Deed of Trust and any other security agreement, if any, as Lender may from time to time deem appropriate.  The Assignment of Rents and Leases established by Article 3 is similarly independent of and separate from this Deed of Trust and the Security Agreement and may be enforced separately without adversely affecting the priority or enforceability, in each case, of this Deed of Trust and the lien on the Property it creates.

9.11.  Merger.  No merger shall occur as a result of Lender's acquiring any other estate in, or any other lien on, the Property unless Lender consents to a merger in writing (signed by an officer of Lender holding the title of Executive Vice President or higher).

Security Instrument
310704763.4

9.12.  <u>Obligations of Grantor, Joint and Several</u>.  If more than one person has executed this Deed of Trust as "**Grantor**," the obligations of all such persons hereunder shall be joint and several.

9.13.  <u>Separate and Community Property</u>.  Any married person who executes this Deed of Trust as a Grantor agrees that any money judgment that Lender or Trustee obtains pursuant to the terms of this Deed of Trust or any other obligation of that married person secured by this Deed of Trust may be collected by execution upon any separate property or community property of that person.

9.14.  <u>Interpretation and Amendment</u>.  The Loan Documents shall not be modified except by written instrument executed by all parties, and in the case of Lender, to be binding upon Lender, such written instrument must be signed by an officer of Lender holding the title of Executive Vice President or higher.  With respect to this Deed of Trust, in addition to complying with the immediately foregoing sentence, to be valid, such amendment must also be recorded in the official records of the county in which the Land is situated, with Lender having expressly authorized such recording in writing.  Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing pursuant to the terms hereof.  When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  Article, section, and sub-section headings used herein are for convenience of reference only, are not part of this Agreement, and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.  This Agreement shall be construed without regard to which party drafted this Agreement (it being understood that the parties reject any rule of construction favoring a presumption against the drafter).

9.15.  <u>Capitalized Terms</u>.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

9.16.  <u>Successors in Interest</u>.  The terms, covenants, and conditions herein contained shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.  The foregoing sentence shall not be construed to permit Grantor to Transfer the Loan, the Property, or any interest it has in either the Loan or the Property, in each case, except as otherwise permitted under this Deed of Trust or the other Loan Documents, including, without limitation, the terms of Section 6.14 hereof.

9.17.  <u>Governing Law</u>.  This Deed of Trust and the other Loan Documents and the obligations arising hereunder and thereunder shall be governed by, and construed in accordance with, the laws of the State of Washington applicable to contracts made and performed in Washington and any applicable federal law, including, to the extent, with respect to Lender's rights and obligations, that federal law preempts the laws of the State of Washington.  Except as provided in the immediately preceding sentence, Grantor hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than Washington governs this Deed of Trust and other Loan Documents.

9.18.  <u>Consent to Jurisdiction</u>.  Grantor irrevocably submits to the Jurisdiction of:  (a) any state or federal court sitting in the State of Washington over any suit, action, or proceeding, brought by Grantor against Lender, arising out of or relating to this Deed of Trust or the Loan; (b) any state or federal court sitting in the state where the Property is located or the state in which Grantor's principal place of business is located over any suit, action or proceeding, brought by Lender against Grantor, arising out of or relating to this Deed of Trust or the Loan; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under this Deed of Trust or any action brought by Lender

40

Security Instrument
310704763.4

to enforce its rights with respect to the Collateral.  Grantor irrevocably waives, to the fullest extent permitted by law, any objection that Grantor may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

   9.19. <u>Exhibits</u>.  Any and all Exhibits are incorporated into this Deed of Trust by this reference.

   9.20. <u>Addresses; Request for Notice</u>.  All notices and other communications that are required or permitted to be given to a party under this Deed of Trust shall be in writing, refer to the Loan number, and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested to the addressee below.  All such notices and communications shall be effective upon receipt of such delivery, or if refused or deemed undeliverable, in each case, on the date the first delivery was attempted.  The addresses of the parties are set forth on page 1 of this Deed of Trust.  Grantor's principal place of business is at the address set forth on page 1 of this Deed of Trust.

   Any Grantor whose address is set forth on page 1 of this Deed of Trust hereby requests that a copy of notice of default and notice of sale be delivered to it at that address.  Failure to insert an address shall constitute a designation of Grantor's last known address as the address for such notice.  Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.

   9.21. <u>Counterparts</u>.  This Deed of Trust may be executed in any number of counterparts, each of which, when executed and delivered, will be deemed an original and all of which taken together, will be deemed to be one and the same instrument.

   9.22. <u>Time is of the Essence</u>.  Time is of the essence with respect to all of Grantor's obligations and agreements hereunder regarding, in each case, (i) the payment of money; (ii) where any deadline or period for performance is provided; and (iii) where notice, reports, financial statements, information concerning the Property and its operation, or other information is required to be delivered to Lender.

   9.23. <u>Customer Identification - USA Patriot Act Notice</u>.  Lender hereby notifies Grantor that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001), as amended (the "**Act**"), and Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies Grantor, which information includes the name and address of Grantor and such other information that will allow Lender to identify Grantor in accordance with the Act.

   9.24. **Waiver of Jury Trial and Dispute Resolution**.

     (a) TO THE FULLEST EXTENT PERMITTED BY LAW, GRANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY WITH REGARD TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GRANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS

Security Instrument
310704763.4

PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GRANTOR.

(b)     With respect to any Dispute (as defined below) which arises under the terms of this Deed of Trust, the following paragraphs ("**Dispute Resolution Provision**") concern the resolution of any and all controversies or claims between Grantor (including any persons claiming by or through Grantor) and Lender, whether arising in contract or tort or by statute, that arise out of or relate to (i) this Deed of Trust (including any renewals, extensions or modifications) or (ii) any of the other Loan Documents (collectively, a "**Dispute**"); provided, however, in no event may any Collection Action (as defined herein) by Lender be within the meaning of a Dispute.

(i)     As used herein, (i) the "**Act**" means the Federal Arbitration Act (Title 9, U.S. Code), and (ii) "**JAMS**" means JAMS (a/k/a JAMS Mediation, Arbitration, ADR Services) or any successor thereto.

(ii)     Intentionally Omitted.

(iii)     This Subsection (iii) of this Section 9.24(b) is itemized by paragraphs with numerals, as follows:

(1)     If and only if both Grantor and Lender so consent, any Dispute shall be resolved by binding arbitration in accordance with the Act.  The Act shall apply even though this Deed of Trust provides that it is governed by the law of a specified state; however, the decision of the arbitrators shall be consistent with applicable law, to the extent not preempted by the Act (whether by law or by this Deed of Trust's election of the Act).  Arbitration proceedings will be determined in accordance with the Act, the rules and procedures for the arbitration of financial services disputes of JAMS, and the terms of this Dispute Resolution Provision.  In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control.

(2)     The arbitration shall be administered by JAMS and conducted in any U.S. state where real or tangible personal property collateral for the Loan is located.  All Disputes shall be determined by one arbitrator; however, if any Dispute exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), or if more than one Dispute is made at the same time and cumulatively the Disputes exceed FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), upon the request of any party, the Disputes shall be decided by three (3) arbitrators.  All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement, and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing.  However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days.  The arbitrator(s) shall provide a concise written statement of reasons for the award.  The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(3)     The arbitrator(s) will have the authority to decide whether any Dispute is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis.  For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Dispute is the equivalent of the filing of a lawsuit.  Any dispute concerning this arbitration provision or whether a Dispute is arbitrable shall be determined by the arbitrator(s).  The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Deed of Trust.

42

(c)     This Dispute Resolution Provision shall not limit the right of Lender, in each case, to (v) exercise self-help remedies, when permitted by applicable law, including, without limitation, setoff or acting as an attorney-in-fact to receive Accounts; (w) initiate judicial or non-judicial foreclosure against any real or personal property (e.g., without limitation, the Property and the Collateral, in each case); (x) exercise any judicial or power of sale rights, (y) act in a court of law to obtain an interim remedy, including, without limitation and in each case, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies, or (z) bring any action for payment. Each of the actions described in the foregoing subclauses (v) through (z) of this Section 9.24(d) shall constitute a "**Collection Action**."

(d)     The filing of a court action is not intended to constitute a waiver of the right of Lender, including, without limitation, on behalf of the suing party, to require thereafter submission of the Dispute to a referee.

ARTICLE 10

INTENTIONALLY OMITTED

ARTICLE 11

STATE-SPECIFIC PROVISIONS

11.1.    Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this Article 11 and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article 11 will control and be binding.

11.2.    Nonagricultural Use; Commercial Loan.    Borrower represents, warrants, and covenants to Lender that (a) the Property is not, and will not be, used principally for agricultural purposes, and (b) the Loan is made exclusively for commercial, investment, or business purposes and no portion thereof will be used for any consumer, personal, family or household purpose.

11.3.    Expenses During Redemption Period.  If this Deed of Trust is foreclosed as a mortgage and the Property sold at a foreclosure sale, the purchaser may during any redemption period allowed, make such repairs or alterations on the Property as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof.  Any sums so paid together with interest thereon from the time of such expenditure at the lesser of the default rate set forth in the Note or the maximum rate permitted by law, will be added to and become a part of the amount required to be paid for redemption from such sale.

11.4.    Foreclosure Subject To Tenancies.  Lender will have the right at its option to foreclose, or cause the nonjudicial foreclosure of, this Deed of Trust subject to the rights of any tenant or tenants of the Property.

11.5.    Lender's And Trustee's Expenses.  Borrower will pay all of Lender's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any suit is filed, including, without limitation, legal fees and disbursements, foreclosure costs, title charges, and expenses incurred in any bankruptcy, reorganization, liquidation, receivership or similar proceeding. All such sums, with interest thereon, will be additional indebtedness of Borrower secured by this Deed of Trust.  Such sums will be immediately due and payable and will bear interest from the date of

43

Security Instrument
310704763.4

disbursement at the lesser of the default rate set forth in the Note or the maximum rate permitted by law.

11.6.    <u>Successor Trustee</u>.  In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee will succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

11.7.    <u>Lender's Powers</u>.  Without affecting the liability of any person for payment or performance of the Secured Obligations or any of Lender's rights or remedies, Lender, at its option, may extend the time for payment of the Secured Obligations or any part thereof, reduce payment thereon, release anyone liable thereon, accept a renewal note or notes therefor, modify the terms and time of payment thereof, release the lien of this Deed of Trust on any part of the Property, take or release other or additional security, release or reconvey or cause to be released or reconveyed all or any part of the Property, or consent and/or cause Trustee to consent to the making of any map or plat of the Property, consent or cause Trustee to consent to the granting of any easement or creating any restriction on the Property, or join or cause Trustee to join in any subordination or other agreement affecting this Deed of Trust or the lien or charge hereof.  Borrower will pay Lender a reasonable service charge, together with such title insurance premiums and attorneys' fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

11.8.    <u>Subdivision</u>.  Borrower hereby consents to a subdivision of the Property, if Lender, in its sole discretion, determines that a subdivision of the Property is necessary or desirable to preserve the lien of this Deed of Trust, or to permit Lender to foreclose on only a portion of the Property.

11.9.    <u>Agents</u>.  In exercising any rights hereunder or taking actions provided for herein, Lender and Trustee may act through their respective employees, agents or independent contractors as authorized by Lender and Trustee.

11.10.    <u>Protection Of Lender's Security</u>.  Borrower will give notice to Lender of and will appear in and defend any action or proceeding that may affect the Property, the interests of Lender or Trustee therein, or the rights or remedies of Lender or Trustee under the Loan Documents.  If any such action or proceeding is commenced and there is an uncured Event of Default, or Borrower fails to perform any of the Secured Obligations, Lender or Trustee may, at their option, make any appearances, disburse any sums, pay or settle any claims that have resulted in or may result in a lien of any portion of the property, make any entries upon the Property and take any actions as may be necessary or desirable to (i) protect or enforce the security of this Deed of Trust, (ii) remedy Borrower's failure to perform the Secured Obligations (without waiving such default by Borrower), or (iii) otherwise protect Lender's or Trustee's interests.  Borrower will pay all losses, damages, fees, costs and expenses incurred by Lender and Trustee in taking such actions; including, without limitation, reasonable legal fees.

11.11.    <u>Reimbursement Of Lender's And Trustee's Expenses</u>.  All amounts disbursed by Lender and Trustee pursuant to Sections 11.5 and 11.10 or any other provision of this Deed of Trust or the other Loan Documents, with interest thereon at the default rate set forth in the Note from the date of disbursement until repaid, will constitute Secured Obligations secured by this Deed of Trust.  All such amounts will be immediately due and payable and bear interest from the date of disbursement at the lesser of the default rate set forth in the Note or the maximum rate permitted by law.

11.12.    <u>Compliance With Laws</u>.  Borrower agrees that it will not use, and will not allow any tenants or subtenants to use, the Property for any activity that violates any federal or state law.

44

Security Instrument
310704763.4

Borrower covenants and agrees that all future leases and modifications of existing leases will include a provision that prohibits the use of the Property for any activity that violates any federal or state law.

11.13.  <u>Foreclosure</u>.  Lender may immediately commence an action to foreclose this Deed of Trust or to specifically enforce its provisions or any of the indebtedness secured hereby pursuant to the statutes in such case made and provided and sell the Property or cause the Property to be sold in accordance with the requirements and procedures provided by said statutes in a single parcel or in several parcels at the option of Lender.  In the event foreclosure proceedings are filed by Lender, all out of pocket expenses incident to such proceeding, including, but not limited to, reasonable attorneys' fees and costs, shall be paid by Borrower and secured by this Deed of Trust and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.  The secured indebtedness and all other obligations secured by this Deed of Trust, including, without limitation, interest at the Default Interest Rate (as defined in the Note) any prepayment charge, fee or premium required to be paid under the Note in order to prepay principal (to the extent permitted by applicable law), reasonable attorneys' fees and any other amounts due and unpaid to Lender under the Loan Documents, may be bid by Lender in the event of a foreclosure sale hereunder.  In the event of a judicial or nonjudicial foreclosure sale, it is understood and agreed that Lender or its assigns may become the purchaser of the Property or any part thereof.  This Deed of Trust shall continue and remain in full force and effect during any period of foreclosure or any redemption period with respect to the Property. Following a sale pursuant to the exercise of the Trustee's power of sale, as provided herein, Borrower and any indemnitor or guarantor of the loan secured hereby shall remain personally liable to the full extent provided by applicable law.

11.14.  **Statutory Notice**.  ORAL AGREEMENTS OR ORAL COMMITMENTS TO LEND MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

[Signature page follows]

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 64 of 127    B - 45

      IN WITNESS WHEREOF, Grantor has executed this Deed of Trust as of the day and year set forth above.

GRANTOR:

Amity Court LLC, a Washington limited liability company

    By: X & C Holdings LLC, a Delaware limited liability company
    Its Managing Member, Manager, and Governor

    By: _____
    Nanling Chen, Managing Member and Manager for X & C Holdings LLC

    By: _____
    Stanley Xu, Managing Member and Manager for X & C Holdings LLC

Security Instrument
310704763.4

STATE OF WASHINGTON        }
                           } SS.
COUNTY OF KING             }

This record was acknowledged before me on ___27___ day of __Sept.__, 2021 by
__Nanling Chen__ as __Manager__ of __X & C Holdings LLC__.



_(Signature of notary public)_

__Notary__
_(Title of office)_

My Commission Expires: __4-9-24__
_(Date)_

_(Stamp)_

STATE OF WASHINGTON        }
                           } SS.
COUNTY OF KING             }

This record was acknowledged before me on ___27___ day of __Sept.__, 2021 by
__Stanley Xu__ as __Manager__ of __X & C Holdings LLC__.



_(Signature of notary public)_

__Notary__
_(Title of office)_

My Commission Expires: __4-9-24__
_(Date)_

_(Stamp)_

47

Security Instrument
310704763.4

## EXHIBIT A

LEGAL DESCRIPTION

That portion of the Southwest Quarter of the Northeast Quarter of Section 27, Township 25 North, Range 5 East, Willamette Meridian, in King County, Washington, described as follows:

Beginning on the East line of said subdivision at its intersection with the Northerly line of the Bellevue-Redmond Road;

Thence North 00°58'16" East along said East line 280.00 feet to the True Point of Beginning;
Thence North 88°16'05" West parallel to the North line of said section 150.00 feet;
Thence South 00°58'16" West parallel to the East line of said subdivision to the Northerly margin of Northup Road (Bellevue-Redmond Road);
Thence Easterly along said margin to the East line of said subdivision;
Thence North 00°58'16" East along said East line to the True Point of Beginning.

Situate in the County of King, State of Washington.

A-1

Security Instrument
310704763.4

# EXHIBIT C

# RESERVE PLEDGE AND SECURITY AGREEMENT

THIS RESERVE PLEDGE AND SECURITY AGREEMENT ("**Agreement**") is made as of the **22nd day of September**, **2021** by and between **Amity Court LLC**, a Washington limited liability company ("**Borrower**"), and **Axos Bank**™, a federally chartered savings bank ("**Lender**").

## RECITALS

A.      Lender is lending Borrower the sum of **FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00)** evidenced by that certain Secured Promissory Note of even date herewith (the "**Note**") and secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith (the "**Deed of Trust**") executed by Borrower creating a first trust deed lien on and encumbering the improved real property located at 14400 Northeast Bellevue-Redmond Road, Bellevue, Washington, 98007 (the "**Property**").

B.      The Note, the Deed of Trust and the other documents, certificates, instruments and agreements executed by Borrower in connection with or to otherwise evidence or secure the Loan are hereinafter collectively referred to as the "**Loan Documents**."

C.      As a condition to making the Loan and as additional security for the payment and performance of Borrower's obligations in connection with the Loan, Borrower wishes to pledge and to grant to Lender a security interest in any and all deposit accounts at Lender into which Reserve (hereinafter defined) has been disbursed or deposited by either Lender, Borrower or any third party, and any renewals, replacements or extensions thereof (collectively, the "**Account**").

D.      Any capitalized term set forth herein and not otherwise defined shall have the meaning ascribed to such term in the Note and the Deed of Trust.

NOW THEREFORE, in consideration of and as an inducement to Lender to make the Loan, Borrower, intending to be legally bound, hereby covenants and agrees as follows:

1.      Reserve Amount.  **One Hundred Seventy Five Thousand ($175,000.00)** of the Loan proceeds (the "**Reserve**") shall be disbursed into the Account, which shall be a blocked account, subject to the terms of this Agreement and any ancillary agreements, if any, Lender may require regarding opening of the Account.  Borrower shall comply with Lender's requirements regarding opening the Account and Lender may specify which of Borrower's accounts held at the Lender shall be used for purposes of holding the Reserve.  The Account shall be under Lender's sole dominion and control and Borrower shall not have access to the funds therein (e.g., and without limitation, Borrower may not make withdrawals from, obtain disbursements of or write drafts against any funds in the Account).  Lender shall not be obligated to segregate the Account, shall not be a fiduciary of the Borrower with respect to the Reserve (it being understood that the Reserve and the Account, in each case, are created for the benefit of Lender, subject to the terms hereof, as an accommodation to Borrower to facilitate making the Loan).  For the avoidance of doubt, despite being held in the Account, for the purposes of determining the Loan balance and Borrower's repayment obligations to Lender, the Reserve amount shall be deemed to have been funded to Borrower as of the date hereof, and interest owed to Lender on the Reserve amount shall accrue and be paid to Lender, by Borrower, as provided in the other Loan Documents.  The Borrower shall not earn or receive, in each case, any interest on the Reserve or the Account.  Subject to the terms of this Agreement, the Reserve shall be released to Borrower as determined

1

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

by Lender at Lender's sole discretion as provided in **Exhibit A**, attached hereto and made a part hereof.

2. Security Interest.

(a) As partial security of payment and performance of the obligations described in Section 3 hereof (the "**Obligations**") Borrower hereby pledges and assigns to Lender and grants to Lender a security interest in, all Borrower's right, title and interest in the property described in:

(i)     The Reserve, including, without limitation, any portion thereof;

(ii)    The Account, all funds therein and interest accruing thereon, if any, and all investments therein or therewith (including, without limitation, rents, cash, accounts, deposit accounts, securities and money owed or held therein, if applicable) (it being understood that this Section 2(a)(ii) shall not be construed to mean that the Account earns interest for the Borrower because the Account shall not earn interest for the Borrower, and this language is included to ensure proper creation of the security interest);

(iii)   All books and records relating to the Account to the extent that they are not Lender's property; and

(iv)    All renewals, replacements, substitutions and proceeds of the foregoing Account.

The collateral described in Section 2(a)(i)-(iv) shall be collectively referred to as the "**Collateral**." For the avoidance of doubt, the Collateral, as used in this Agreement and irrespective of any meanings ascribed to the word "collateral" in the Washington Commercial Code or Uniform Commercial Code, shall not include real property or any fixtures attached to and made a part of such real property.

(b) This Agreement is, among other things, intended by the parties to be a security agreement for purposes of the Washington Uniform Commercial Code.

(c) For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Account or proceeds is sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, including return premiums, with respect to any insurance relating thereto.

(d) For the avoidance of doubt, this Agreement shall not be construed to limit, in each case, (x) any inherent security interest Lender may have under applicable law as a bank in possession of funds or (y) Lender's traditional banker's rights of both set-off and recoupment (collectively, "**Banker's Traditional Rights**"). For the further avoidance of doubt, no action taken consistent with, in furtherance of, or pursuant to this Agreement, in each case, may be construed as an exercise of Banker's Traditional Rights unless Lender has expressly stated in writing that it is exercising any of its Banker's Traditional Rights with respect to such action.

(e) Lender has all the rights, powers and remedies of a secured party under the Washington Commercial Code ("**Com. Code**"), including, without limitation, Com. Code Sec. 62A-9A-604. All of the rights, powers and remedies of Lender under this Agreement shall be in addition to all rights, powers and remedies given to Lender by any statute or rule of law, or other

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

agreement, shall be cumulative and may be exercised successively or concurrently without impairing or in any way adversely affecting Lender's security interest in the Account. Termination of Lender's security interest in the Account, whether, and without limitation, through satisfaction of the terms of this Agreement, foreclosure upon and application of the Account, or any other voluntary or in voluntary means, shall not limit Lender's rights and remedies under applicable law and the Loan Documents, in each case, including, without limitation, the rights recognized in this Section 2(e).

(f) Borrower shall from time to time execute and deliver to Lender, at Lender's reasonable request, any instruments and will perform any and all acts deemed necessary by Lender to carry into or continue in effect the terms, conditions and provisions of this Agreement and the transactions connected herewith. In the event the same be required in connection with this transaction, or in connection with any sale made in accordance with or pursuant to the enforcement of this Agreement, Borrower shall execute and deliver any and all instruments that may be required by applicable law to effectuate this Agreement and to protect the security interest granted herein. If Borrower fails to execute or deliver any such instruments or to perform any such acts, Borrower hereby irrevocably authorizes and appoints Lender to execute and deliver such instruments and to perform such acts in the name of Borrower and on its behalf as its attorney-in-fact, including, without limitation, to the fullest extent permitted by applicable law, with respect to any sale, transfer, foreclosure, strict foreclosure, or other enforcement action against the Collateral. Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in Reserve, or permit any lien to attach thereto, or any levy to be made thereon, or any financing statements, except those naming Lender as the secured party, to be filed with respect thereto

3.    The Obligations. The Obligations secured by the Account pursuant to this Agreement shall consist of any and all debts, obligations and liabilities of Borrower to Lender arising out of, connected with or related to the Loan, including, in each case, (i) the Note, (ii) Deed of Trust, (iii) this Agreement, and (iv) any of the other documents and instruments evidencing or securing the Loan, excepting therefrom any guarantee or environmental indemnity agreement, whether now existing or hereafter arising, voluntary or involuntary, whether or not jointly owed with others, direct or indirect, absolute or contingent, liquidated or unliquidated, and whether or not from time to time decreased or extinguished and later increased, created or incurred. For the avoidance of doubt, notwithstanding any other provision in the Loan Documents, this Agreement and the Collateral, in each case, do not secure any guarantee of the Loan or environmental indemnity agreement related to the Loan. In addition, the Obligations shall include any other or future obligation of Borrower to Lender that recites that it is secured hereby. Notwithstanding the foregoing, this Agreement, and all obligations of Borrower hereunder, shall terminate upon payment in full of all principal and accrued interest outstanding on the Note, if at the time of such payment in full Borrower is, in each case, (i) not otherwise in default under any of the Loan Documents or (ii) owing any other sum to Lender under the Loan Documents (e.g., without limitation, administrative fees or reimbursements). If Borrower is otherwise in default or owing other funds to Lender under the Loan Documents, in each case, then this Agreement shall continue in force notwithstanding the payment in full of the Note, until such time as all of Borrower's non-contingent obligations under the Loan Documents have been completely performed and Borrower is no longer in default thereunder. Upon termination of this Agreement through satisfaction of its terms, the Account shall be returned to Borrower, free of Lender's security interest hereunder, in a manner authorized pursuant to Section 6 hereof.

4.    Fees and Costs.

(a) Borrower shall pay to Lender an administrative fee of five hundred dollars ($500.00) in connection with the Reserve. This administrative fee shall be deemed owed and fully payable (i.e., non-refundable) to Lender upon entering into this Agreement.

(b) Borrower shall, upon written demand by Lender to Borrower, promptly reimburse Lender for all amounts expended, advanced or incurred by Lender to enforce the rights of Lender under this Agreement, or to defend or assert the rights and claims of Lender under this Agreement (by litigation or other proceedings), which amounts will include all court costs, attorneys' fees, costs and expenses, fees of auditors and accountants, and investigation expenses as may be incurred by Lender in connection with any such matters (whether or not litigation is instituted), together with interest at the Default Rate on each such amount from the date of disbursement until the date of reimbursement to Lender if such amounts are not paid within five (5) business days after Lender's written request, all of which shall be secured by this Agreement. This Section 4(b) shall not be construed to limit Lender's rights, in each case, to recover or require Borrower to advance attorneys' fees pursuant to any other Loan Document, including, without limitation, pursuant to Section 19.10 of the Note (it being understood that nothing in this Agreement adversely affects any other right of Lender to seek payment of attorney's fees or any other expense).

5.    Borrower's Indemnity. Borrower hereby agrees to indemnify, defend (with an attorney of Lender's choice), and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person (including Broker) that such Person acted on behalf of Borrower in connection with the transactions contemplated herein. Without limitation to any other right or remedy available to Lender, Lender's application or use, in each case, of the Reserve shall be deemed consistent with both (i) a strict foreclosure under the Com. Code in partial satisfaction of a secured obligation and (ii) Lender's rights to proceed against collateral pursuant to Section 9A-604 of the Com. Code. Borrower understands and agrees that Borrower shall not be entitled to receive release of the Reserve if the Reserve is used or applied pursuant to this Agreement and that an application of the Reserve shall not be construed as total satisfaction of Borrower's obligations under the Loan Documents if any of the Obligations remains outstanding at the time of such strict foreclosure and application.

6.    Event of Default under the Loan Documents. Upon or during the continuance of an Event of Default, Lender may enforce the Default Rate as set forth in the Note and apply any sums in Reserve in any order and in any manner as Lender shall elect in Lender's discretion without seeking the appointment of a receiver and without adversely affecting the rights of Lender to foreclose the lien of the Deed of Trust or exercise its other rights under the Loan Documents. The Reserve shall not constitute trust funds and may be commingled with other monies held by Lender. Upon repayment of the Loan in full, all remaining funds in the Reserve, if any, shall be promptly disbursed to Borrower.

7.    Authorized Actions by Lender.

(a) As long as an Event of Default has occurred and is continuing, Borrower hereby irrevocably appoints Lender as its attorney-in-fact to do (but Lender shall not be obligated to and shall incur no liability to Borrower or any third party for failure to do so) at any time and from time to time any of the following with respect to the Collateral:

(i)     Take any action that Lender is authorized to as provided herein.

(ii)    Transfer any or all of the funds from the Account for application against the Obligations in any such order and manner as Lender elects in its sole discretion.

(iii)   Transfer the Collateral or any part thereof to Lender or Lender's nominee.

(iv)    Make any compromise or settlement, payment to a third-party, or take any other action it reasonably deems advisable with respect to the Collateral or any part thereof.

(v)     Foreclose or otherwise enforce Lender's security interest in the Collateral in any manner permitted by applicable law.

(vi)    Apply for or appoint a receiver, trustee, custodian or liquidator of Borrower or any of the Collateral.

(vii)   To the fullest extent permitted by applicable law, without notice to Borrower or any other party, declare the Obligations immediately due and payable and proceed to collect the same in any manner authorized by applicable law.

(viii)  Take any other action respect to the Collateral that Lender is entitled to take under the Com. Code, including, without limitation, (x) sell, lease or otherwise dispose of the Collateral or any portion thereof at one or more public or private sales, on such terms and in such manner as Lender may determine or (y) apply all sums received or collected from or the Collateral, including, without limitation, the proceeds of any sale thereof, to the payment of the costs and expenses incurred in preserving and enforcing the rights of Lender in effecting a sale of the Collateral (including, without limitation, reasonable attorneys' fees and legal expenses) and to the payment of the Obligations in such order and manner as Lender, in its sole discretion, elects (it being understood that this Section 7 shall not be construed to limit Lender's right to proceed with a strict foreclosure upon the Account and application of the Reserve or to proceed with a strict foreclosure against the Collateral).

(b)  Borrower agrees to reimburse Lender upon demand for any out-of-pocket costs and expenses, including, without limitation, attorneys' fees, Lender may incur while acting as Borrower's attorney-in-fact hereunder, all of which costs and expenses are included in the Obligations secured hereby.  Lender shall not be required to take any action to preserve any rights against any other person with respect to the Collateral.

8.    Borrower's Representations and Warranties.  Borrower hereby represents and warrants that:

(a)  Borrower has authority, and has completed all proceedings and obtained all approvals and consents necessary, to execute, deliver and perform this Agreement and the transactions contemplated hereby.

(b)  Such execution, delivery and performance will not contravene, or constitute a default under or result in a lien upon any property of the parties pursuant to any applicable law or regulation or any contract, agreement, judgment, order, decree, or other instrument binding upon or affecting the parties.

(c)    This Agreement constitutes a legal, valid and binding obligation of Borrower enforceable in accordance with its terms, and this Agreement grants to Lender a valid, perfected and enforceable first priority security interest in the Collateral, except as such enforceability may be limited by bankruptcy, insolvency, debtor relief or other similar laws, as applicable to Lender, affecting the enforcement of creditors' rights generally or by equitable principles.

(d)    Borrower expressly acknowledges that the Collateral only partially secures the Obligations and that the security interests created by this Agreement are not the only security for the Obligations.

(e)    The Account contains cash and therefore is an appropriate form for strict foreclosure or application, without sale.  Borrower understands that references to sale are to afford appropriate rights to Lender under the Com. Code and do not create any obligation on the part of Lender to auction, sell, or otherwise transfer the Account in foreclosing upon the same pursuant to the terms hereof.

(f)    Borrower has had ample opportunity to review this Agreement with counsel of its choosing prior to executing and delivering this Agreement.

9.    <u>Waiver</u>.  Any forbearance, or failure or delay by Lender in exercising any right, power or remedy, whether pursuant to, in each case, (i) this Agreement, (ii) any other of the Loan Documents, and (iii) applicable law, shall not preclude the further exercise thereof, and every right, power, or remedy of Lender shall continue in full force and effect until such right, power or remedy is specifically waived in writing by Lender.  Borrower waives (x) any right to require Lender, in each case, to proceed against any person or to exhaust any collateral or to pursue any remedy in Lender's power, as well as, (y) any right of subrogation and (z) any right associated with the Collateral until all Obligations have been paid or performed in full. Lender shall not be required to make any presentment, demand or protest, or give any notice and need not take any action to preserve the rights against Borrower with respect to the Collateral or in connection with any part of the Obligations.

10.    <u>Notices.</u>  All notices given under this Agreement shall be in writing to the other party at the address and in the manner set forth in the Deed of Trust.

11.    <u>Governing Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the jurisdiction in the State of Washington, and shall be binding on Borrower and its successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  This Agreement is being executed in connection with the making of the Loan pursuant to the terms of the Note.  In the event of ambiguity or in regard to any question of interpretation of this Agreement, there shall not be any presumption against the drafter.

12.    <u>Survival & Severability</u>.

(a) Section 2(d), Section 4(b), Sections 11-15, and Borrower's indemnification of Lender pursuant to Section 7 hereof, in each case, shall survive, in each case, termination of Lender's security interest in the Collateral and termination of this Agreement; however, these surviving provisions do not extend and shall not be construed to extend the existence of any security interest beyond the term provided by this Agreement.

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

(b) If any one or more of the provisions contained in this Agreement are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provisions hereof, and this Agreement will be construed as if such invalid, illegal or unenforceable provision had not been contained herein; provided, however, that the parties hereto will endeavor in good faith to rewrite the affected provision to make it valid and consistent with the intent of the original provision.

13. <u>Limited Responsibilities of Lender</u>.  Lender shall have no responsibility or liability to the Borrower for complying with instructions concerning the disposition of funds in the Reserve by a third party creditor, even if Borrower notifies Lender that such third party creditor is not legally entitled to originate any instruction, unless Lender has been served with an injunction, restraining order or other legal process issued by a court of competent jurisdiction (herein, a "**Court Order**") enjoining it from complying and has had a reasonable opportunity to act on such Court Order. This Agreement does not create any obligation or duty of Lender other than those expressly set forth hereto, and no implied covenants or obligations shall be read into this Agreement against Lender.  Furthermore, (a) Lender shall be protected by Borrower in acting or refraining from acting upon any written notice, certificate, instruction, request, or other paper or document, as to the due execution thereof, the validity and effectiveness of the provisions thereof, and the truth of any information therein contained, which Lender in good faith believes to be genuine; (b) Lender may consult with and obtain advice from counsel of its own choice in the event of any dispute or question as to the construction of any provision hereof or otherwise in connection with its duties hereunder, and any action taken or omitted by Lender in reasonable reliance upon such advice shall be full justification and protection to it; (c) Lender shall not be liable for any error of judgment or for any act done or step taken or omitted except in the case of its gross negligence or willful misconduct.  In no event shall Lender be liable for any special, indirect, or consequential damages; (d) Lender shall have no duties hereunder except those which are expressly set forth herein and in any modification or amendment hereof; provided, however, that no such modification or amendment hereof shall affect its duties unless it shall have given its prior written consent thereto; (e) Lender may engage or be interested in any financial or other transactions with any party hereto, and may act on, or as depositary, trustee, or agent for, any committee or body of holders of obligations of such persons as freely as if it were not Lender hereunder and (f) Lender shall not be obligated to take any action (or forbearance from any action) which in its reasonable judgment would cause it to incur any expense or liability not otherwise contemplated hereunder, unless it has been furnished with an indemnity with respect thereto which is reasonably satisfactory to Lender and no provision of this Agreement shall require Lender to expend or risk its own funds.

14. <u>Interpretation</u>.  For all purposes hereunder (i) words of any gender will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, unless the context requires otherwise; (ii) "including," "includes," "e.g.," and other similar terms mean "including without limitation"; (iii) any reference to a particular article, section, subsection or other subdivision or particular exhibit will be a reference to that article, section, subsection or other subdivision of or exhibit to this Agreement; (iv) "herein," "hereof," "hereunder" and other similar terms refer to this Agreement as a whole; (v) "or" is not exclusive; and (vi) article, section, subsection and other subdivision headings are for convenience of reference only and will not limit or otherwise affect the construction of this Agreement.

15. <u>Counterparts; Due Execution; Amendment</u>.  This Agreement may be executed in any number of counterparts and each such counterpart will be deemed to be an original, but all of which, when taken together, will constitute one agreement.  All amendments of this Agreement must be in writing.  No amendment to this Agreement is valid against Lender unless it states it

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

intent to amend this Agreement in the written instrument and is executed by an officer of Lender holding the title Executive Vice President or higher.

        16.    **<u>Statutory Notice</u>. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

<em>SIGNATURE PAGE FOLLOWS.</em>

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

IN WITNESS WHEREOF, the undersigned have duly executed this Reserve Pledge and Security Agreement as of the day and year first written above.

**AXOS BANK**

By: _____
Name: Amanda Baez
Title: VP, CL Transaction Manager

**BORROWER:**

Amity Court LLC, a Washington limited liability company

By: X & C Holdings LLC, a Delaware limited liability company
Its Managing Member, Manager, and Governor

By: _____
Nanling Chen, Managing Member and Manager for X & C Holdings LLC

By: _____
Stanley Xu, Managing Member and Manager for X & C Holdings LLC

Reserve Pledge and Security Agreement (Holdback Agreement)

310705399.4

Reserve Pledge and Security Agreement

Exhibit A

For the entire term of the Loan, Lender shall have no obligation regardless of any Borrower request to disburse any amount of the Reserve except, if at all, in its sole and independent determination. At any time following any disbursement made by Lender in its sole and independent determination, within three (3) Business Days of Lender's request, Borrower shall deposit additional immediately available funds into the Reserve from Borrower's own funds to replenish the Reserve in such amounts as may be requested by Lender if Lender determines in its sole and independent determination that the requested amounts are required following any disbursement made as set forth in the first sentence of this paragraph. Borrower's failure to comply with the foregoing covenant shall be deemed an immediate Event of Default under the Loan Documents. Nothing contained herein shall be deemed to modify or limit Borrower's obligation under the Note or to make the principal and interest payments due and owing to Lender as and when the same become due.

## PLEDGE AND SECURITY AGREEMENT

### (Limited Liability Company Membership Interests in Amity Court LLC )

This PLEDGE AND SECURITY AGREEMENT (this "Agreement") dated as of September 22, 2021, is made by X & C Holdings LLC, a Delaware limited liability company ("Grantor"), in favor of AXOS BANK™, a federally chartered savings association ("Secured Party"), with reference to the following facts:

### RECITALS

A.  Secured Party is making a loan (the "Loan") to Amity Court LLC, a Washington limited liability company ("Borrower").

B.  The Loan is evidenced by that certain Secured Promissory Note of even date herewith made by Borrower and payable to the order of Secured Party in the principal amount of $5,000,000.00 (as amended, modified, supplemented, restated and replaced from time to time, the "Note").

C.  Grantor is the legal and beneficial owner of 100% of the limited liability company interests in Borrower.

D.  As a condition precedent to Secured Party's making of the Loan to Borrower, Secured Party requires that Grantor enter into this Agreement, and to pledge and grant a security interest in certain Collateral to Secured Party, all under the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in order to induce Secured Party to enter into and perform under the Loan Documents, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Grantor hereby represents, warrants, covenants, agrees, and pledges as follows:

1.  Definitions.  Capitalized terms used but not defined in this Agreement shall have the definitions given thereto in the Note as though set forth herein in full.  The following terms shall have the meanings respectively set forth after each:

    "Agreement" means this Pledge and Security Agreement, and any extensions, modifications, renewals, restatements, supplements, or amendments hereof.

    "Certificates" means all certificates, instruments or other documents now or hereafter representing or evidencing any Membership Interest.

    "Collateral" means, collectively, (a) the Membership Interest of Grantor, to the extent of 100% of all of the Membership Interests of Borrower, and (b) all Collateral Proceeds.

    "Collateral Proceeds" means, collectively, all cash payments, dividends, distributions, payments in kind, principal, interest, fees, commissions, reimbursements, and other payments of any kind and all conversions, substitutions, exchanges, and replacements,

made pursuant to the Governing Documents, to the extent relating to 100% of all of the Membership Interests in Borrower.

"Event of Default" means (i) an "Event of Default" as such term is defined in the Note, or (ii) a default by Grantor under any provision of this Agreement.

"Governing Documents" means, collectively, the certification of formation and limited liability company agreement and in each case any amendments or restatements thereof (or corporate equivalents).

"Membership Interest(s)" means all of the following:

(a)  all existing and future income, compensation, distributions, accounts, accounts receivable, chattel paper, instruments, documents, general intangibles, indebtedness, and other rights to payment and contract rights owing to Grantor from Borrower or with respect to Grantor's equity or other interests in Borrower, wherever located and whether now owned or hereafter acquired or arising, including all payments, dividends, or other distributions, whether in cash, property, or otherwise, at any time owing or payable to Grantor on account of Grantor's interest as a member in Borrower;

(b)  all existing and future rights and interests of Grantor in, to and under Borrower and Governing Documents, including (i) all voting and management rights and all rights to grant or withhold consents and approvals, (ii) all rights of access and inspection to and use of all books and records, including computer software and computer software programs, of Borrower, and (iii) all other rights, interests, property, or claims to which Grantor may be entitled in its capacity as a member of Borrower; and

(c)  any and all additions, modifications, amendments, substitutions, and replacements to or for the foregoing and all proceeds and products of any of the foregoing.

"Obligations" means and includes any and all obligations and indebtedness of (a) Borrower to Secured Party under the Loan Documents, and (b) Grantor under this Agreement. The Obligations include all principal, interest, fees, expenses and other amounts, and all interest that accrues on all or any part of any of the Obligations after the filing of any petition or pleading by or against Grantor or Borrower in any bankruptcy, insolvency or other similar proceeding.

"Person" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government, or any agency or political subdivision thereof, or any other form of entity.

"UCC" means the Washington Uniform Commercial Code, as amended from time to time (or the Uniform Commercial Code of any other State to the extent that such other code is required under the provisions of the Washington Uniform Commercial Code or otherwise to be applied in whole or in part to particular collateral or to the creation, perfection, or enforcement of security interests in particular collateral).

2.	Pledge and Grant of Security Interest.  To secure the prompt payment in full in cash, and the prompt and full performance, of the Obligations, Grantor hereby pledges to Secured Party and grants to Secured Party a security interest in and to all Collateral for the benefit of Secured Party, together with all products, proceeds, dividends, redemption payments, liquidation payments, cash, instruments, and other property, and any and all rights, titles, interests, privileges, benefits, and preferences incidental to the Collateral.  The security interest and pledge created hereby shall continue in effect so long as any Obligation is owed to Secured Party.  This Agreement is a continuing and irrevocable agreement and Grantor, to the maximum extent permitted by law, hereby waives any right to revoke this Agreement.

Grantor agrees to cause Borrower to (x) elect to treat its Membership Interests as securities as contemplated by the definition of "security" in Sections 8-102(15) and 8-103 of Article 8 of the UCC, (y) certificate its Membership Interests and (z) promptly deliver to the Secured Party, any and all certificates evidencing the Membership Interests.

3.	Representations and Warranties.  Grantor hereby represents and warrants to Secured Party as follows:

3.1	With respect to the Collateral generally:

(a)	At all times, Grantor shall have good and marketable title to all Collateral in which Grantor is purporting to grant a security interest to Secured Party, and the Collateral shall not be subject to any lien or security interest (other than in favor of Secured Party); and

(b)	Grantor has the right and power to pledge and grant to Secured Party a security interest in the Collateral on the terms set forth in this Agreement.

3.2	With respect to its Membership Interest:

(a)	True, correct, and complete copies of Governing Documents are attached hereto as Exhibit B, and have not been terminated, amended or modified.  Each of Governing Documents is in full force and effect and Grantor is a duly constituted member of Borrower pursuant to Governing Documents.  Grantor's Membership Interest in Borrower assigned hereunder has been validly issued and is a non-assessable and fully paid Membership Interest in Borrower;

(b)	Grantor has full right, power, and authority to enter into this Agreement (including the provisions enabling Secured Party or its nominee, upon the occurrence and during the continuance of an Event of Default to exercise the voting and other rights of Grantor's Membership Interest pledged hereunder as provided herein) under the terms of Governing Documents and under applicable law, without the consent, approval, or authorization of, or notice to, any Person, including any regulatory authority or any Person having any interest in Borrower and including any lender to Borrower or any subsidiary of Borrower;

(c)	Grantor is the sole, direct, legal, and beneficial owner of its Membership Interest.  Upon the filing of a UCC-1 financing statement with the Delaware

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 81 of 127    C - 13

Secretary of State / Department of Licensing, describing the Collateral as the collateral and designating Secured Party as the secured party and Grantor as the debtor, Secured Party will have a first priority perfected security interest in Grantor's Membership Interest, to the extent of 100% of all of the Membership Interests of Borrower, securing the Obligations;

(d) Grantor's Membership Interest (1) is not dealt in or traded on any securities exchanges or in any securities markets, and (2) is not and will not be held in a securities account and is not an investment company security. Grantor will comply with all requirements of the UCC to effectuate the pledge of the Collateral as required herein;

(e) Neither Grantor nor any other party is in default under the Governing Documents, and no notice of default has been given by any party thereunder and no fact or condition exists that with the giving of notice or the passage of time would constitute such a default; and

(f) Grantor hereby irrevocably waives any and all provisions of Governing Documents that (1) prohibit, restrict, condition, or otherwise affect the grant under this Agreement of any lien, security interest or encumbrance on any of the Collateral or any enforcement action which may be taken with respect to any such lien, security interest, or encumbrance, (2) are inconsistent with the terms of this Agreement, or (3) might cause Secured Party to become obligated to any Person in any manner as a result of the grant of a security interest in the Collateral in favor of Secured Party.

4.    Covenants.

4.1    Grantor hereby covenants that it shall not, without the prior written consent of Secured Party: (a) cause, permit, execute, consent to, vote in favor of, suffer, or seek to obtain any modification, amendment, dissolution, or termination of Borrower or the Governing Documents; (b) approve or consent to any transfer of a material portion of the assets held by Borrower; (c) cause, approve or consent to Borrower's adopting Article 8 of the UCC to apply to any of its Membership Interests, (d) cause, approve or consent to any Membership Interests in Borrower being evidenced by a certificate; or (e) waive or release any material obligation of any party to Governing Documents, or permit or agree to any act or omission to act on the part of any such party or parties thereunder which reduces, changes, or otherwise adversely affects Secured Party's rights under this Agreement.

4.2    Grantor further covenants and agrees: (a) to comply with all provisions and covenants contained in Governing Documents; (b) to cause to be paid directly to Secured Party (rather than to Grantor) all Collateral Proceeds and all other distributions, dividends and payments of money or property by Borrower on account of any of the Collateral; (c) to deliver to Secured Party a copy of each notice of default delivered to Grantor under Governing Documents; and (d) to permit Secured Party to exercise its powers hereunder.

5. <u>Rights of Secured Party</u>.

    5.1   <u>Filings to Perfect Security</u>. Secured Party may (and is hereby authorized to) file with any filing office such financing statements, amendments, addenda, continuations, terminations, assignments, and other records (whether or not executed by Grantor) as Secured Party may deem necessary in its sole discretion to perfect and to maintain perfected security interests in the Collateral. Such documents may designate Secured Party as the secured party and Grantor as the debtor, identify Secured Party's security interest in the Collateral, and contain any other items required by law or deemed necessary by Secured Party. Upon Secured Party's request, Grantor shall execute any such documents (whether or not required by law). Any such filings made by Secured Party prior to Grantor's execution of this Agreement are hereby authorized, ratified, and confirmed by Grantor. Without limiting the generality of the foregoing, Grantor hereby authorizes the filing of financing statements (and amendments of financing statements and continuation statements) that name Grantor as debtor and Secured Party as secured party and that cover "all personal property" or "all assets" of Grantor.

    5.2   <u>Authorizations to Secured Party</u>. Grantor authorizes Secured Party, without notice to or demand on Grantor, and without affecting Grantor's liability hereunder, from time to time to: (a) alter, compromise, renew, extend, accelerate or otherwise change the time for payment or performance of, or otherwise change the terms of, the Obligations or any portion thereof; (b) take and hold security, other than the Collateral and the Collateral Proceeds, for the payment or performance of the Obligations or any portion thereof, and exchange, enforce, waive, subordinate or release the Collateral and the Collateral Proceeds, or any part thereof, or any such other security; (c) after the occurrence of an Event of Default, apply the Collateral and the Collateral Proceeds or such other security and direct the order or manner of sale thereof as Secured Party in its discretion may determine; (d) release or substitute any one or more endorsers or guarantors of the Obligations, or any portion thereof, or any other party thereto; and (e) apply payments received by Secured Party from Borrower to any Obligations of Borrower to Secured Party, in such order as Secured Party shall determine in its sole discretion, whether or not such Obligations are covered by this Agreement, and Grantor hereby waives any provision of law regarding application of payments which specifies otherwise.

    5.3   <u>Power of Attorney</u>. Grantor appoints Secured Party its true attorney-in-fact to perform any or all of the following powers, which are coupled with an interest, are irrevocable until termination of this Agreement and may be exercised from time to time by Secured Party and its officers, employees and agents, or any of them:

        (a)   After the occurrence and during the continuance of an Event of Default, to perform any obligation of Grantor hereunder in the name of Grantor, or otherwise;

        (b)   After the occurrence and during the continuance of an Event of Default, to endorse or sign the name of Grantor on all instruments given in payment or in part payment of any Collateral and all documents of satisfaction, discharge, or receipt required or requested in connection therewith;

25-00240-WLH11   Doc 14   Filed 02/24/25   Entered 02/24/25 18:45:47   Pg 83 of 127   C - 15

(c)     After the occurrence and during the continuance of an Event of Default, to file or take any action or institute any case or proceeding that Secured Party may deem necessary or appropriate to collect or otherwise realize upon any or all of the Collateral, or effect a transfer thereof, or substitute Secured Party or its nominee in place of Grantor as the sole member of Borrower, or that may be necessary or appropriate to protect and preserve the right, title, and interest of Secured Party in and to the Collateral and the security intended to be afforded hereby;

(d)     To ask, demand, collect, receive, receipt for, and sue for any and all sums or properties that may be or become due, payable, or distributable in respect of the Collateral or that constitute a part thereof (including all payments required under Section 4.2 hereof), with full power to settle, adjust, or compromise any claim thereunder or therefor as fully as Grantor could do. Regardless of any provision of this Agreement or the Note to the contrary, Secured Party shall not be considered to have accepted any property other than cash in satisfaction of any obligation of Grantor to Secured Party unless and until Secured Party has given express, written notice of Secured Party's election thereof;

(e)     To prepare, execute, file, record, or deliver financing statements, continuation statements, termination statements, statements of assignment, and applications for registration or like papers to perfect, preserve, or release Secured Party's interest in the Collateral;

(f)     To verify facts concerning the Collateral by inquiry of members, officers, or other representatives of Borrower; and

(g)     Following the occurrence and during the continuance of any Event of Default, to exercise all rights, powers and remedies which Grantor would have, but for this Agreement, under the Collateral;

provided, however, that Secured Party shall be under no obligation whatsoever to take any of the foregoing actions, and Secured Party shall not have any liability or responsibility for any act or omission (other than Secured Party's willful misconduct) taken with respect thereto. Grantor hereby agrees to repay immediately upon demand all reasonable costs and expenses incurred or expended by Secured Party in exercising any right or taking any action under this Agreement, together with interest at the Interest Rate (as defined in the Note) plus five percent (5%) per annum (but in no event more than the maximum rate of interest permitted by applicable law).

5.4     All Collateral Proceeds Must be Paid to Secured Party. Until the Obligations have been paid and performed in full, Grantor shall cause Borrower and every other Person having control over such payment to pay all Collateral Proceeds directly to Secured Party at such account or address as Secured Party may specify in writing. Any Collateral Proceeds which are received by Grantor contrary to the provisions of this Section 5.4 shall be received in trust for the benefit of Secured Party, shall be segregated from other funds of Grantor, and shall be immediately paid over to Secured Party. Amounts so paid to Secured Party shall be applied by Secured Party to the Obligations in accordance with the provisions hereof.

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 84 of 127    C - 16

6. **Further Assurances.** Grantor agrees that at any time, and from time to time, at its own expense Grantor will promptly execute, deliver, and file or record all further financing statements, instruments, and documents, and will take all further actions, including causing the issuers of, or obligors on any of the Collateral to so execute, deliver, file or take other actions, that Secured Party may request in order to perfect and protect any pledge or security interest granted hereby or to enable Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral and to preserve, protect, and maintain the Collateral and the value thereof, including payment of all taxes, assessments, and other charges imposed on or relating to the Collateral. Grantor hereby consents and agrees that the issuers of, or obligors on, the Collateral, or any registrar or transfer agent or trustee for any of the Collateral, shall be entitled to accept the provisions of this Agreement as conclusive evidence of the right of Secured Party to effect any transfer or exercise any right hereunder, notwithstanding any other notice or direction to the contrary given by Grantor or any other Person to such issuers or such obligors or to any such registrar or transfer agent or trustee.

7. **Voting Rights.**

   7.1 **Voting Rights Prior to Event of Default.** So long as no Event of Default has occurred and is continuing, Grantor shall be entitled to exercise any and all voting and other consensual rights pertaining to the portion of the Membership Interest comprising Collateral, or any part thereof, for any purpose not prohibited by the terms of this Agreement or the Note; provided, however, that Grantor shall not exercise, or refrain from exercising, any such right if it would result in an Event of Default.

   7.2 **Voting Rights During Event of Default.** Upon the occurrence and during the continuance of an Event of Default, at the option of Secured Party, all rights of Grantor to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 7.1 above shall cease, and all such rights shall thereupon become vested in Secured Party who shall have the sole right to exercise such voting and other consensual rights.

   7.3 **Irrevocable Proxy.** Grantor hereby revokes all previous proxies with regard to the portion of the Membership Interests comprising Collateral and appoints Secured Party as its proxyholder to attend and vote at any and all meetings of the members of Borrower, and any adjournments thereof, held on or after the date of the giving of this proxy and prior to the termination of this proxy and to execute any and all written consents of members of Borrower executed on or after the date of the giving of this proxy and prior to the termination of this proxy, with the same effect as if Grantor had personally attended the meetings or had personally voted its membership interests, or had personally signed the written consents; provided, however, that the proxyholder shall have rights hereunder only at its option upon the occurrence and during the continuance of an Event of Default. Grantor hereby authorizes Secured Party to substitute another Person as the proxyholder and, upon the occurrence or during the continuance of any Event of Default, hereby authorizes and directs the proxyholder to file this proxy and the substitution instrument with the secretary of the appropriate entity. This proxy is coupled with an interest and is irrevocable until such time as all Obligations have been paid and performed in full.

8. <u>Transfers and Other Liens; Certain Permitted Transfers</u>.  Grantor agrees that it will not (without the prior written consent of the Secured Party) do any of the following:

  (a)  sell, assign, exchange, transfer or otherwise dispose of, or contract to sell, assign, exchange, transfer or otherwise dispose of, or grant any option with respect to, any of the Collateral or any distributions thereunder;

  (b)  create or permit to exist any lien upon or with respect to any of the Collateral; or

  (c)  take any action with respect to the Collateral which is inconsistent with the provisions or purposes of this Agreement, the Governing Documents or the Note.

9. <u>Secured Party May Perform Obligations</u>.  If Grantor fails to perform any Obligation, Secured Party may, but without any obligation to do so and without notice to or demand upon Grantor, perform the same and take such other action as Secured Party may deem necessary or desirable to protect the Collateral or Secured Party's security interest therein, Secured Party being hereby authorized (without limiting the general nature of the authority hereinabove conferred) to pay, purchase, contest and compromise any lien which in the reasonable judgment of Secured Party appears to be prior or superior to Secured Party's security interest, and in exercising any such powers and authority to pay expenses, employ counsel and pay reasonable attorneys' fees.  Grantor hereby agrees to repay immediately upon demand all sums so expended by Secured Party, together with interest from the date of expenditure at the Interest Rate plus 5% per annum (but in no event more than the maximum rate of interest permitted under applicable law).  To the maximum extent permitted by law, Secured Party shall not be under any duty or obligation to (i) preserve, maintain or protect the Collateral or any of Grantor's rights or interests therein, (ii) exercise any voting rights with respect to the Collateral, whether or not an Event of Default has occurred or is continuing, or (iii) make or give any notices of default, presentments, demands for performance, notices of nonperformance or dishonor, protests, notices of protest or notice of any other nature whatsoever in connection with the Collateral on behalf of Grantor or any other Person having any interest therein; and Secured Party does not assume and shall not be obligated to perform the obligations of Grantor with respect to the Collateral.

10. <u>No Assignment of Duties</u>.  This Agreement constitutes an assignment of the Collateral only and not an assignment of any duties or obligations of Grantor with respect thereto, and by its acceptance hereof and whether or not Secured Party shall have exercised any of its rights or remedies hereunder, Secured Party does not undertake to perform or discharge, and shall not be responsible or liable for the performance or discharge of, any such duties or responsibilities.  Grantor agrees that, notwithstanding the exercise by Secured Party of any of its rights hereunder, Grantor shall remain liable for the full and prompt performance of all of Grantor's obligations and liabilities under Governing Documents.  Under no circumstances shall Secured Party be deemed to be a member of Borrower by virtue of the provisions of this Agreement unless expressly agreed to in writing by Secured Party.  Without limiting the generality of the foregoing, Secured Party shall have no fiduciary duty to Grantor or any other members in Borrower, whether by virtue of the security interests and liens hereunder, or any enforcement action concerning such security interests and liens, unless and until Secured Party elects (in its sole discretion) in

25-00240-WLH11   Doc 14   Filed 02/24/25   Entered 02/24/25 18:45:47   Pg 86 of 127   C - 18

writing to be admitted to Borrower as a substituted member (as described in Governing Documents).

11.  <u>Reasonable Care</u>.  Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially similar to that which Secured Party accords its own property, it being understood that Secured Party shall not have any responsibility for (a) ascertaining or taking action with respect to maturities, calls, conversions, exchanges, tenders or other matters relative to any Collateral, whether or not Secured Party has or is deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against any Person with respect to any Collateral.

12.  <u>Events of Default and Remedies</u>.

   12.1  <u>Rights Upon Event of Default</u>.  Upon the occurrence and during the continuance of an Event of Default, Secured Party may pursue any remedy available under this Agreement or at law (including under the provisions of the UCC) or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise, all of which remedies may be pursued by Secured Party separately, successively or simultaneously, with or without notice to Grantor, and at the sole option of and in the sole discretion of Secured Party, including the following specific remedies:

      (a)  to file suit and obtain judgment and, in conjunction with any action, to seek any ancillary remedies provided by law, including levy of attachment and garnishment;

      (b)  to notify Borrower and any and all other obligors on any Collateral; to renew, extend, modify, amend, accelerate, accept partial payments on, make allowances and adjustments and issue credits with respect to, release, settle, compromise, compound, collect, or otherwise liquidate, on terms acceptable to Secured Party, in whole or in part, the Collateral and any amounts owing thereon or any guaranty or security therefor; to enter into any other agreement relating to or affecting the Collateral; to give all consents, waivers and ratifications with respect to the Collateral and exercise all other rights, powers, and remedies and otherwise act with respect to the Collateral as if Secured Party were the owner thereof (Grantor hereby irrevocably constituting and appointing Secured Party the proxy and attorney-in-fact of Grantor, with full power and authority of substitution, to do so);

      (c)  to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral and take or bring, in Secured Party's name(s) or in the name of Grantor, all steps, actions, suits, or proceedings deemed by Secured Party necessary or desirable to effect collection of or to realize upon the Collateral;

      (d)  in accordance with applicable law, to take possession of the Collateral with or without judicial process (Grantor hereby grants to Secured Party the right, for this purpose, to enter into or on any premises where the Collateral may be located);

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 87 of 127    C - 19

(e)    to endorse, in the name of Grantor, all checks, notes, drafts, money orders, instruments, and other evidences of payment relating to the Collateral;

(f)    to transfer any or all of the Collateral into the name of Secured Party or its nominee or nominees;

(g)    in its sole discretion, and in such order and manner as Secured Party may deem appropriate, apply against the Obligations any and all sums deposited with it or held by it;

(h)    in accordance with applicable law, to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process, and to sell, assign or otherwise dispose of the Collateral or any part thereof, either at public or private sale or at any broker's board or securities exchange, in whole or in parts (without omitting the generality of the foregoing, the Membership Interests of Grantor may be sold in its entirety to one buyer or in parts to more than one buyer), for cash, on credit, or on future delivery, or otherwise, with or without representations or warranties, and upon such terms as shall be acceptable to Secured Party; and

(i)    with or without taking possession, to sell or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

12.2    <u>No Waiver</u>.  No delay or omission by Secured Party to exercise any right or remedy accruing upon any Event of Default will:  (a) impair any right or remedy; (b) waive any default or operate as an acquiescence to the Event of Default; or (c) affect any subsequent default of the same or of a different nature.

12.3    <u>Notice of Foreclosure Sale</u>.  Secured Party shall give Grantor such notice of any private or public sale of the Collateral as may be required by the UCC.  Any sale of the Collateral shall be held at such time or times and at such place or places as Secured Party may determine in the exercise of its sole and absolute discretion.  Secured Party may bid (which bid may be, in whole or in part, in the form of cancellation of Obligations) for and purchase for the account of Secured Party, or any nominee of Secured Party, the whole or any part of the Collateral.  Secured Party shall not be obligated to make any sale of the Collateral if it shall determine not to do so regardless of the fact that notice of sale of the Collateral may have been given.

12.4    <u>Private Sales</u>.  Upon the occurrence and during the continuance of an Event of Default, whether or not any of the Collateral has been effectively registered under the Securities Act of 1933, as amended, or other applicable laws, Secured Party may, in its sole and absolute discretion, sell all or any part of the Collateral at private sale in such manner and under such circumstances as Secured Party may deem necessary or advisable in order that the sale may be lawfully conducted.  Without limiting the foregoing, Secured Party may (a) approach and negotiate with a limited number of potential purchasers, and (b) restrict the prospective bidders or purchasers to Persons who will represent and agree that they are purchasing the Collateral for their own account for investment and not with a view to the

25-00240-WLH11   Doc 14   Filed 02/24/25   Entered 02/24/25 18:45:47   Pg 88 of 127   C - 20

distribution or resale thereof. In the event that any of the Collateral is sold at private sale, Grantor agrees that if the Collateral is sold for a price which Secured Party in good faith believes to be reasonable, then (1) the sale shall be deemed to be commercially reasonable in all respects, (2) Grantor shall not be entitled to a credit against the Obligations in an amount in excess of the purchase price, and (3) Secured Party shall not incur any liability or responsibility to Grantor in connection therewith, notwithstanding the possibility that a substantially higher price might have been realized at a public sale. Grantor recognizes that a ready market may not exist for Collateral which is not regularly traded on a recognized securities exchange or in another recognized market, and that a sale by Secured Party of any such Collateral for an amount substantially less than a pro rata share of the fair market value of the issuer's assets minus liabilities may be commercially reasonable in view of the difficulties that may be encountered in attempting to sell Collateral that is privately traded.

12.5    Warranties.  Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties of title or the like.  This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

12.6    Title of Purchasers.  Upon consummation of any sale of Collateral pursuant to this Section 12, Secured Party shall have the right to assign, transfer, and deliver to the purchaser or purchasers thereof the Collateral so sold. Each such purchaser at any such sale shall hold the Collateral sold absolutely free from any claim or right on the part of Grantor, and Grantor hereby waives (to the extent permitted by applicable law) all rights of redemption, stay and appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.  To the extent permitted by law, if the sale of all or any part of the Collateral is made on credit or for future delivery, Secured Party shall not be required to apply any portion of the sale price to the Obligations until such amount actually is received by Secured Party, and any Collateral so sold may be retained by Secured Party until the sale price is paid in full by the purchaser or purchasers thereof.  Secured Party shall not incur any liability in case any such purchaser or purchasers shall fail to pay for the Collateral so sold, and, in case of any such failure, the Collateral may be sold again upon like notice.

12.7    Disposition of Proceeds of Sale.  Subject to any contrary provisions of the UCC, the cash proceeds resulting from the collection, liquidation, sale or other disposition of the Collateral shall be applied, first, to the reasonable costs and expenses (including reasonable attorneys' fees) of retaking, holding, storing, processing and preparing for sale, selling, collecting and liquidating the Collateral, and the like, and second, to the satisfaction of the Obligations in such order and manner as Secured Party in its sole and absolute discretion may determine.

12.8    No Limitations on Parties to Whom Collateral May be Sold.  Grantor hereby acknowledges and agrees that Secured Party shall not be limited in any way with respect to the parties to which the Collateral may be sold, whether at a public or private sale or at any broker's board or securities exchange, or otherwise. Grantor specifically acknowledges and agrees that Secured Party may, without any liability whatsoever to Grantor or the issuer of the Collateral, contact one or more competitors of Grantor or the issuer of the Collateral or any other party or parties

which may desire to obtain a controlling interest in the issuer, regarding a sale of the Collateral, and Secured Party may sell all or any portion of the Collateral to any one or more of such competitors or other parties, as Secured Party deems appropriate in its capacity as a secured party and without regard to the impact such a sale may have on Grantor, the issuer or the management or operations of either.

13. <u>Grantor's Waivers</u>. Grantor waives any right to require Secured Party to: (i) proceed against Borrower or any other Person; (ii) marshal assets or proceed against or exhaust any security held from Borrower or any other Person; (iii) give notice of the terms, time and place of any public or private sale of security held from Borrower or any other Person, or otherwise comply with the provisions of Section 9-611 of the UCC or any successor provision; (iv) take any action or pursue any other remedy in Secured Party's power; and/or (v) make any presentment or demand for performance, or give any notice of nonperformance, protest, notice of protest or notice of dishonor hereunder or in connection with any obligations held by Secured Party as security for or which constitute in whole or in part the Obligations secured hereunder. In addition, Grantor waives any defense to its obligations hereunder based upon or arising by reason of: (i) any disability or other defense of Borrower or any other Person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Obligations of Borrower or any other Person; (iii) any lack of authority of any officer, director, partner, agent or any other Person acting or purporting to act on behalf of Borrower, or any defect in the formation of Borrower; (iv) any act or omission by Secured Party which directly or indirectly results in or aids the discharge of Borrower or any portion of the Obligations by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of Secured Party against Borrower; (v) any impairment of the value of any interest in the Collateral or the Collateral Proceeds, or any other security for the Obligations or any portion thereof, including the failure to obtain or maintain perfection or recordation of any interest in any such security, the release of any such security without substitution, and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any such security; and/or (vi) any modification of the Obligations, in any form whatsoever, including any renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Obligations or any portion thereof. Until all of the Obligations shall have been satisfied in full, Grantor shall have no right of subrogation, and waives any right to enforce any remedy which Secured Party now has or may hereafter have against Borrower or any other Person, and waives any benefit of, or any right to participate in, any security now or hereafter held by Secured Party. Grantor further waives all rights and defenses Grantor may have arising out of any election of remedies by Secured Party.

14. <u>Registration and Filing</u>. A copy of this Agreement will be included in the books and records of Borrower so long as the Membership Interests remains pledged to Secured Party.

15. <u>Continuing Effect</u>. Subject to applicable laws, this Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Grantor for liquidation or reorganization, should Grantor become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of Grantor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Obligations, or any part thereof, is, pursuant to applicable Law, rescinded or reduced in amount, or must otherwise be restored or returned by Secured Party, whether as a "voidable preference," "fraudulent transfer," or otherwise, all as though such payment or performance had not been made. In the event that any payment or any part thereof is rescinded, reduced, restored, or

returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored, or returned.

16. <u>Covenant Not to Dilute Membership Interest</u>. Grantor represents, warrants and covenants to Secured Party that it will not at any time cause or permit Borrower to issue any additional equity interests, or any options or other rights to acquire any additional equity interests, if the effect thereof would be to dilute in any way the interest of Secured Party in the Membership Interests.

17. <u>Indemnity</u>. Grantor agrees to indemnify and hold harmless Secured Party from and against any and all claims, demands, losses, judgments and liabilities (including liabilities for penalties) of whatsoever kind or nature, and to reimburse Secured Party for all costs and expenses, including reasonable attorneys' fees and expenses and costs and expenses associated with, arising out of or in connection with this Agreement or the exercise by Secured Party of any right or remedy granted to it hereunder, other than arising from the gross negligence or willful misconduct of Secured Party. To the maximum extent permitted by law, in no event shall Secured Party be liable for any matter or thing in connection with this Agreement other than to account for monies actually received by it in accordance with the terms hereof.

18. <u>Washington Jurisdiction and Choice of Law</u>. The validity, construction, enforcement and interpretation of this Agreement and any claim, controversy or dispute arising under or in any way related to this Agreement or the transactions contemplated thereby, whether arising in contract, in tort, by statute or otherwise, shall be governed by, the laws of the State of Washington, without regard to the principles thereof regarding conflicts of laws. All cases related to or arising out of this Agreement may be brought in any United States federal court or state court sitting in King County, Washington. Nothing in this Section shall preclude any party from enforcing a judgment, or filing a foreclosure action or an action seeking to attach property, in the state in which the subject collateral or property is located.

19. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of Secured Party and Grantor.

20. <u>Waiver of Right to Trial by Jury</u>. EACH PARTY TO THIS AGREEMENT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

21. <u>Rules of Construction</u>. Words used in this Agreement in the singular, where the context so permits, shall be deemed to include the plural and vice versa. The definitions of words in the singular in this Agreement shall apply to such words when used in the plural where the context so permits and vice versa. In this Agreement, "include" means "include but are not limited to", "includes" means "includes but is not limited to" and "including" means "including, but not limited to." In this Agreement, unless otherwise expressly indicated, the use "or" is not exclusive and has the inclusive meaning given to "and/or". All titles or headings to articles, sections, subsections or other divisions of this Agreement or the exhibits hereto are for convenience only, and shall not be construed to have any effect or meaning with respect to the other content of such articles, sections, subsections or other divisions.

22. <u>Conflicting Provisions</u>. In the event of any conflict between this Agreement and the terms of the Note, the terms of the Note shall govern and control.

23. <u>Exhibits</u>. All exhibits referred to in this Agreement and attached hereto are incorporated herein.

24. <u>Counterparts</u>. This Agreement may be executed in counterparts, which together shall constitute one agreement. Further, original counterpart signature pages may be compiled together in one or more original documents.

**Statutory Notice. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

[*Signatures on next page*]

IN WITNESS WHEREOF, Grantor and Secured Party have caused this Pledge and Security Agreement to be duly executed as of the date first above written.

**GRANTOR**

X & C Holdings LLC, a Delaware limited liability company

By: _____

Nanling Chen, Managing Member and Manager for X & C Holdings LLC

By: _____

Stanley Xu, Managing Member and Manager for X & C Holdings LLC

ACCEPTED AND AGREED:

**SECURED PARTY**

AXOS BANK,
a federally chartered savings association

By: _____

Name: Amanda Baez

Title: VP, CL Transaction Manager

Pledge Agreement
310705650.3

**EXHIBIT A**

ACKNOWLEDGMENT AND CONSENT

OF BORROWER AND THE MANAGER

This Acknowledgment and Consent (this "Acknowledgment") is made as of September 22, 2021, by and among Amity Court LLC, a Washington limited liability company ("Borrower"), and X & C Holdings LLC, a Delaware limited liability company (in its capacity as manager, the "Manager"), in favor of AXOS BANK™, a federally chartered savings association ("Secured Party"). This Acknowledgment is being executed pursuant to that certain Pledge and Security Agreement of even date herewith between Manager (in its capacity as manager, "Grantor") and Secured Party to which this Acknowledgment is attached (as the same may be modified or amended from time to time, the "Agreement"). Borrower and the Manager acknowledges receipt of a copy of the Agreement. Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Agreement.

This Acknowledgment is made with respect to the following recitals:

A.     Manager is the sole manager of Borrower.

B.     True and correct copies of Governing Documents are attached as Exhibit B to the Agreement. Governing Documents contain various restrictions on the ability of Member to transfer, convey, pledge, and encumber its Membership Interests in Borrower.

C.     Grantor desires to be authorized to transfer, convey, pledge, and encumber its Membership Interests and other rights with respect to Borrower to and in favor of the Secured Party as security for a loan made to Borrower, pursuant to that certain Note dated of even date herewith.

D.     Borrower and the Manager desire to authorize Grantor to transfer, convey, pledge, and encumber in favor of the Secured Party all of the Collateral described in the Agreement, including Grantor's Membership Interests and rights under Governing Documents.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises and agreements contained herein, and in order to induce the Secured Party to make the accept the assignment from Grantor:

1.     Borrower and the Manager hereby represents and warrants to the Secured Party that Governing Documents in the forms attached as Exhibit B to the Agreement are in full force and effect and, except for any amendments attached hereto, have not been amended, modified or rescinded.

EXHIBIT A

- 1 -

2. Borrower and the Manager hereby consents to Grantor's grant of a security interest in, and pledge and assignment of, Grantor's interest in the Collateral in favor of the Secured Party. All rights specified herein in favor of the Secured Party shall also inure to the benefit of the Secured Party's successors and assigns, and any references herein to "Secured Party" shall be read as including "Secured Party, its successors, and its assigns".

3. Borrower and the Manager agrees that: (a) prior to becoming a substituted member of Borrower, the Secured Party has not undertaken any, and shall have no, duties, obligations, or liabilities of any nature whatsoever arising from Governing Documents or pertaining to the organization, formation, creation, operation, or conduct of Borrower or of any of its members; (b) following the occurrence of an Event of Default under the Agreement, the Secured Party may upon written notice to Manager enforce all rights and remedies with respect to the Collateral to which Secured Party is entitled under the Agreement without becoming a substituted member under Governing Documents; and (c) under no circumstances shall Secured Party become a substituted member under the Governing Documents until and unless the Secured Party expressly so agrees in writing.

4. Borrower and the Manager hereby waives and modifies any provisions of Governing Documents that (a) prohibit, restrict, condition, or otherwise affect the grant under the Agreement of any lien, security interest or encumbrance on any of the Collateral or any enforcement action which may be taken with respect to any such lien, security interest, or encumbrance, (b) are inconsistent with the provisions of the Agreement or this Acknowledgment, or (c) might cause the Secured Party to become obligated to, any Person in any manner as a result of the grant of a security interest in the Collateral in favor of the Secured Party.

5. Borrower and the Manager agrees that Secured Party shall have no obligation to make any additional contribution, capital calls, or other payments to Borrower with respect to any Membership Interest that is acquired by Secured Party pursuant to the Agreement.

6. Borrower and the Manager agrees that Borrower and the Manager shall (a) make directly to the Secured Party at such account or address as the Secured Party may specify in writing all distributions of property or proceeds to which Grantor would otherwise be entitled on account of the Collateral (whether by way of distribution, dividend, principal, interest, fee, commission, reimbursement, or otherwise), and (b) make directly to the Secured Party at such account or address as the Secured Party may specify in writing all payments of money or other property to which Grantor would otherwise be entitled from Borrower on account of the Collateral.

7. Notwithstanding anything in Governing Documents to the contrary, Borrower and the Manager agrees that, at any time after the occurrence and during the continuance of an Event of Default under the Agreement, (a) Secured Party may upon written request exercise any management or voting rights of Grantor relating to the Collateral, and give any and all consents, waivers, approvals, and ratifications which would otherwise be given by Grantor with respect to the Collateral, (b) Secured Party (or any successor or assignee of Secured Party) may dispose of the Collateral (including the Membership Interest) by assigning or otherwise transferring the Collateral in whole or in part, whether by foreclosure sale, deed in lieu of foreclosure, retention, or otherwise, and (c) Secured Party (or any successor or assignee of Secured Party) may in its sole discretion elect to become

a substituted member in Borrower with respect to the Collateral by written notice to the Manager (following which Secured Party or its successor or assignee will become a member of Borrower with full power to vote and otherwise exercise any rights of a member). Neither any disposition of the Collateral as described in clause (b) above, nor any election as described in clause (c) above, shall require the approval of the Manager. Borrower and the Manager hereby agrees that the Governing Documents is hereby amended to include the provisions of this Section 7.

8.  Borrower and the Manager agrees that, in the event of an exercise of the pledge and security interest in the Collateral granted pursuant to the Agreement, at the option of Secured Party, the Collateral may be sold together to one buyer, or may be sold separately to different buyers.

9.  The Manager represents and warrants to Secured Party that it has no contract of employment or other agreements with respect to its position as manager of Borrower other than as set forth in the Governing Documents. The Manager hereby subordinates any and all rights or claims of any type or nature that it may now or hereafter have against Borrower or the Collateral arising under the Governing Documents, any employment contract or any other contract or in law or equity, including any rights or claims arising from its removal as manager of Borrower (whether such removal is undertaken by any member, Secured Party or any successor or assign of Secured Party, or otherwise), to the pledge and security interest granted to Secured Party under the Agreement. If Secured Party (or any successor or assignee of Secured Party) succeeds to ownership of the Collateral pursuant to such pledge or security interest (whether by foreclosure, transfer in lieu of foreclosure, or otherwise), it shall take title to the Collateral free and clear of any right or claims of the Manager as described above.

10. Borrower and the Manager agrees, notwithstanding any provision of Governing Documents to the contrary, that they shall not take any action to terminate, dilute, impair, modify, or limit the Secured Party's rights or interests hereunder or under the Agreement.

11. Borrower and the Manager agrees not to terminate, amend, modify, or alter in any way Governing Documents without the prior written consent of the Secured Party.

12. Borrower and the Manager agrees to promptly notify the Secured Party in writing of any default by Grantor of any of his obligations under Governing Documents of which it receives notice or otherwise becomes aware.

13. A copy of the Agreement (including this Acknowledgment) will be included in the books and records of Borrower so long as any Membership Interests remain pledged to the Secured Party.

*[Signatures on following pages]*

EXHIBIT A

- 3 -

This Acknowledgment is entered into as of the date first above written.

**BORROWER**

Amity Court LLC, a Washington limited liability company

By: X & C Holdings LLC, a Delaware limited liability company
Its Managing Member, Manager, and Governor

By: _____
Nanling Chen, Managing Member and Manager for X & C Holdings LLC

By: _____
Stanley Xu, Managing Member and Manager for X & C Holdings LLC

Address for Notice:
Amity Court LLC
1215 120th Ave NE, Suite 204
Bellevue, WA 98005
Attn: Stanley Xu and Nanling Chen

**MANAGER**

X & C Holdings LLC, a Delaware limited liability company

By: _____
Nanling Chen, Managing Member and Manager for X & C Holdings LLC

By: _____
Stanley Xu, Managing Member and Manager for X & C Holdings LLC

Address for Notice:
1215 120th Ave NE, Suite 204
Bellevue, WA 98005
Attn: Stanley Xu and Nanling Chen

S-1

Pledge Agreement
310705650.3

# EXHIBIT D

November 4, 2024

Brian T. Peterson
brian.peterson@klgates.com

T 206 370 7948

**VIA CERTIFIED FIRST-CLASS MAIL
AND OVERNIGHT DELIVERY SERVICE**

Amity Court, LLC
14400 NE Bel Red Rd, Suite 204
Bellevue, WA 98007
Attn: Stanley Xu and Nanling Chen

Amity Court, LLC
c/o Incorp Services, Inc., Registered Agent
4505 Pacific Hwy E, Suite C-2
Fife, WA 98424

**AND VIA EMAIL TO**

Ragan Powers, Esq.
David Wright Tremaine
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
raganpowers@dwt.com

   Re: 90099031245 (the "Loan")
     14400 NE Bellevue-Redmond Road,
     Bellevue, WA 98007 (the "Property")

<u>**NOTICE OF DEFAULT, APPLICATION OF PLEDGE, AND RESERVATION OF
RIGHTS**</u>

Dear Stanley Xu and Nanling Chen,

We represent Axos Bank. Axos Bank ("**Noteholder**" or "**Lender**") is the current holder of that
certain Secured Promissory Note dated September 22, 2021 (the "**Note**"), evidencing a loan in the
principal amount of $5,000,000.00 made by Axos Bank to Amity Court LLC, a Washington
limited liability company ("**Borrower**"). According to the terms of the Note and Article 7 of the

Security Instrument,[1] the Loan has been in default on account of your failure to make the payment due on April 1, 2024, and all subsequent payments (the "**Payment Defaults**"). In addition, the Maturity Date of the Note was October 1, 2024, meaning that all amounts under the Note are due and owing in full. The Loan is in default based on your failure to pay the Note in full upon maturity (the "**Maturity Default**"). Lender also hereby provides notice that the under the terms of the Guaranty dated as of September 22, 2021, Guarantor is in default of its obligation to provide Lender with 2023 tax returns for guarantors Stanley Xu and Nanling Chen.

Pursuant to the terms of the Note, interest accrued on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "**Default Rate**"). As the Payment Defaults commenced on April 1, 2024, interest accrues at the Default Rate from and after that date.

Separately, Noteholder hereby notifies Borrower that it has elected to exercise its right under Section 6 of that certain Reserve Pledge and Security Agreement dated September 22, 2021, between Amity Court LLC and Axos Bank ("**Pledge Agreement**"), to apply all amounts in the reserve account described in the Pledge Agreement against the outstanding indebtedness owed to Noteholder.

Demand is hereby made that Borrower make payment of the entire indebtedness in immediately available funds. As of October 28, 2024, and ***before*** application of the amounts in the reserve account, total amount of indebtedness, including interest, escrow advances and late fees was **$5,641,255.77**. This does not include legal fees, nor does it include interest, escrow advances, late charges, and other fees that accrued under the Loan after October 28, 2024 (the total amount owing being the "**Payoff Amount**"). Default interest accrues on the principal balance of the Loan at the rate of $2,500 per day. Please take notice that interest at the Default Rate is accruing, and will continue to accrue, until such time that the indebtedness is paid in full. If you have any questions regarding the Payoff Amount, please contact the Noteholder's representative at 877-351-2265 Ext. 1512 to obtain the exact amount. The Payoff Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Neither this notice nor any statement by or on behalf of Noteholder as to the amount due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Noteholder to collect any additional amounts to which Noteholder may be lawfully entitled pursuant to the terms of the Loan Documents or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Noteholder under any of the Loan Documents.

Other defaults and/or Events of Default may exist. Nothing contained herein, including, but not limited to: (i) this notice; (ii) any delay or failure by Noteholder to exercise any of its rights and remedies under the Loan Documents or applicable law with respect to any default or Event of Default that may have occurred or may occur under the Loan Documents; or (iii) any discussions, actions, negotiations, correspondence or documentation which has been or may be drafted or

---

[1] All capitalized terms set forth herein shall have the definitions given to them in the Note.

entered into by Noteholder or its agents, including, but not limited to acceptance of any partial payment, shall (a) constitute a waiver of, or acquiescence in, any default or Event of Default, now or hereafter existing under the Loan Documents or any related document, (b) constitute a modification or amendment of any of the terms of any of the Loan Documents, (c) constitute an election of remedies regarding any Event of Default, (d) constitute a waiver of or an agreement to forbear from exercising, any rights and remedies Noteholder may have under the Loan Documents, at law, or in equity, or (e) impair any power, right or privilege granted to Noteholder under the Loan Documents or under applicable law, in equity or otherwise.

Noteholder hereby expressly reserves each and every right and remedy to which it is entitled. You are hereby notified that Noteholder shall strictly enforce the Loan Documents in accordance with their respective terms. This default notice does not meet the statutory requirements for starting a nonjudicial foreclosure pursuant to Ch. 61.24 RCW. Noteholder reserves the right to issue a separate statutory notice that meets those requirements.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your Property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the Loan documents, including the Note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED OR**

**ARE SUBJECT TO AN AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION. IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

**NOTICE IS HEREBY GIVEN THAT ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, MODIFY LOAN TERMS, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

If you have questions or would like to discuss these issues, please contact me.

Sincerely,

Brian T. Peterson

cc:     Client

# EXHIBIT E

ØŠÒÖ
ŒŒÍ ÁæÒÖÓÁÆÍ ÆJH€€ÁŒÆT
SŒ Õ ÁŐUW‹VÝ
ÙMÚÒÜ ŒJÜ ÁŐUWÜVÁŎŠÒÜS
ÒŽŒSÒÖ
ÔŒÜ ÒÂ ÅÆÍ ÍŒ ŒŒH Í Í ÆÁÜŒŒ

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

AXOS BANK,

                Plaintiff,

     v.

AMITY COURT LLC,

                Defendant.

No. 25-2-02385-1 SEA

DECLARATION OF
STANLEY XU IN OPPOSITION
TO MOTION TO APPOINT
RECEIVER

I, Stanley Xu, declare as follows:

1.       I am over 18 years old and competent to testify to the matters set forth in this declaration.

2.       Amity Court is a limited liability company that owns a multi-tenant low rise office building in Bellevue Washington. My wife Nanling Chen and I indirectly own Amity Court LLC

3.       *Amity Court.* Amity Court purchased the property located at 14400 NE Bel Red Road in Bellevue, Washington in September 2021 for $9.5 million. The purchase price was financed in part with a $5 million loan from Axos Bank.

4.       At the time Amity Court bought the property, rental income from tenants covered operating expenses and interest on the Axos Bank loan. The financial performance of the property deteriorated as businesses and employees continued to work remotely after Covid. In

DECLARATION OF STANLEY XU - 1
(Case No. 25-2-02385-1)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

general, the market for office space deteriorated as a result of the remote work environment, resulting in higher vacancy rates and lower rents. By 2023, a number of good tenants either left when their leases expired (so they could continue work remotely) or they negotiated lower rent based on market conditions. Amity Court managed to keep its building occupancy above market levels, but at much lower rents than when the building was purchased. Starting in January 2023, rental income did not cover operating costs and interest payments on the Axos loan. Amity Court obtained funding from my other real estate companies to make up the difference and keep the Axos Bank loan current.

5.      Recognizing that a low-rise office building is not the highest and best use for its property, Amity Court applied for a permit from the City of Bellevue to redevelop the property. It submitted an application on July 5, 2022, which will allow the current building to be demolished and replaced with 215 multifamily units. Changing the use of the property will increase the value of Amity Court's property.

6.      Based on anticipated receipt of the permit, Amity Court began marketing the property in April 2024. I negotiated with several potential buyers for several months and executed a confidential letter of intent to sell the property this week with a reputable multifamily development company, who has a long list of successful multifamily construction projects in the Puget Sound area. The purchase price will permit Amity Court to pay Axos Bank in full. I expect the transaction to close by May 31, 2025. Appointment of a receiver could disrupt the sale, causing substantial damage to Amity Court.

7.      *Interest rate.* Under the original loan documents with Axos Bank, the interest rate was tied to an "Index." At the time the loan was made, the "Index" was the "one month U.S. Dollar denominated London Inter-Bank Offered Rate ("LIBOR USD"). The "Margin" was 4.75%, which means that the interest rate on the loan was the LIBOR USD plus 4.75%. Because LIBOR USD changed every month, the total interest due on the loan changed every month. At some point, LIBOR USD was not longer used and Axos Bank changed the index that it used to a different index which also changes frequently.

DECLARATION OF STANLEY XU - 2
(Case No. 25-2-02385-1)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

8.      I have asked Axos Bank several times for a detailed accounting of the payments made by Amity Court including the applicable interest rates and application of payments made by Amity Court. Axos ignored my requests and as it has in the Motion, only given top level numbers without any backup or detail.

9.      *Escrow Account.* The loan documents also provide for an escrow account for property taxes. In other words, Amity Court paid money each month into an escrow account out of which Axos Bank pays real estate taxes. Axos Bank was responsible for payment of property taxes out of the escrow account. Simply put, Axos Bank's allegation that it had to pay taxes for Amity Court misstates the loan documents. Axos Bank was obligated to pay the real estate taxes from the real estate tax escrow account for Amity Court.

10.     In October 2024, I wrote to Axos Bank to confirm that it would be making the payment for real estate taxes as it had done previously. Axos Bank confirmed that it made the payment. Axos Bank did not inform Amity Court that there was a shortfall in the escrow account or that Amity Court needed to make the payment (or make up any shortfall).

11.     *Failure to Provide Monthly Statements.* Beginning in the spring of 2022, Axos Bank stopped sending monthly mortgage statements to Amity Court showing how much interest was due. I wrote to Axos Bank representatives on several occasions, requesting the mortgage statements so Amity Court could make the appropriate payments. By way of example, I wrote to the following employees of Axos Bank: Gary Wong on May 17, 2024; Samuel Gendershot on July 3, 2024; and Cassidy Rogerson on July 10, 2024. Copies of my emails to them are attached as Exhibits 1, 2, and 3. Amity Court never received the requested statements detailing the interest due on the loan.

12.     *Extension of Loan.* Under Section 4.5 of the Promissory Note, Amity Court was entitled to extend the maturity date of the loan for one year, from October 1, 2024, through October 1, 2025. Amity Court made the required request for an extension by a letter dated July 15, 2024. A copy of the letter is attached as Exhibit 4. Axos Bank never responded to the letter and never advised Amity Court what, if anything, it needed to do to consummate the extension.

DECLARATION OF STANLEY XU - 3
(Case No. 25-2-02385-1)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1        13.      I talked with an Axos Bank representative by phone on October 18, 2024. The

2 representative told me that Axos Bank was not interested in having its loan with Amity Court

3 and demanded that I pay it off.

4        14.      Axos Bank is not at risk of suffering a loss on this property. On September 30,

5 2024, Axos Bank obtained an appraisal of the property from Colliers. Colliers valued the

6 property at $7,780,000, which provides a nearly $2.8 million cushion for the bank. A copy of the

7 transmittal letter is attached as Exhibit 5.

8

9 [rest of page intentionally blank]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF STANLEY XU - 4
(Case No. 25-2-02385-1)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    I declare under penalty of perjury under the laws of the State of Washington that the

2    foregoing is true and correct.

3        DATED this 5th day of February 2025.

4

5

6                                        Stanley Xu

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF STANLEY XU - 5
(Case No. 25-2-02385-1)
4918-5071-0551v.1 0050033-000455

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 108 of 127    E - 5

# CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that on the date of this certificate, I caused the document to which this certificate is attached to be delivered to the following as indicated:

Brian T. Peterson
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
brian.peterson@klgates.com

*Attorneys for Plaintiff Axos Bank*

☐ Messenger
☐ U.S. Mail, postage prepaid
☐ Federal Express
☐ Fax
☒ E-Mail
☒ ECF (KCSC E-Service)

Executed in Seattle, Washington this 5th day of February, 2025.

/s/ *Sherri Parsons*
Sherri Parsons, Legal Assistant

DECLARATION OF STANLEY XU - 6
(Case No. 25-2-02385-1)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 109 of 127    E - 6

# EXHIBIT 1

**Stanley Xu**

| | |
|---|---|
| **From:** | Stanley Xu |
| **Sent:** | Friday, May 17, 2024 12:21 PM |
| **To:** | Gary Wong |
| **Cc:** | Jing You |
| **Subject:** | RE: AMITY COURT LLC, A WASHINGTON LIMITED LLC - 90099031245 |

Hi Gary,

We never received the mortgage statement even though the mailing address is correct. Please make sure they mail it out or send it in electronic format.

Thank you for your help!

Stanley Xu
President
Longwell Company
14400 NE Bel-Red Road, Suite #204
Bellevue, WA 98007
Tel: 425-455-6660 X 101
    425-336-1124(direct)
Fax:425-455-6662
e-mail: Stanley.Xu@LongwellCompany.com
Web Site: www.longwellcompany.com

---

**From:** Gary Wong <GWong@axosbank.com>
**Sent:** Friday, May 17, 2024 9:10 AM
**To:** Stanley Xu <stanley.xu@longwellcompany.com>
**Cc:** Jing You <jing.you@longwellcompany.com>
**Subject:** FW: AMITY COURT LLC, A WASHINGTON LIMITED LLC - 90099031245

Stanley,

As indicated below, the statements have been going to the correct address. The statement for this month should have been mailed yesterday, but Johana has attached the document for your review. Thanks

Gary

Gary Wong
IPL – Business Development Manager
Direct: 415-816-4858
gwong@axosbank.com
www.axosbank.com



---

**From:** Johana Jimenez <JJimenez@axosbank.com>
**Sent:** Friday, May 17, 2024 9:05 AM

1

**To:** Gary Wong <GWong@axosbank.com>
**Subject:** RE: AMITY COURT LLC, A WASHINGTON LIMITED LLC - 90099031245

Good morning Gary,

We have the mailing address as:
AMITY COURT LLC, A WASHINGTON LIMITED LI
14400 NE BEL-RED ROAD, SUITE # 204
BELLEVUE WA 98007

Statements for June should have gone out yesterday but I attached a copy on here.

**Johana Jimenez**
Commercial Client Operations Supervisor
Direct: 877-351-2265 x1356
JJimenez@axosbank.com



---

**From:** Gary Wong <GWong@axosbank.com>
**Sent:** Friday, May 17, 2024 8:44 AM
**To:** Johana Jimenez <JJimenez@axosbank.com>
**Subject:** AMITY COURT LLC, A WASHINGTON LIMITED LLC - 90099031245
**Importance:** High

Johana,

This borrower is inquiring about his mortgage statement, as he has not been receiving the document. Can you please tell me the address that the document is currently being sent to? Thanks

Gary


Gary Wong
 IPL – Business Development Manager
 Direct: 415-816-4858
 gwong@axosbank.com
 www.axosbank.com

---

**From:** Stanley Xu <stanley.xu@longwellcompany.com>
**Sent:** Thursday, May 16, 2024 10:28 AM
**To:** Gary Wong <GWong@axosbank.com>
**Cc:** Jing You <jing.you@longwellcompany.com>
**Subject:** Amity Court
**Importance:** High


Good morning, Gary,

I hope this email finds you well.

2

We still have not received the mortgage payment statement from AXOS Bank. We made a mortgage payment 5/7/2024 as shown in attached document, which I downloaded from AXOS online platform. Would you please contact the asset management department of AXOS to find out where they have sent the mortgage statement.

Thanks,

Stanley Xu
President
Longwell Company
14400 NE Bel-Red Road, Suite #204
Bellevue, WA 98007
Tel: 425-455-6660 X 101
     425-336-1124(direct)
Fax:425-455-6662
e-mail: Stanley.Xu@LongwellCompany.com
Web Site: www.longwellcompany.com

CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

# EXHIBIT 2

**Stanley Xu**

Hi Samuel,

Would you please send me the mortgage payment statement to us so we can make a payment? We have never received ANY mortgage payment statements for Amity Court.

Thanks,

Stanley Xu
Managing Member
Amity Court LLC
14400 NE Bel-Red Road, Suite #204
Bellevue, WA 98007
Tel: 425-455-6660 X 101
    425-336-1124(direct)
Fax:425-455-6662
e-mail: Stanley.Xu@LongwellCompany.com
Web Site: www.longwellcompany.com

---

**From:** Samuel Hendershot <SHendershot@axosbank.com>
**Sent:** Monday, June 10, 2024 12:05 PM
**To:** Stanley Xu <stanley.xu@longwellcompany.com>
**Cc:** Rachel Renteria <RRenteria@axosbank.com>; Gary Wong <GWong@axosbank.com>
**Subject:** RE: Amity Court

Hi Stanley – Following up on the initial request for an update on payment as well as updated financials.

Best,

**Samuel Hendershot**
CRE Portfolio Analyst
Direct: 877-351-2265 ext. 1690
SHendershot@axosbank.com
www.axosbank.com



---

**From:** Samuel Hendershot
**Sent:** Friday, May 31, 2024 10:50 AM
**To:** stanley.xu@longwellcompany.com
**Cc:** Rachel Renteria <RRenteria@axosbank.com>; Gary Wong <GWong@axosbank.com>
**Subject:** RE: Amity Court

1

Hi Stanley,

Following up on the below email.

Best,

**Samuel Hendershot**
CRE Portfolio Analyst
Direct: 877-351-2265 ext. 1690
SHendershot@axosbank.com
www.axosbank.com



---

**From:** Samuel Hendershot
**Sent:** Friday, May 24, 2024 12:03 PM
**To:** stanley.xu@longwellcompany.com
**Cc:** Rachel Renteria <RRenteria@axosbank.com>; Gary Wong <GWong@axosbank.com>
**Subject:** Amity Court

Hi Stanley,

Reaching out on behalf of Axos for a timeline as to when we can expect the next interest payment. In addition, please provide copies of the most recent financial statements for the guarantors and property.

We appreciate your attention to this matter.

Thank you,

**Samuel Hendershot**
CRE Portfolio Analyst
Direct: 877-351-2265 ext. 1690
SHendershot@axosbank.com
www.axosbank.com



CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

# EXHIBIT 3

**Stanley Xu**

| | |
|---|---|
| **From:** | Stanley Xu |
| **Sent:** | Wednesday, July 10, 2024 1:31 PM |
| **To:** | Cassidy Rodgerson |
| **Cc:** | Jing You; Gary F. Wong |
| **Subject:** | RE: Rent Roll Request   [ ref:!00Di00KtrF.!5003o01j3qWo:ref ] |
| | |
| **Importance:** | High |

Hi Cassidy,

Would you please send us the mortgage payment coupon for Amity Cout LLC? We have not received any mortgage coupon/statement since March of this year. We have asked for the coupon/statement several times before but never received any. Please let me know if you can help.

Thanks,

Stanley Xu
Managing Member
Amity Court LLC
14400 NE Bel-Red Road, Suite #204
Bellevue, WA 98007
Tel: 425-455-6660 X 101
     425-336-1124(direct)
Fax:425-455-6662
e-mail: Stanley.Xu@LongwellCompany.com
Web Site: www.longwellcompany.com

**From:** Cassidy Rodgerson <Cassidy.Rodgerson@axosbank.com>
**Sent:** Wednesday, July 10, 2024 8:53 AM
**To:** Stanley Xu <stanley.xu@longwellcompany.com>
**Subject:** Re: Rent Roll Request [ ref:!00Di00KtrF.!5003o01j3qWo:ref ]

Good morning Stanley,

Confirming receipt of the rent roll. Thank you!

Best,

**Cassidy Rodgerson**

Special Assets Analyst

Office: 877-351-2265, ext. 1284

www.axosbank.com

**From:** Stanley Xu <stanley.xu@longwellcompany.com>
**Sent:** Tuesday, July 9, 2024 10:36 PM
**To:** Cassidy Rodgerson <cassidy.rodgerson@axosbank.com>
**Cc:** Portfolio Management <portfoliomanagement@axosbank.com>
**Subject:** RE: Rent Roll Request [ ref:!00Di00KtrF.!5003o01j3qWo:ref ]

Hi Cassidy,

Attached please find the rent roll of Amity Court you requested for AXOS loan #90099031245 at 14400 NE Bellevue-Redmond Rd, Bellevue, WA 98007. We do not have access of AXOS portal https://portals.axosbank.com/. So we can only send the rent roll thru email.

Please confirm that you received this email with rent roll.

Thanks,

Stanley Xu
President
Longwell Company
14400 NE Bel-Red Road, Suite #204
Bellevue, WA 98007
Tel: 425-455-6660 X 101
     425-336-1124(direct)
Fax:425-455-6662
e-mail: Stanley.Xu@LongwellCompany.com
Web Site: www.longwellcompany.com

**From:** Portfolio Management <portfoliomanagement@axosbank.com>
**Sent:** Monday, July 8, 2024 12:43 PM
**To:** Stanley Xu <stanley.xu@longwellcompany.com>
**Subject:** Rent Roll Request [ ref:!00Di00KtrF.!5003o01j3qWo:ref ]

Hello,

My name is Cassidy from Axos Bank, and I am reaching out regarding your loan #90099031245 at 14400 NE Bellevue-Redmond Rd, Bellevue, WA 98007.
The Bank is requesting an updated Rent Roll for Full Year 2023. Pursuant to your loan documents, please provide the most current Rent Roll as soon as possible.

See attached templates for your convenience. Should you have an existing form, please feel free to use your existing forms.

Visit the link below to create an account or log in to your existing account and submit these documents via our portal.
https://portals.axosbank.com/

Should you have any challenges logging in or creating an account, please contact our Portal Support team at 858-206-8428 or commerciallendingservicing@axosbank.com

25-00240-WLH11    Doc 14    Filed 02/24/25    Entered 02/24/25 18:45:47    Pg 119 of 127    E - 16

Commercial Lending Services: (858) 206-8428
Hours of Operation: 8:00 am – 5:00 pm PST

Thank you,

Cassidy Rodgerson
Special Assets Analyst
Direct: 877-351-2265, X 1284
cassidy.rodgerson@axosbank.com
www.axosbank.com

ref:!00Di00KtrF.!5003o01j3qWo:ref CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.
CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

# EXHIBIT 4

# LONGWELL

**Longwell Company**

14400 NE Bel-Red Rd, Suite 204                                    Tel: (425)455-6660
Bellevue, WA 98007                                                 Fax: (425)455-6662

---

July 15, 2024

Axos Bank
Loan Servicing
4350 La Jolla Village Drive, Suite 100
San Diego, CA 92122

Ref:     **Extension Request for Loan #90099031245**

Dear Sir/Madam,

On behalf of the Borrower, Amity Court LLC, this is a formal request for loan extension of Loan #90099031245.

The Loan #90099031245 will be expired on October 1, 2024. Please extend the loan for one (1) year per Section 4.5 of Secured Promissory Note dated 9/22/2021 between Axos Bank and Amity Court LLC.

Should you have any questions, please contact me.

Sincerely,

Stanley Xu
Managing Member
Amity Court LLC

# EXHIBIT 5



# AMITY COURT

14400 Northeast Bellevue-Redmond Road
Bellevue, Washington 98007

APPRAISAL REPORT
Date of Report: September 30, 2024
Colliers File #: SEA240464

Client File #: 24-000246-01-1 / 90099031245



PREPARED FOR
Rachel Hoss
Axos Bank
P.O. Box 919008
San Diego, CA 92122

PREPARED BY
COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES

# LETTER OF TRANSMITTAL

**COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES**

601 Union Street, Suite 5300
Seattle, WA 98101 USA
MAIN +1 206 343 7477
FAX +1
WEB   www.colliers.com/valuationadvisory

**Colliers**
INTERNATIONAL

September 30, 2024

**Rachel Hoss
Axos Bank
P.O. Box 919008
San Diego, CA 92122**

**RE:** Amity Court
        14400 Northeast Bellevue-Redmond Road
        Bellevue, Washington 98007

Colliers File #: SEA240464

Client File #: 24-000246-01-1 / 90099031245

Ms. Hoss:

This appraisal report satisfies the scope of work and requirements agreed upon by Axos Bank and Colliers International Valuation & Advisory Services. At the request of the client, this appraisal is presented in an Appraisal Report format as defined by *USPAP* Standards Rule 2-2(a). Our appraisal format provides a summary description of the appraisal process, subject and market data and valuation analyses.

The purpose of this appraisal is to develop opinions of the As-Is Market Value of the subject property's leased fee interest. At the request of the client, we have also completed an Insurable Replacement Cost Estimate. The following table conveys the final opinion of market value of the subject property that are developed within this appraisal report. Note that the value conclusion is based on the property's underlying land value, which exceeds its value as improved.

| VALUE TYPE | INTEREST APPRAISED | DATE OF VALUE | VALUE |
|---|---|---|---|
| As-Is Market Value | Leased Fee | September 18, 2024 | $7,780,000 |
| **OTHER CONCLUSIONS** | **AS OF SEPTEMBER 18, 2024** | | |
| Insurable Replacement Cost | | | $3,120,000 |

The subject is Amity Court, a multi-tenant low-rise office property totaling 16,796 SF of NRA located on a 0.99-acre site at 14400 Northeast Bellevue-Redmond Road in Bellevue, Washington. The improvements were built in 1978, are in average condition and have a remaining economic life of 2 years based on our estimate.

Colliers International Valuation & Advisory Services, and certain of its subsidiaries, is an independently owned and operated business and a member firm of Colliers International Property Consultants, an affiliation of independent companies with over 500+ offices throughout more than 68 countries worldwide.

The subject property has a multi-tenant design that is currently occupied by third-party tenants, and has a current occupancy level of 78.0%. Although the subject has leases in place, our market value conclusion indicates that the underlying land value currently exceeds that subject's value as-improved. It is anticipated that the subject property will be a candidate for redevelopment upon the expiration of its in-place leases (which extend through July 2026 at the latest). As such, any future leasing in the subject is likely to be short-term. A stabilized occupancy estimate is not relevant in this context.

The analyses, opinions and conclusions communicated within this appraisal report were developed based upon the requirements and guidelines of the current Uniform Standards of Professional Appraisal Practice (USPAP), the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute. The report is intended to conform to the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) standards.

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of, and inseparable from, this letter. *USPAP* defines an Extraordinary Assumption as, "an assignment specific-assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions". *USPAP* defines a Hypothetical Condition as, "that which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis".

The Extraordinary Assumptions and/or Hypothetical Conditions that were made during the appraisal process to arrive at our opinions of value are fully discussed below. We advise the client to consider these issues carefully given the intended use of this appraisal, as their use might have affected the assignment results.

## EXTRAORDINARY ASSUMPTIONS

This Appraisal Report is not contingent on any extraordinary assumptions.

## HYPOTHETICAL CONDITIONS

This Appraisal Report is not contingent on any hypothetical conditions.

## RELIANCE LANGUAGE

Our opinion of value reflects current conditions and the likely actions of market participants as of the date of value. It is based on the available information gathered and provided to us, as presented in this report, and does not predict future performance. Changing market or property conditions can and likely will have an effect on the subject's value.

The signatures below indicate our assurance to the client that the development process and extent of analysis for this assignment adhere to the scope requirements and intended use of the appraisal. If you have any specific questions or concerns regarding the attached appraisal report, or if Colliers International Valuation & Advisory Services can be of additional assistance, please contact the individuals listed below.

Sincerely,

**COLLIERS INTERNATIONAL**
**VALUATION & ADVISORY SERVICES**

Joseph Liss
Valuation Specialist
Certified General Real Estate Appraiser
State of Washington License #22003802
+1 323 334 7958
joseph.liss@colliers.com

Reid Erickson, MAI
Executive Managing Director
Certified General Real Estate Appraiser
State of Washington License #1100150
+1 206 965 1106
reid.erickson@colliers.com

© 2024 COLLIERS INTERNATIONAL VALUATION & ADVISORY SERVICES