Docusign Envelope ID: 0BA025E3-91AD-401F-A0D7-5BCE5F0A5C89

JAMES L. DAY (WSBA #20474)          HONORABLE WHITMAN L. HOLT
LESLEY BOHLEBER (WSBA #49150)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
jday@bskd.com;
lbohleber@bskd.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| AMITY COURT LLC, | Case No. 25-00240-WLH |
| Debtor. | NOTICE OF INTENT TO COMPENSATE INSIDER AND DECLARATION IN SUPPORT THEREOF |

 PLEASE TAKE NOTICE that Amity Court, LLC. ("Debtor"), debtor-in-possession herein, intends to compensate an insider, in the ordinary course of business, during the pendency of this chapter 11 case. In accordance with Rule 3016-1(c)(2) of the Local Bankruptcy Rules ("LBR") of the U.S. Bankruptcy Court for the Eastern District of Washington, the following insider receives compensation from the Debtor as follows:

Name:  Longwell Company

Regular Compensation Schedule:  5% of Gross Property Revenues, or approximately $1,805 monthly

Nature of the services to be performed:  Property Management

Amount of Compensation paid over the past twelve (12) months:  $19,045.10

 PLEASE TAKE FURTHER NOTICE that the Debtor proposes to compensate Longwell Company on a monthly basis, in accordance with the above terms and pursuant to the Commercial Property Management Agreement dated January 3, 2022

NOTICE OF INTENT TO COMPENSATE INSIDER AND
DECLARATION IN SUPPORT THEREOF – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

by and between Longwell Company and the Debtor. Longwell Company historically has performed this service work for the Debtor, in the ordinary course of business. This will continue post-petition.

PLEASE TAKE FURTHER NOTICE that pursuant to LBR 3016-1(c)(3):

Compensation may commence after notice is given. Any party in interest objecting to the compensation shall do so in writing, and has the duty to request a hearing on the objection. The compensation shall continue until the Court orders otherwise. The Court shall provide an expedited hearing on the objection. If the Court rules that the amount received prior to the hearing is excessive, it may order disgorgement of funds back to the estate.

PLEASE TAKE FURTHER NOTICE that, if you object to such compensation, your written objection must be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Washington, 402 East Yakima Avenue, Suite 200, Yakima, WA 98901, and served on the undersigned counsel.

DATED this 26th day of February, 2025

BUSH KORNFELD LLP


By___/s/*Lesley Bohleber*___
    James L. Day, WSBA #20474
    Lesley Bohleber, WSBA #49150
    *Proposed Attorneys for Debtor-in-Possession*

NOTICE OF INTENT TO COMPENSATE INSIDER AND
DECLARATION IN SUPPORT THEREOF – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1

2    ## DECLARATION OF STANLEY XU

3     I, Stanley Xu, Authorized Person of Amity Court, have read the foregoing and

4    hereby certify that the information contained herein is true and correct. Attached hereto

5    as <u>Exhibit A</u> is a true and correct copy of the Commercial Property Management

6    Agreement dated January 3, 2022.

7     SIGNED this 26th day of February, 2025 at Bellevue, Washington.

8

9           *DocuSigned by:*
            *Stanley Xu*
     By    2CCB1A8B5F8C43C...

10           Stanley Xu

11

12

13

14

15

16

17

18

19

20

21

22

23

NOTICE OF INTENT TO COMPENSATE INSIDER AND
DECLARATION IN SUPPORT THEREOF – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2876 ib25jc0177

Docusign Envelope ID: 0BA025E3-91AD-401F-A0D7-5BCE5F0A5C89

# EXHIBIT A

**LONGWELL COMPANY**

**COMMERCIAL PROPERTY MANAGEMENT AGREEMENT**

## COMMERCIAL PROPERTY MANAGEMENT AGREEMENT

This Commercial property Management Agreement (the "Agreement") is made as of the 3rd day of January 2022 by and between Longwell Company, a Washington corporation ("Agent"), and Amity Court, LLC, a Washington limited liability company ("Owner").

### 1.   AGENCY.

In consideration of the property management services to be rendered by Agent pursuant to this Agreement, Owner hereby designates Agent as the exclusive Agent and representative of Owner for the purposes of management, leasing and operation for Owner's account of the apartment property listed on Exhibit A hereto, (hereafter the "Property").

Agent and Owner agree that their respective authorities, duties and responsibilities with respect to the Property shall be as provided in this Agreement.

### 2.   TERM.

This Agreement shall become effective as of the 3rd day of January 2022, (the "Effective Date") and, unless terminated as provided in Section 6 (Default) below, shall continue in full force until terminated as provided herein.  Either party shall have the right, with or without cause, to terminate this Agreement at any time by giving 30 days' prior written notice thereof to the other.  In any event, such termination shall be effective at the end of the calendar month during which the 30-day notice period expires.

### 3.   MANAGEMENT FEE.

#### 3.1 <u>Payment</u>

As compensation for Agent's services, Owner shall pay Agent five percent (5%) of the Gross Property Revenues (the "Management Fee").  The Management Fee shall be paid to Agent on or before the last day of each month and shall be deducted by Agent from Gross Property Revenues.  If the Gross Property Revenues are not sufficient to pay all or any portion of the Management Fee, Owner shall pay Agent the unpaid amount of such Fee promptly upon receipt of Agent's statement therefore or, at Agent's election, Agent may withdraw all or a portion of such Fee from the Property Trust Account (as hereinafter defined).  If the term of this Agreement begins on a date other than the first day of a month, Agent's compensation for such partial month shall be prorated based on the number of days in that month, but in no event, unless the Agreement is terminated by Owner for cause, shall Agent's aggregate compensation paid hereunder be less than an amount equal to the sum of six months' Management Fees. Subject to the foregoing, in the event this Agreement is terminated as provided in Section 2 (Term) and Section 6 (Default) hereof, whether or not for cause, the Management fee and any expenses reimbursable to Agent hereunder accrued as of the date of termination are immediately due and payable to Agent.

#### 3.2 <u>Gross Property Revenues</u>

"Gross Property Revenues" shall mean the total gross monthly revenue of every

2

kind and nature actually collected from the operation of the Property, including, without limitation, (i) rental payments; (ii) forfeited security or other deposits; (iii) insurance proceeds from business interruption or similar coverage; and (iv) vending machine, laundry, parking, garage and all other miscellaneous income from the Property, determined on a cash basis (except for guaranteed payments from sellers which may be accrued). Any advance rental payments shall be included in Gross Property Revenues when received. Gross Property Revenues shall not include (I) any amounts which are billed and/or owing until such amounts arc actually received (other than guaranteed payments from sellers); (ii) deposits such as security, utility and/or for damages until the forfeiture of such deposits; (iii) proceeds from the sale of any part or all, or a refinancing, of the Property; (iv) any trade discounts and/or rebates received in connection with the operation and maintenance of the Properly and/or purchases of personal property; (v) insurance proceeds other than from business interruption or similar coverage; (vi) condemnation awards or payments; or (vii) proceeds from the offering of limited partnership units in Amity Court, LLC (the "Fund") as member of Owner.

### 3.3 Renovation Supervision Fee.

In the event that Agent is requested by Owner to coordinate and supervise a major repair, improvement, renovation of, or new construction adding apartment units to, the Property, Agent shall receive a renovation supervision fee equal to the 5% of the total expenses of the major repair, improvement, renovation of, or new construction adding apartment units to, the Property.

### 4. POWERS AND DUTIS OF AGENT.

### 4.1 Collection of Property Income

Agent shall take all reasonably necessary action to collect rents, charges or other income when due from tenants of the Property in accordance with the terms of their tenancies. Agent shall have the right, at its election, to bring suit in its name, in the name of the Owner or in the name of both to collect rent, to evict, to settle minor claims or to reinstate tenancies. Agent may execute all receipts and endorse checks for deposit or any other documents reflecting payment by tenants of such sums.

### 4.2 Payment of Property Expenses and Taxes

Agent shall pay the following items to the extent of Gross Property Revenues collected from the Property:

**4.2.1** **Operating Expenses**. All expenses incurred through operating, renting, servicing, maintaining or repairing the Property, including, without limitation, expenses for all services rendered by professionals such as attorneys, accountants, engineers, architects, collection agents and tax advisers, and such other expenses in connection with the Property as may be authorized by Owner.

**4.2.2** **Loan Payments**. Sums due to lenders as may be designated In writing by Owner on loans secured by or otherwise affecting the Property, if any;

**4.2.3** **Taxes**. Real and personal property taxes and other taxes or

3

assessments levied and assessed against the Property ("Taxes"), to the extent required pursuant to the procedure which Owner selects and initials below:

      (i) Agent shall establish a reserve by withholding from gross revenues to the extent available an amount equal to the estimated annual Taxes; Agent shall then pay the Taxes from this reserve prior to delinquency.

  X  (ii) *Agent* shall pay the Taxes provided that Owner shall make funds available to Agent to pay each installment thereof promptly upon notice from the Agent given at least 15 days prior to the date of delinquency of much Taxes.

      (iii) Owner shall pay all Taxes and Agent shall have no responsibility for payment of same.

### 4.3    Independent Contractor Status: Property Employees.

Agent shall be deemed an independent contractor in its relationship with Owner. Agent shall have the right to hire managers and other Property employees (collectively, the "Employees"), if any are reasonably required in the operation of the Property. Such Employees shall be employed by Agent at Owner's expense. All such Employees will be administered by the Agent's payroll service. Owner shall reimburse Agent for all payroll costs, including, without limitation, workers' compensation, employer's liability and other insurance premiums arid all payroll taxes and employee benefits, at the end of each payroll period to the extent riot covered by Gross Property Revenues. The cost of Employees shall not be charged against the Agent's Management Fee.

### 4.4    Operating Account.

#### 4.4.1    Payments and Balance. Agent, acting on behalf of Owner, shall promptly deposit all receipts from the operation of the Property in a separate trust account (the "Property Trust Account"); the monies shall then be transferred daily to an account designated by Agent on behalf of Owner (the "Operating Account"). As required, exact amounts of approved disbursements shall be transferred from the Operating Account designated by Owner to a disbursements account (the "Disbursements Account"). The Operating Account shall be used to pay (through the Disbursements Account) for all obligations and expenditures necessarily incurred for and on account of the Owner in the management and operation of the Property in accordance with the prior approved budget, including Insurance premiums, taxes, supplies, repair; maintenance, mortgage payments, if any, renewal; replacements, betterments, improvements and such other expenses or obligations as have been provided for in this Agreement. The Agent shall further have the right to designate one or more persons who shall be authorized to issue checks and/or cause funds to be transferred to and from the Operating Account and the Disbursements Account. All disbursements of funds shall be substantiated by appropriate records and accounting procedures.

#### 4.4.2    Owner's Obligations; Advances. Owner shall be responsible for providing funds, or causing funds to be provided, for the Operating Account to meet, on a timely

basis, the cash requirements of Agent for the proper operation of the Property, including the meeting of Agent's payroll costs with respect to the Employees and the return of security or other deposits to tenants or suppliers. At no time shall Owner permit the balance of such Account to be less than $5,000. Agent, from time to time as directed by Owner, but no less frequently than quarterly, shall remit to Owner all cash in the Operating Account in excess of $5,000 (exclusive of reserves established as a part of the Annual Budget, including without limitation reserves for taxes and capital improvements).

### 4.5    Security Deposits

Agent shall give, on behalf of Owner, any notices required by law to notify tenants that Owner holds title to the Property and any security or other deposits relating to the Property. Agent shall remit all tenant security and other deposits to Owner on a monthly basis, subject to applicable law, Agent shall account for the security deposits in the monthly financial reports described in Section 4.7 (Accounting and Reporting). Owner agrees to advance sufficient funds to Agent to refund security deposits if there are insufficient funds in the Operating Account to make such refunds as they become due and payable.

### 4.6    Budgets

In order for Owner to anticipate and plan for the cash requirements of the Property's operations, Agent shall submit an annual budget to Owner for approval. The first such budget shall be submitted within 45 days after execution of this Agreement. Thereafter, an annual budget shall be submitted to Owner each year no later than 45 days prior to the next budget year, each budget as submitted by the Agent shall be deemed to be approved by Owner unless within 30 days of the Owner's receipt of such budget, the Owner affirmatively rejects such budget. If a budget is rejected as set forth herein, the budget approval process set forth herein shall be repeated. All expenses within the budget approved by Owner are to be borne by Owner; it shall be the responsibility of Owner to provide Agent with sufficient funds to meet expenses contemplated in the approved budget. Notwithstanding the foregoing, Agent shall have the right, in its reasonable discretion, to expend up to 15 percent more than the amount budgeted for a budget line items not to exceed 10 percent of the overall budget for any budget year, without the consent of Owner.

### 4.7    Accounting and Reporting

Agent shall maintain an accounting management reporting system that will duly account for all transactions relating to the Property. Accounting shall be done monthly on a modified cash basis, i.e., accrued revenue (cash expenses but for tax and insurance). On or before the 15th day of each month, Agent shall provide the following financial and management reports to Owner for the prior monthly accounting period.

(i)     A balance sheet;
(ii)    An operating statement;
(iii)   A cash disbursement report; and
(iv)    An analysis of marketing and leasing activities.

### 4.8    Books and Records.

Agent shall keep detailed and accurate records of all amounts received and disbursed in connection with its management of the Property during the term. Owner shall at all reasonable tunes have access to such records as well as the books and other records of Agent relating to the Property. Upon reasonable notice and during normal business hours, Owner shall have the right to audit such records and books at Owner's expense.

### 4.9    Maintenance and Expenditures

**4.9.1    Ordinary Maintenance**. Agent shall use all reasonable efforts to do, or cause to be done, everything reasonably necessary for the property management of the Property, including inspections of the real and personal property, supervision of maintenance and minor repairs as may be requested by Owner or otherwise required, handling tenant requests and negotiations, purchasing materials and supplies, contracting with independent contractors to supply services and expending such sums as Agent deems necessary to accomplish the foregoing (subject, however, to Section 4.8 (Budgets) hereof). No non-budgeted contract for a period greater than 12 months or calling for payments in excess of those permitted by Section 4.6 (Budgets) may be entered into without the prior written consent of Owner.

**4.9.2    Renovation Supervision Services**. To the extent requested by Owner, Agent shall coordinate and supervise major repairs (e.g., painting, roofs, paving), improvements, renovations of, and any new construction adding apartment units to, the Property. For such services, Agent shall receive a renovation supervision fee in accordance with Section 3.3 (Renovation Supervision Fee) hereof.

**4.9.3    Emergency Expenditures**. Notwithstanding the provisions of Section 4.9.1 (Ordinary Maintenance) above, Agent may make expenditures necessary (i) to handle an emergency involving material risk or personal injury or damage to the real or personal property of Owner or others or (ii) to comply with or abide by any rule, determination, ordinance or law of any federal, state or municipal authority affecting or concerning the Property or any part thereof which, but for the making of such expenditures, would result in the immediate closing of any part of the Property. Agent shall in a prompt manner, notify' Owner of such emergency expenditures and the nature of the necessity.

### 4.10    Warranties

Agent shall use reasonable efforts to obtain, shall maintain records regarding, and shall notify Owner in writing within ten business days of any breach or suspected breach of, any guarantees or warranties that may concern Owner's real or personal property comprising a part of the Property.

### 4.11    Licenses and Permits

Agent shall obtain and maintain in full force and effect any and all licenses required for Agent lawfully to perform fully its obligations under this Agreement. In addition, Agent shall obtain on Owner's behalf or assist Owner in obtaining, at Owners expense, any and all licenses or permits required for the maintenance, operation and use of the Property.

### 4.12    Agent's Insurance Obligations

      **4.12.1   Employment/Workers' Compensation Insurance**. Agent shall carry workers' compensation and employer's liability insurance at limits no less than the statutory requirements where required to do so by law. Agent shall comply with all local, state and federal laws and regulations applicable to any Employees, including, without limitation, minimum wage laws.

      **4.12.2   Commercial General Liability Insurance**. Agent shall carry commercial general liability insurance covering bodily injury, personal injury and property damage with limits not less than $1,000,000 combined single limit per occurrence If such insurance is provided under a policy with an aggregate limit, such limit shall not be less than $5,000,000 and if losses shall reduce the available aggregate limit to $3,000,000 or less, Agent shall purchase additional insurance so that the available aggregate limit shall be no less than $3,000,000. The policy providing such insurance shall be issued by an insurance company reasonably acceptable to Owner. Agent's obligation hereunder may be satisfied by its being covered by the same commercial general liability insurance policy obtained by or on behalf of Owner to cover Owner.

      **4.12.3   Auto Liability Insurance**. Where required by law, Agent shall also carry at the expense of the Property non-owned auto liability insurance with respect to the Employees.

      **4.12.4   Fidelity Coverage**. Agent shall provide a fidelity bond or comparable insurance (at Owner's expense) for the Employees in an amount equal to at least three months' Gross Property Revenues. Said bond or insurance may be on a blanket form covering the Employees *and* all other personnel and employees of Agent.

      **4.12.5   Owner as Additional Insured.**  Agent agrees that at all times during the continuance of this Agreement all commercial general liability insurance carried by Agent with respect to the Property shall extend to insure Owner, as well as Agent, by endorsement of such insurance coverage to specifically designate Owner as an additional insured, unless Owner and Agent are covered by the insurance policy obtained by or on behalf of Owner as named insured.

      **4.12.6   Information Provided to Owner**. Evidence of all insurance coverage and endorsements required under this Agreement, satisfactory to Owner, shall be delivered promptly to Owner.

   **4.13  <u>Contracts</u>.**

     Agent may enter into contracts, leases and related agreements with respect to the performance of its obligations under this Agreement in the name of the Owner. Such contracts and leases shall comply with any directions or guidelines established by or on behalf of Owner.

   **5.    DUTIES OF OWNER.**

   **5.1   <u>Documents Records</u>.**

     Owner agrees promptly to furnish or cause to be furnished, to Agent all documents and records required to manage the Property properly, including, but not limited to, leases and any amendments and correspondence pertaining thereto, reports on the status of rent payments, loan payment information, copies of all insurance policies and any required endorsements which are carried by or on behalf of Owner during the term of this Agreement.

### 5.2 Owner's Insurance Obligations.

**5.2.1 Commercial General Liability Insurance**. Owner shall carry, or cause Agent to carry on behalf of Owner, with respect to the Property, commercial general liability insurance and umbrella or excess liability insurance covering bodily injury and personal injury and property damage (provided, however, if liquor is sold on the Property, such insurance shall Cover liquor law liability) with aggregate limits not less than $5,000,000 combined single limit per occurrence. If such insurance is provided under a policy with an aggregate limit, such limit shall not be less than $10,000,000, and if losses shall reduce the available aggregate limit to $7,000,000 or less, Owner shall purchase additional insurance so that the available aggregate limit shall be no less than $7,000,000. The policy providing such insurance shall be specifically endorsed to provide that the insurance will be deemed primary to any other insurance carried by Agent. Such policy shall be issued by an insurance company reasonably acceptable to Agent.

**5.2.2 Real and Personal Property Insurance**. Owner shall carry, or cause the Agent to carry on behalf of Owner, with respect to the Property, a property insurance policy or policies insuring all real and personal property on the Property owned by Owner. Said policy is to include business interruption coverage for 100 percent of the Property's gross revenues for a period of no less than 12 months. Such property policy shall contain a waiver of rights of subrogation against Agent.

**5.2.3 Agent as Additional Insured**. Owner agrees that at all times during the continuance of this Agreement commercial general liability insurance carried by or on behalf of Owner with respect to the Property shall extend to insure Agent and its employees and the Employees, as well as Owner, by endorsement of such insurance coverage to specifically designate Agent as an additional insured, unless Agent and Owner are covered by the same insurance policy as named insured Liability insurance covered by Owner shall be primary to any insurance earned by Agent.

**5.24 Information Provided to Agent**. Evidence of all insurance coverage and endorsements required under this Agreement, satisfactory to Agent, shall be delivered promptly to Agent.

### 5.3 Insufficient Property Revenues.

In the event Gross Property Revenues are insufficient in any month to pay the Management Fee for such month, or the funds in the Operating Account are insufficient to pay ordinary or emergency operating expenses (including, without limitation, insurance premiums, security deposit refunds and Agents payroll costs with respect to Property employees) of the Property as they come due, or in the event Owner elects to have Agent establish a reserve for taxes as provided in clause (i) of Section 4.2,3 (Taxes) above and such reserve is insufficient for the payment of taxes prior to their delinquency, Owner agrees to provide to Agent within 48 hours after Agent has delivered written notice to Owner of the amount of the deficiency and the purpose of the call sufficient funds to cure such deficiency.

### 5.4 Legal Assistance.

Where legal assistance is required for such matters as enforcing the collection of

8

rents or eviction proceedings, counsel shall be designated by Agent and shall be engaged at Owner's expense.

### 5.5 Consent.

Owner shall not unreasonably withhold or delay any consent required by Agent as provided hereunder.

## 6 DEFAULT.

### 6.1 Owner's Default.

Agent shall have the right to terminate this Agreement in the event of Owner's insolvency, liquidation, filing of a petition for reorganization or bankruptcy, or sale of the Property, or in the event Owner has defaulted in any of its obligations under this Agreement and has failed to cure such default within 30 days of written notice thereof (except where a shorter notice period is specifically designated herein).

### 6.2 Agent's Default.

Owner shall have the right to terminate this Agreement in the event Agent has defaulted in the performance of any of its obligations under this Agreement and has failed to cure such default within 30 days of written notice thereof Agent will not be deemed to be in default if it is unable to perform its obligations due to Owners failure to provide funds as provided herein.

## 7. INDEMNIFICATION.

### 7.1 Indemnification of Owner.

Agent hereby warrants and represents to Owner that it has the lawful and proper authority to enter into and perform the obligations set forth in this Agreement. Agent shall indemnify, defend, protect and hold Owner harmless from all damages claims, liability, loss or cost, including, without limitation, investigation costs and attorneys', accountants', consu1tants' and expert witness fees and expenses arising out of any act of gross negligence or willful misconduct or breach of this Agreement of or by Agent, its officers, directors, employees, or other persons acting on behalf of Agent.

### 7.2 Indemnification of Agent

Owner hereby warrants and represents to Agent that it has the lawful and proper authority to employ Agent as provided herein. Except in the event of the gross negligence or willful misconduct of Agent, its officers, directors, employees, or other persons acting on behalf of Agent ("Agent Indemnitees"), Owner shall indemnify, defend, protect and hold Agent Indemnitees harmless from any damages claims, liability, loss or cost, including, without limitation, investigation costs and attorneys', accountants', consultants' and expert witness' fees and expenses arising out of, or alleged to arise out of, (i) the operation, leasing or management of the Property by Agent or the performance or exercise of any obligation, power or authority

9

herein or hereafter granted to Agent, (ii) Agent's employment of any Employee or failure to hire any person as an Employee, (iii) actual or alleged defects in design or construction of the improvements on the Property, and (iv) any breach of any legal duty or obligation which is by law or under this Agreement the responsibility of Owner. Agent shall not be liable to Owner and Owner waives all claims against the Agent, for any damages, claims, liability, loss or cost to Owner, to the Property, or to any other person or property arising from any cause except for acts of Agent constituting gross negligence, willful misconduct or a breach of this Agreement.

## 8.  TERMINATION

Agent shall, provided Owner has paid to Agent all sums due Agent under this Agreement, deliver to Owner within 30 days after the expiration or termination of this Agreement the following: (i) a current accounting reflecting the balance of income and expenses relating to the Property as the date of the termination; (ii) any balance of monies of Owner held by Agent; and (iii) all leases, receipts for deposits, insurance po1icies and unpaid bills which are the property of Owner.

## 9.  ASSIGNMENT

This Agreement shall be binding upon the parties hereto, and their legal representatives, successors and permitted assigns.  This Agreement may not be assigned by either party, however, without the prior written consent of the other, which may be given or withheld in such non-assigning party's sole discretion.

## 10.  GOVERNING LAW.

This Agreement shall be governed by and shall be construed and interpreted in accordance with the laws of the State of Washington.

## 11.  ATTORNEYS' FEES.

In the event Agent or Owner shall institute legal proceedings against the other arising out of the terms of this Agreement or the performance of obligations there under then the prevailing party shall recover from the other all reasonable attorneys' fees and costs incurred in any such action.

## 12.  NOTICES.

Any notice required under the terms herein shall be deemed given upon personal delivery or placement of such notice in the United States registered or certified mail, postage prepaid, and addressed to the address set forth below the signature line of this Agreement.  Such address may be changed by either party by mailing written notice of such change to the other party at the last designated address of the other party.

## 13.  SERVERABILITY.

Every provision of this Agreement is intended to be severable, if any term or provision hereof is illegal for any reason whatsoever, such provision shall be severed from the Agreement and shall not effect the validity of the remainder of the Agreement.

14. **EQUAL OPPORTUNITY**.

Agent is an equal opportunity non-discriminatory employer. Agent and Owner each mutually agree that there shall be no discrimination against or segregation of any person or group of persons on account of race, color, religion, creed, sex, or national origin in leasing, transferring, use, servicing, maintenance, repair, occupancy, tenure or enjoyment of the Property, nor shall Owner or Agent permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy of tenants.

15. **LIMITATION ON LIABILITY**

Notwithstanding anything to the contrary contained in this Agreement and in the event of a breach by either party of its obligations hereunder, each party' agrees to look solely to the net assets of the other for the satisfaction of any obligations, judgments or other liability of the other party and not to any assets of the partners or shareholders of each party (or of the partners of such partners). Each party further agrees that any deficit capital account of a partner of a party shall not be deemed to be an asset of that party.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**OWNER**                                              **AGENT:**

**AMITY COURT, LLC**                         **LONGWELL COMPANY**
a Washington Limited Liability Company       a Washington Corporation

By:    By: _____         By: _____
            Stanley Xu                                       Nanling Chen
            Managing Member                             Vice President

11

**EXHIBIT A**

PROPERTY ADDRESS:        14400 NE Bel-Red Rd.
                                      Bellevue, WA 98007